UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEAN OLIVER<br><br>               Plaintiff,<br><br>-against-<br><br>NEW YORK STATE POLICE; FRANCIS CHRISTENSEN, in his individual and official capacity; DANIEL PENNY, in his individual and official capacity; THOMAS CAPEZZA, in his individual and official capacity; CLAY LODOVICE, in his individual and official capacity; JOHN HARFORD, in his individual and official capacity; MICHAEL VOLFORTE, in his individual and official capacity; LOIS GOLAND, in her individual and official capacity; and JASON HUGHES, in his individual and official capacity<br><br>        Defendants. | INDEX NO. 17-1 CV1157 w<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br> |

Jean Oliver representing myself pro se, alleges the following:

This is a proceeding for declaratory relief, an injunction, and damages for violations of Plaintiff's rights under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3), and 1986; the New York State Human Rights Law, Executive Law § 296; N.Y. CSL Civ. S.§ 75-b; New York Labor Law § 215; Article 14, § 209 of the New York State Civil Service law; and the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. 4301 et seq.

<u>**NATURE OF COMPLAINT**</u>

1.   Plaintiff contends that Defendants engaged in retaliation against Plaintiff for reporting official misconduct on the part of former investigating members in the New York State Police Internal Affairs Bureau, Timothy Owens and John Aquilina, who, under the direction of the former head of the New York State Police Internal Affairs Bureau (IAB), Daniel Penny, and the former head of the New York State Police, Office of Human Resources (HR), Francis Christensen, authorized lead IAB

1

investigators, Timothy Owens and John Aquilina, to conduct a "fraudulent" criminal investigation in response to crimes Plaintiff reported within the EEO and retaliation complaints she filed against her former supervisors, which was done as a means of discrediting Plaintiff's claims while protecting the individuals named in these complaints from criminal liability over the acts they engaged in, while further expediting Plaintiff's wrongful termination from the New York State Police with layers of fraudulent documents and falsified reports used to give the "appearance" of legitimatizing Plaintiff's wrongful termination in order to further conceal the illegal, immoral, and unethical actions legal counsel representing the New York State Police engaged in by facilitating Plaintiff's wrongful termination and by continuing to engage in similar acts following Plaintiff's wrongful termination, as a means to further deny Plaintiff's request for relief against the illegal actions Plaintiff continues to be subjected to.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-202; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorney fees under 42 U.S.C. §§ 1988 and 2000e-5(k).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e 5(f)(1)(B)(3) because most of the retaliatory acts described in this Complaint occurred in this district and most of the records in support of these acts of retaliation are maintained in this district.

## PARTIES

4. Plaintiff, Jean Oliver, is a female resident of the State of New York over 18 years of age and has been at all relevant times hereto.

5.   Defendant, New York State Police ("State Police"), is an executive department within the executive branch of the State of New York, with a principal office located at Building, 22, 1220 Washington Ave., Albany, NY 12226-2252.

6.   Upon information and belief, the State Police meets the minimum requirements for employees under Title VII and the Human Rights Law.

7.   The following defendants are referred to as the "individual defendants" herein.

8.   Francis Christensen is a resident of the State of New York, and was in charge of the New York State Police, Division of Human Resources during the relevant period and is named in his individual and official capacity as an employee acting under color of state law.

9.   Daniel Penny is a resident of the State of New York, and was in charge of the New York State Police Internal Affairs Bureau during the relevant period and is named in his individual and official capacity as an employee acting under color of state law.

10.   Thomas Capezza is a resident of the State of New York, and was a member of the New York State Police legal counsel during the relevant period and is named in his individual and official capacity as an employee acting under color of state law.

11.   Clay Lodovice is a resident of the State of New York, and was a member of the New York State Police legal counsel during the relevant period and is named in his individual and official capacity as an employee acting under color of state law.

12.   John Harford is a resident of the State of New York, and was a member of the New York State Police legal counsel during the relevant period and is named in his individual and official capacity as an employee acting under color of state law.

13.   Michael Volforte is a resident of the State of New York, and was a member of the New York State Police legal counsel during the relevant period and is named in his individual and official capacity as an employee acting under color of state law.

14.  Lois Goland is a resident of the State of New York, and was a member of the New York State Police legal counsel during the relevant period and is named in his individual and official capacity as an employee acting under color of state law.

15. Jason Hughes is a resident of the State of New York, and was a member of the New York State Police legal counsel during the relevant period and is named in his individual and official capacity as an employee acting under color of state law.

**<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>**

16.  As a result of the gender discrimination, harassment, and the misconduct Plaintiff was subjected to by her former supervisor, Paul Kelly, while assigned to the Community Narcotics Enforcement Team West ("CNET West"), Plaintiff filed an informal EEO complaint on October 26, 2013 with the New York State Police Office of Human Resources.

17.  On November 19, 2013, Plaintiff agreed to file a formal EEO complaint after she was advised by members of the New York State Police Office of Human Resources and Internal Affairs Bureau that the Governor had recently abolished all informal EEO complaint processes within the New York State Police and that "if Plaintiff really wanted to go forward and file a complaint" all EEO complaints had to be filed as Level 4 Personnel Complaints which could only be investigated by the New York State Police Internal Affairs Bureau.

18.  On August 20, 2014, Plaintiff was suddenly notified by her former Troop Commander, Michael Cerretto, that the New York State Police Internal Affairs Bureau were no longer investigating Plaintiff's EEO and retaliation complaints.  Following this notification and in response to the retaliation which Plaintiff was increasingly being subjected to, Plaintiff met with an investigator in the US Equal Employment Opportunity Commission ("US EEOC") office to file a formal charge of discrimination and retaliation against the New York State Police.  The investigator failed to file a formal charge on Plaintiff's behalf at that time.

4

19.  Thereafter, Plaintiff returned to the US EEOC office and met with a different investigator who filed a formal charge of harassment, discrimination and retaliation with the US EEOC on September 25, 2014, which was dual-filed with the New York State Division of Human Rights ("NYSDHR").  The charge, numbered 525-2014-00792, alleged sex discrimination, harassment and retaliation.  The US EEOC issued a Determination on January 29, 2015, finding probable cause that gender discrimination and retaliation had in fact occurred.  The Determination further notified Plaintiff of her right to sue concerning those allegations with respect to which it did not find probable cause.

20. On April 14, 2015, Plaintiff filed a pro se complaint in United States District Court, Northern District of New York State under Case No. 1:15-cv-00444 which remains pending before that Court

21.  Plaintiff filed a second US EEOC charge on May 20, 2015, dual-filed with the NYSDHR.

The charge, number 525-2015-00545, alleged continued retaliation against Plaintiff following her forced "voluntary transfer".  The US EEOC issued a right to sue letter, dated May 22, 2015, and

a letter informing Plaintiff that the May 20, 2015 EEOC charge is subsumed by her prior

US EEOC Charge and is addressed in her already filed initial federal complaint.

22.  Plaintiff filed a formal complaint of discrimination with the New York State Division of

Human Rights ("NYSDHR") on July 16, 2015, which was dual-filed with the Equal

Employment Opportunity Commission.  The NYSDHR complaint, numbered 10176304, alleged sex discrimination, harassment, disability discrimination, military status discrimination, and retaliation. By determination dated September 23, 2015 the NYSDHR dismissed the complaint for administrative convenience.

23.  On October 23, 2015 the EEOC issued a right to sue letter on all allegations in the complaint.

24.  On September 9, 2017, Plaintiff filed a formal complaint with the New York State Division of Human Rights in response to continued and repeated acts of retaliation by Defendants, post-termination. On October 24, 2017, after inquiring into the status of her complaint and being notified by the New York State Division of Human Rights that there was no record of Plaintiff's complaint, Plaintiff resubmitted a second copy of her formal complaint to the New York State Division of Human Rights. On October 27, 2017, Plaintiff received a telephone call from "Adam" of the New York State Division of Human Rights advising Plaintiff that he had bad news for Plaintiff and that their agency was unable to assist Plaintiff.  In response, Plaintiff requested to speak with a supervisor and was subsequently transferred to the Albany Director, Victor DeAmelia, who confirmed that their office was unwilling to receive Plaintiff's complaint and who further inquired as to whether Plaintiff notified her attorney of the filing of this complaint before advising Plaintiff that she should speak with her attorney.

25.  On October 16, 2017, Plaintiff filed an online complaint through the New York State Governor's Office who responded by sending Plaintiff a copy of a New York State Division of Human Rights complaint form in the mail.  On October 27, 2017, Plaintiff re-contacted the New York State Governor's Office by telephone to advise them of the response she received from the New York State Division of Human Rights after submitting a formal complaint to their office and was subsequently transferred to the voicemail of the New York State Inspector General's office who failed to return Plaintiff's telephone call or respond to the voicemail message Plaintiff left with their office.

**PLAINTIFF'S EMPLOYMENT HISTORY**

26.  On October 23, 1997, Plaintiff began her career as a New York State Trooper graduating in the top 10 percentile of her class.

27. Throughout Plaintiff's 7-year tenure as a Trooper on road patrol, Plaintiff was often the recipient of commendation letters, positive observation forms, and letters of gratitude from her superior officers in recognition of her hard work and dedication to public safety and accepted additional duties as a certified New York State Police Crime Scene Technician; certified New York State Police Physical Fitness Coordinator; and certified New York State Police Instructor.  In addition, Plaintiff was frequently put on special assignment to assist the Community Narcotics Enforcement Team West (CNET West) in an undercover capacity assisting local municipal police departments in countless "buy/bust" operations, prostitution stings, and the execution of search and arrest warrants throughout Western New York.  On September 11th 2001, Plaintiff was one of the first wave of emergency responders called to New York City to assist in emergency response efforts and where she continued to serve on a rotational basis for several weeks over the course of a five-month period following these terrorist attacks.  Plaintiff was so moved by the tragedy of these events and her passion and dedication to public service that she enlisted and subsequently commissioned as an Officer in the United States Army Reserves serving two decorated combat tours in Afghanistan in support of Operation Enduring Freedom (OEF) and where she now continues to serve as an active-duty field grade Military Intelligence Officer for the 151st Theater Information Operations Group (TIOG) in Fort Totten, NY, a position which she accepted following her wrongful termination from the New York State Police.

28.  On May 5, 2005, Plaintiff was promoted to the rank of Investigator and assigned to the Batavia Downs Video Lottery Unit where she remained until 2008 when the New York State Police Video Lottery Units were disbanded at which time Plaintiff was then reassigned to CNET West where she successfully led and participated in hundreds of state and federal narcotics investigations, to include assisting local, state, and federal law enforcement agencies in conducting narcotics investigations through various investigative capabilities to  include wiretap investigations; developing targets

through background investigations; undercover narcotics investigations; conducting backup and surveillance duties; the handling of Confidential Informants; writing and executing search warrants/in-camera interviews; evidence collection and crime-scene processing; and assisting State and federal prosecutors in the successful prosecution of Defendants charged in these investigations.

29. After successfully performing her assigned duties in CNET West for over five years, Plaintiff attempted to file a discrete and "informal" internal EEO complaint in order to address the discriminatory and harassing behavior of Plaintiff's former supervisor, Paul Kelly, who repeatedly denied Plaintiff equal opportunity with that of her male colleagues which continued to inhibit Plaintiff's professional development and career goals within CNET West.

## RETALIATION PRE-TERMINATION

30. Plaintiff presents the following historical facts in this case, some of which are subsumed in a pending federal lawsuit in United States District Court, Northern District of New York State under Case No. 1:15-cv-00444, and are therefore not included as part of this Complaint other than to serve as the historical foundation upon which this retaliatory course of conduct first began and continued to progress, leading to the factual allegations contained in this Complaint.

31. That following the "fraudulent" EEO and retaliation investigations led by Timothy Owens and John Aquilina in which Timothy Owens, conspired with CNET West supervisors, Paul Kelly, Timothy Bour, and Martin McKee to engage in acts of official misconduct, obstructing governmental administration, and tampering with a witness when Timothy Owens intentionally breached all confidentiality protocols in the handling of this "confidential" EEO and criminal investigation when he openly identified and distributed the names of every single one of Plaintiff's former coworkers who were scheduled to be interviewed as possible witnesses in this criminal investigation in a unit-wide email he openly distributed wherein Plaintiff's former coworkers were directed to report to IAB in teams of two, in one hour intervals, over the course of two days in response to their

appointed interview times.  That Timothy Owens then distributed a second email directing each of these members to bring their laptop computers with them to their respective interviews, which Timothy Bour openly distributed in a second unit-wide email.  That on day two of the openly-scheduled witness interviews, Plaintiff inadvertently found a handwritten note which was being exchanged between Paul Kelly and Timothy Bour and discovered that these notes were being taken in response to the ongoing witness interviews being conducted of Plaintiff's coworkers who had been directed to bring their laptop computers in order to save their statements onto the CNET network share drive, where Paul Kelly and Timothy Bour were monitoring each and every one of these statements to ensure that nothing was being reported.  That upon discovering these notes, Plaintiff immediately contacted both Human Resources supervisor, June Bradley, and lead IAB investigator, Timothy Owens, to advise them that the entire investigation had been compromised. That upon notifying Timothy Owens of Plaintiff's findings, Timothy Owens responded by reprimanding Plaintiff over the telephone informing her that she had no right to look at the notes she found and further that she had no right to be on the computer viewing these statements. Following this incident, Timothy Owens refused to investigate this situation, as both he and June Bradley later advised Plaintiff that they were unable to conduct an investigation as there was no way for them to identify who was responsible for the handwritten notes Plaintiff found.

32.  In response to this fraudulent investigation, Plaintiff was then directed to report to the former regional IAB commander, Mark Koss and her former Detail Commander, Wayne Olson, where she was first notified by Mark Koss that the majority of her complaints were determined to be unfounded and that IAB would be contacting her sometime next week to interview her relative to her retaliation complaint.  Following this notification, Wayne Olson then proceeded to inform Plaintiff and that she was nothing but a liar who lacked any integrity before excusing Plaintiff from this meeting.

9

33.  The following week, on April 25, 2014, Plaintiff was then ordered to report to the IAB West office in response to her retaliation complaint.  That upon arriving at the IAB office, Timothy Owens handed Plaintiff a piece of paper which contained an answer sheet. Timothy Owens advised Plaintiff that he was going to ask her a series of questions related to her retaliation complaint and that she was to only answer his questions with one of the answer choices written on the answer sheet.  That Human Resources supervisor, June Bradley, was present during this interview, for which there is an audio recording and a transcript in which June Bradley can be heard laughing in the audio recording while she continues to inform Plaintiff that she is to report any incidence of retaliation as this will not be tolerated.  Following this interview, Plaintiff was never re-contacted by anyone in IAB in response to the results of this "retaliation investigation" as the retaliation being taken against Plaintiff by her former supervisors in CNET West only continued to escalate, leading to Plaintiff's forced "voluntary" transfer from CNET West to Troop "A", after she was accused of stealing files by Martin McKee and forced to submit a "voluntary" transfer into Troop "A" under the threat of a personnel complaint and into Troop "A" under the direct command of the former Troop "A" Commander, Michael Cerretto, who was a long-time friend and close associate to the supervisors who were the subject of Plaintiff's EEO and retaliation complaints and who personally lodged the highest and most serious level Personnel Complaint against Plaintiff within one month of Plaintiff being forced to transfer under his command.

34. That upon receiving the Personnel Complaint from Michael Cerretto, Daniel Penny and Francis Christensen then redirected Timothy Owens and John Aquilina to lead the highest and most serious possible level Personnel Complaint against Plaintiff based on false allegations which were made against Plaintiff by the very same supervisors who were the subjects of Plaintiff's EEO and retaliation complaint.  And when Plaintiff submitted evidence to both Timothy Owens and John Aquilina as proof that the false allegations being made against Plaintiff could not possibly be true, Timothy

Owens and John Aquilina responded by directing Plaintiff's former coworkers and supervisors to falsify and re-falsify official New York State Police documents (to include directing one of Plaintiff's former colleagues to falsify Rosario material in an official New York State Police narcotics investigations) just so that it would appear to substantiate the false allegations made by the same supervisors who were the subject of Plaintiff's EEO and retaliation complaint and the same supervisors who initiated these false allegations against Plaintiff in a further act of retaliation against Plaintiff in response to the complaint she previously filed against these supervisors.

35. That in response to the fraudulent IAB investigations and the false allegations and subsequent fabricated administrative charges lodged against Plaintiff, Plaintiff began to seek the intervention and assistance of outside agencies to investigate the EEO violations and retaliation Plaintiff was increasingly being subjected to.

36. On September 25, 2014, in response to Plaintiff's notification that investigating members in the New York State Police IAB were no longer conducting an EEO or retaliation investigation on Plaintiff's behalf, Plaintiff filed a complaint with the US EEOC in response to the discrimination and retaliation Plaintiff was subjected to by Paul Kelly, Martin McKee, and Timothy Bour, immediately after filing her internal EEO complaint which the US EEOC substantiated in its Determination dated January 29, 2015, when it determined that Plaintiff was in fact subjected to gender discrimination and retaliation by Paul Kelly, Martin McKee and Timothy Bour for exercising her rights under Title VII. That Plaintiff sought conciliation with the New York State Police in order to present the evidence and information she had as proof that the administrative charges lodged against Plaintiff which were threatening her termination, were completely fraudulent, to which the New York State Police responded by refusing to engage in any conciliation efforts with Plaintiff and by further refusing to dismiss the fraudulent administrative charges Plaintiff was wrongfully being charged with.

37. On January 23, 2015, Plaintiff directed her attorney to resubmit the "unaltered" version of an appeal she prepared for him to submit to the Director of the New York State Governor's Office of Employee Relations (GOER), Michael Volforte, relative to two New York State/New York State Police Investigators Association (NYS/NYSPIA) grievances in which Plaintiff cited not only the retaliation she was being subjected to in violation of her rights as a public employee and those guaranteed under the collective bargaining agreement between New York State and the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA), but which Plaintiff further cited the misconduct she had been subjected to on the part of lead IAB investigators, Timothy Owens and John Aquilina.  Upon receiving the "unaltered" version of these appeals, which Plaintiff personally submitted to both Michael Volforte and former New York State Police legal counsel member, Thomas Capezza, both Michael Volforte and Thomas Capezza intentionally withheld the "unaltered" version of the appeals Plaintiff provided them, while electing to only maintain the "altered" version of these appeals as their only recorded copy (which had been altered to the extent that an entire paragraph in which Plaintiff cited misconduct on the part of IAB had been intentionally removed from this appeal without Plaintiff's knowledge and without Plaintiff's consent).  Upon receiving the "unaltered" version of these appeals, New York State Police legal counsel member, John Harford, responded by immediately seeking an adjournment of a hearing related to these appeals which had already been scheduled before the (GOER) on February 12, 2015, as Mr. Harford sought to deny Plaintiff's right to a hearing or arbitration in these matters as this would have revealed the retaliation and misconduct Plaintiff documented in these appeals.  Once Mr. Harford was able to have Plaintiff's hearing related to these appeals adjourned, he then proceeded to only agree to reschedule these appeal hearings for a date which followed the date of a disciplinary hearing he was now attempting to schedule against Plaintiff.  And in February of 2015, Plaintiff was notified that a disciplinary hearing had been scheduled against her by John Harford for April 13, and April 14, 2015,

followed by the rescheduling of the hearing related to Plaintiff's appeals which Mr. Harford

rescheduled to take place on April 21, 2015, (a date which was intentionally rescheduled

approximately 2 weeks after the disciplinary hearing which would allow the New York State Police to

terminate Plaintiff before any hearing on these appeals could ever take place).

38.   That in a further act of intimidation and coercion by John Harford towards Plaintiff, on January 29,

2015, Plaintiff received a telephone call from Steven Nigrelli advising Plaintiff that a Hearing Board

was in the process of being established by John Harford, with one of the three hearing board

members being Steven Nigrelli's close personal friend and long-time colleague, Richard Allen.  That

during this conversation, Mr. Nigrelli further advised Plaintiff that he would be personally delivering

this document to Plaintiff.  Following this telephone conversation, Steven Nigrelli then directed

Kevin Reyes to drive to Plaintiff's office where he personally served Plaintiff with this document

which was authored by John Harford, who directed this document be served upon Plaintiff as a

further act of intimidation and coercion (as this completely bypassed Plaintiff's attorney with whom

Mr. Harford was aware was representing Plaintiff and with whom Mr. Harford was engaging in

ongoing communication with).  That Mr. Harford used this act of intimidation and coercion as a

means of letting Plaintiff know not only that he had the ability to schedule Steven Nigrelli's close

personal friend as one of the hearing board members in a disciplinary hearing against Plaintiff

(ensuring Plaintiff would be found guilty) but also to ensure that Plaintiff understood the futility in

her repeated requests to exercise any rights she believed she might have in attempting to seek a

grievance hearing, arbitration, or in having these fraudulent administrative charges dismissed which

was further being reinforced to Plaintiff by Plaintiff's former union representative, Mark Dembrow,

who responded to Plaintiff's complaints to him regarding these actions by informing Plaintiff that

"Division can do whatever they want, while informing Plaintiff that she "had" a good career (as in

past tense) and that Plaintiff should just try to stay focused on making it to her retirement and not

worry about anything else at this point".

39.  On March 13, 2015, Plaintiff was advised by her former attorney that Division counsel, Lois Goland,

contacted him to inquire if Plaintiff would be interested in a mediation conference with her in place

of the disciplinary hearing scheduled for April 13, 2015, which Plaintiff immediately responded by

informing him that she was more than willing to participate in mediation.  That following Plaintiff's

need to obtain new counsel, Plaintiff again requested the opportunity to schedule this mediation

conference, in the hopes that the fraudulent disciplinary charges against Plaintiff would be

dismissed and she would be allowed to return to her team and her former teammates in CNET

West.  That on April 28, 2015, Plaintiff met with Lois Goland and while she believed this was a

mediation session, Ms. Goland immediately began the meeting by waving the pages of charges

against Plaintiff at her while informing  Plaintiff that "they" had so many charges against her that "all

they had to do was to throw them against the wall and something would eventually stick" and since

this was a Level 4 Personnel Complaint, Plaintiff could be terminated for being found guilty of any

one of these charges, while she reminded Plaintiff that everyone has to do things they don't want to

do, citing her very own frustration as to why she should have to submit to the same random drug

tests required of sworn members in the State Police.  That immediately upon informing Plaintiff of

this, Plaintiff then sat and watched as Lois Goland and Tara Arey (who worked under Francis

Christensen) proceeded to engage in a back and forth conversation in Plaintiff's presence where

they discussed between the two of them that Plaintiff was already guilty of falsifying a document for

putting Timothy Bour's name down as a back-up member on a contact sheet which Plaintiff

submitted in March of 2014 and that unless Plaintiff agreed to the terms Lois Goland would be

sending to Plaintiff's attorney, Ms. Goland would be serving Plaintiff with amended charges and

proceed with this fraudulent disciplinary hearing against Plaintiff.  That following this meeting, Lois

Goland then sent an email to Plaintiff's former attorney indicating that not only would Plaintiff be required to lie and plead guilty to every single one of the fabricated charges filed against Plaintiff but Plaintiff would also be required to dismiss her pending EEOC complaint, her pending grievances, and her pending federal lawsuit (which Ms. Goland never previously discussed during this "mediation" session with Plaintiff – as she knew this was a protected activity and something which she was not allowed to do) in exchange for an undisclosed punishment, which would be less than termination. That these acts of intimidation and coercion were further violations of the Taylor Law and Plaintiff's rights under the collective bargaining agreement between New York State and the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA).  And when Plaintiff requested that her former union representative, Mark Dembrow, file a grievance on Plaintiff's behalf based on the conversation which took place in his presence and the email Ms. Goland sent to Plaintiff's former attorney, Mr. Dembrow would only respond by informing Plaintiff that he believed that this conference was confidential and that Plaintiff was not supposed to be talking about the things which were said to her by Lois Goland.  That because the union was unwilling to act on Plaintiff's behalf, Plaintiff filed both a grievance and an improper practice charge against Lois Goland who responded by directing Plaintiff's former union representative, Mark Dembrow, to advise her that Ms. Goland would be serving as the lead division counsel member in the disciplinary hearing to be held against Plaintiff.  Shortly after this notification and on May 29, 2015, Plaintiff was served with a copy of an amended version of the fabricated and fraudulent administrative charges, just as Lois Goland had promised.

40.  That Plaintiff filed a grievance on April 17, 2015, against an appeal Plaintiff filed relative to a derogatory and improper performance evaluation she received by Timothy Bour in which Plaintiff had been falsely led to believe that this appeal was pending by Plaintiff's former union representative, Brian Meier, when in fact this grievance had been dismissed months earlier by

Matthew Reneman in February of 2015, who had been directed by Francis Christensen to decide this

grievance on his own, without Plaintiff's knowledge and without Plaintiff's consent, and where Mr.

Reneman then proceeded to promptly dismiss Plaintiff's grievance while withholding any

information from Plaintiff regarding his decision in this matter which Plaintiff only discovered after

she requested to review her personnel file months later.  While this grievance was hand-delivered to

David McBath (who also worked under Francis Christensen) in May of 2015, the New York State

Police simply withheld this grievance until Plaintiff could be terminated as a means to keep Plaintiff

from reporting the misconduct Francis Christensen and IAB were engaging in against Plaintiff, which

were acts further being protected by legal counsel to the New York State Police.

41.  In May 2015, the New York State Police violated the terms of a Memorandum of Understanding

(MOU) between the Police Benevolent Association (PBA) and New York State relative to the transfer

of Troopers into CNET (as Francis Christensen continued to block Plaintiff's transfer requests which

had already been approved by the former First Deputy Superintendent, Kevin Gagan) in violation of

Plaintiff's rights under the Taylor Law and those guaranteed under the collective bargaining

agreement between New York State and the New York State Police Investigators Association, Local

4, I.U.P.A., AFL-CIO (NYSPIA), in actions being led by Francis Christensen who was intentionally

violating this MOU by assigning Troopers into CNET West in order to fill the Investigator vacancies so

that he could continue to block Plaintiff's approved transfer request to return to her former team

and her teammates in CNET West.

42.  On May 4, 2015, Plaintiff filed a grievance relative to multiple contractual violations which she was

being subjected to as further acts of retaliation, which was also hand-delivered to David McBath and

was once again withheld by the New York State Police, who continued to deny Plaintiff's right to a

hearing or arbitration in these matters in order to prevent Plaintiff from exposing the misconduct

16

investigating members in IAB were engaging in against Plaintiff and the retaliation Plaintiff was being subjected to.

43.  On May 26, 2015, Plaintiff filed both an improper practice charges through PERB and a grievance through the GOER in response to the improper practices she was being subjected to as Plaintiff sought to have the level assigned to the fraudulent Personnel Complaint reduced to a Troop level complaint in the hopes that someone within the leadership in Troop "A" would assist Plaintiff in mitigating these fraudulent charges, only to later discover that this grievance was intentionally at the Troop level, by Steven Nigrelli and Michael Cerretto (again as a means of denying Plaintiff a hearing or arbitration which would have exposed the fraudulent charges, misconduct, and retaliation Plaintiff was being subjected to).

44.  On or about June 3, 2015, Plaintiff's former attorney notified Plaintiff that Francis Christensen had recused himself from her Step 3 appeals related to the two grievances he previously denied and that once a replacement had been named, Plaintiff would be notified of the new date for these appeal hearings.  Approximately 1 day later, an email was sent from Jill Bertrand (of legal counsel's office) scheduling Plaintiff's disciplinary hearing for June 17, and 18 (while Plaintiff was on extended military leave).  Upon receiving this notification, Plaintiff immediately contacted her former attorney who advised New York State Police legal counsel's office of Plaintiff's extended military leave, to which legal counsel's office responded by immediately rescheduling Plaintiff's disciplinary hearing to commence on June 30, and July 1, 2015, which was two working days after Plaintiff returned from extended military leave and where Plaintiff was further notified by her former attorney that this matter could not be rescheduled and would have to take place on these dates as directed.  Shortly after this notification, Plaintiff's former attorney then advised Plaintiff that a new adjournment date for Plaintiff's grievance hearings had now been scheduled for July 28, 2015 (which again, was

intentionally rescheduled for a date following Plaintiff's disciplinary hearing, as Division counsel had

no intention on allowing these grievance hearings to ever take place).

45.  That while on extended military leave throughout the month of June of 2015, Plaintiff was ordered

to continue working on her Trooper applicant while on approved military leave in violation of

Plaintiff's rights under USERRA laws after her former supervisor, Robert Gardner, advised Plaintiff

that this Applicant had to be completed in time and that no extensions would be granted past the

due date of July 3, 2015.  Mr. Gardner additionally called Plaintiff while she was on approved

military leave and while she was in a meeting with her former military Commander in Danbury, CT,

to advise Plaintiff that she needed to figure out a way to get documents to the Investigator who was

conducting the polygraph on her Applicant as Mr. Gardner was not near the office and could not

return to the office to get these documents to the Investigator on Plaintiff's behalf, causing Plaintiff

to have to excuse herself from her meeting in order to conduct New York State Police business while

on military leave and inside a federal reserve center.  That Plaintiff has emails, computer, and

telephone records in support of this violation under USERRA, which severely limited Plaintiff's ability

to prepare for her defense against the fraudulent administrative charges lodged against her.  That

Plaintiff was so concerned over the denial she received to adjourn this matter for an additional 30

days (as she was entitled to, in accordance with her rights as outlined in the New York State Police

rules and regulations) and due to the double duty Plaintiff had to perform, completing both her

military duties and her New York State Police duties while on approved military leave that Plaintiff

sent correspondence to the Judge in her federal civil lawsuit seeking an injunction barring the New

York State Police from proceeding with the disciplinary hearing against her, which was denied by

this Court due to the fact that Plaintiff did not have the necessary legal knowledge to draft the

proper legal documents and had no access to legal counsel, as her former attorney refused to take

any legal action on her behalf to secure an adjournment in the disciplinary hearing which was scheduled to take place two days after Plaintiff returned from extended military leave.

46.   That during the week of July 6, 2015 (before any decision was supposed to have been made relative to the fraudulent administrative hearing held against Plaintiff) Plaintiff was contacted by her former attorney who advised Plaintiff that John Harford, once again, adjourned Plaintiff's grievance hearings which Michael Volforte granted, without the knowledge and/or consent of either Plaintiff or her attorney, and with no future adjournment date scheduled for these grievances.  And while Plaintiff waited for notification of a new adjournment date, upon Plaintiff's wrongful termination, which was based on the fraudulent written findings and recommendations of the Hearing Board and the written decision of the former Superintendent (all of which were falsified official documents drafted solely by legal counsel members, Thomas Capezza, Lois Goland, Julie Santiago, and Jason Hughes), Michael Volforte refused to return Plaintiff's repeated telephone calls in which she requested that these pending grievances be heard in accordance with Plaintiff's grievance rights as a state employee and a member of the NYSP Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA) which are clearly defined in grievance procedures outlined on the GOER's website but which Mr. Volforte simply refused to honor.

47.   That Plaintiff submits a letter sent to the Honorable Michael Hudson dated October 16, 2017, referencing a multitude of violations the NYSP engaged in, in direct violation of their very own rules and regulations relative to the handling of EEO and complaints against members; the handling of accusations and disciplinary proceedings against members; and the collective bargaining agreement between New York State and the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA) in support of the retaliation she has been subjected to in response to the EEO and retaliation complaint she filed against her former supervisors.

**POST TERMIANTION – CONTINUED ACTS OF RETALATION**

48.  On November 22, 2016, a teleconference was hosted by the New York State Public Employment

Relations Board between Plaintiff, legal counsel to the New York State Police, Clay Lodovice and

Jason Hughes, with leadership members within the New York State Police to include, Patricia

Groeber, Terrance O'Mara, and Stephen Smith relative to the improper practice charge Plaintiff

originally filed against the New York State Police on May 26, 2015.  During this teleconference

Plaintiff disclosed the details regarding the fraudulent EEO and retaliation investigation which Daniel

Penny and Francis Christensen authorized against Plaintiff along with the subsequent fraudulent

administrative charges which were subsequently authorized to be lodged against Plaintiff, resulting

in Plaintiff's wrongful termination from the New York State Police as a further act of retaliation

taken against Plaintiff for filing EEO and retaliation complaints against her former supervisors.

49.  That during this teleconference, Plaintiff further explained to Mr. Lodovice that Plaintiff has physical

evidence and documented proof of the "fraudulent" investigations conducted by IAB, which

included acts of official misconduct to include authorizing investigating members of IAB to direct

Plaintiff's former friends and colleagues to falsify official New York State Police documents (to

include Rosario material in official New York State Police narcotics investigations) in order to give

the "appearance" of substantiating Plaintiff's wrongful termination from the New York State Police.

That Plaintiff presented this information to Mr. Lodovice who, acting as a representative of the New

York State Police, then had a duty and an obligation to bring these criminal complaints to the

attention of the Superintendent to investigate this matter.  However, Mr. Lodovice simply

responded to this information by informing Plaintiff that "they" (speaking on behalf of the New York

State Police) have no intention on reinstating Plaintiff and that "they" were further prepared to

proceed in the pending improper practice charge which Plaintiff filed against the New York State

Police through the New York State Public Employment Relations Board over two years ago and for

which Mr. Lodovice has repeatedly sought to have dismissed before any hearing relative to these

improper practices can take place.

50.  That following this teleconference on March 27, 2017, Mr. Lodovice then proceeded to submit a

falsified document to New York State Public Employment Relations Board Administrative Law Judge,

M. Lynn Fitzgerald, in order to mislead her into dismissing Plaintiff's pending improper practice

charge against the New York State Police by denying the existence of multiple contractual and non-

contractual grievances Plaintiff filed against the New York State Police, some of which were either

intentionally altered and some of which were intentionally withheld by leadership members and

legal counsel representing the New York State Police in order to prevent Plaintiff from exposing the

misconduct and retaliation she was being subjected to.  That Plaintiff responded to the misleading

and inaccurate information contained in this document in correspondence she submitted to Judge

Fitzgerald dated May 5, 2017, May 9, 2017, and May 29, 2017, along with copies of the signed and

received grievances (which Mr. Lodovice initially denied existed as he was unaware Plaintiff had

maintained copies of these appeals and grievances) along with additional physical evidence of the

misconduct legal counsel to the New York State Police, Clay Lodovice, Thomas Capezza, and Michael

Volforte engaged in related to the intentional act of withholding the "unaltered" version of the

appeals Plaintiff personally submitted to them, while further withholding additional grievances filed

by Plaintiff which the New York State Police leadership received and signed for, only to intentionally

withhold these documents while legal counsel representing the New York State Police worked to

expedite Plaintiff's wrongful termination.  That in spite of Plaintiff's repeated requests for the Public

Employment Relations Board to commence proceedings in her pending improper practice charge

against the New York State Police which has remained pending before this agency for over two

years, and in spite of the physical evidence Plaintiff has continued to  submit to this agency as proof

of the improper practices (to include criminal acts) Plaintiff has been subjected to, the New York

State Public Employment Relations Board has continued to delay the commencement of this valid

improper practice charge which Plaintiff filed over two years ago and which this agency seemingly

refuses to commence a hearing in.

51.  That in spite of the information Plaintiff provided to Mr. Lodovice, Mr. Hughes, Mr. O'Mara, Ms.

Groeber, and Mr. Smith on November 22, 2016, these representatives of the New York State Police

have continued to engage in further acts of retaliation against Plaintiff by refusing to consider the

evidence Plaintiff has in this case of the misconduct IAB engaged in and by refusing all mediation

and conciliation requests made by Plaintiff, while permitting falsified legal documents to continue to

be submitted in various pending New York State-Court proceedings where Plaintiff continues to seek

relief.

52. That Plaintiff submits correspondence previously submitted to the Honorable Gregory Poland

subsequent to a second teleconference hosted by the New York State Public Employment Relations

Board on October 4, 2017, as further evidence of the ongoing retaliation Plaintiff continues to be

subjected to and the ongoing refusal of Mr. Lodovice to conduct mediation with Plaintiff.

53.  That in November of 2016, Alexandre'a Wint, Liaison to Speaker of the New York State Assembly,

Carl Heastie, contacted the New York State Attorney General asking their office to conduct an

investigation into the crimes and misconduct Plaintiff has been subjected to, which the New York

State Attorney General responded by advising Mr. Wint that they were refusing to investigate

anything on Plaintiff's behalf.  That the New York State Attorney General continues to refuse to

conduct an investigation in spite of the evidence their office now has in support of the crimes,

misconduct, EEO violations, and retaliation Plaintiff has been subjected to.  While working within the

office of the New York State Attorney General in June of 2014, Plaintiff filed a complaint through the

New York State Attorney General's Civil Rights Division, seeking an investigation into the EEO and

retaliation Plaintiff was being subjected which the New York State Attorney General responded to in

a 3-sentence letter sent dated July 9, 2014, thanking Plaintiff for bringing this matter to their

attention and advising Plaintiff that they would contact her if they required additional information.

That following this letter, Plaintiff was never once contacted by the New York State Attorney

General who, following the submission of this letter repeatedly refused to investigate the situation

involving the New York State Police.

54.   That in September of 2016, Plaintiff received a letter from New York State Senator, Tony Avella,

informing her that the New York State Inspector General had also refused his request for an

investigation into the misconduct, EEO violations, and retaliation Plaintiff was subjected to. That on

March 1, 2017, in response to the repeated requests for an investigation into this matter which

Plaintiff has also requested from the office of the Inspector General since May of 2014, a

representative from the New York State Inspector General contacted Plaintiff by telephone who

would only identify herself as Mary (refusing to provide Plaintiff with her last name) and who further

advised Plaintiff that their office was unwilling to conduct an investigation on Plaintiff's behalf as

they had already closed this matter based on a letter sent by Daniel Penny dated August 4, 2015,

who lied to the New York State Inspector General in response to an inquiry into Plaintiff's wrongful

termination, in order to conceal his own criminal liability over the acts of official misconduct he

personally engaged in against Plaintiff.  That in spite of Plaintiff informing "Mary" that Daniel Penny

lied in the correspondence he submitted to her office immediately following Plaintiff's wrongful

termination, "Mary" continued to insist that the matter was closed but that Plaintiff could submit

anything she wanted to their office.  And in spite of the continued acts of retaliation Plaintiff has

being subjected to in this case, the New York State Inspector General continues to refuse to perform

the duties their office is charged with investigating on Plaintiff's behalf.

55.   On or about November 26, 2016, New York State Police member, Stephen Smith, submitted a

falsified sworn affidavit in a pending small claims case which Plaintiff filed through Batavia City

Court, knowing that the information he swore to in this legal document was false, and where he

intentionally submitted this falsified document to a Court of Law in a pending criminal matter in an

attempt to mislead the Judge hearing this case into wrongfully dismissing Plaintiff's claim in order to

deny Plaintiff the ability to expose the crimes and misconduct Plaintiff has been subjected to by

several high-ranking and corrupt members in the New York State Police.  That Plaintiff submits

correspondence sent to the Honorable Susan Eagan dated August 3, 2017, in response to her

decision upholding the crimes and civil rights violations committed against Plaintiff in this matter.

56. On or about March 26, 2017, counsel to the New York State Attorney General, Jonathan Hitsous,

submitted a falsified legal brief to the New York State Supreme Court, Appellate Division, Fourth

Department, in opposition to an Article 78 which Plaintiff submitted to this Court, requesting them

to overturn Plaintiff's wrongful termination.  That the information contained in Mr. Hitsous' falsified

legal brief was taken from falsely reported documents previously authored by New York State Police

legal counsel members, Thomas Capezza (resigned), and Jason Hughes, who intentionally provided

the New York State Attorney General with these falsified legal documents in order to mislead the

panel of Judges hearing this matter into wrongfully dismissing Plaintiff's Article 78 based on the

falsified information contained in these legal documents and in the erroneous and misleading oral

argument Mr. Hitsous presented to this panel of Judges on April 5, 2017, which was a direct

reflection of the same fraudulent claims Defendants included in their falsified official documents,

and further in direct violation of Plaintiff's contractual rights as outlined in Article 16 – Members'

Rights, of the collective bargaining agreement between New York State and the New York State

Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA), § 16.2, (A).   And on June 9,

2017, the Supreme Court wrongfully dismissed Plaintiff's Article 78, based on the falsified legal brief

and inaccurate, misleading and slanderous oral testimony Jonathan Hitsous presented to this Court,

which has now resulted in New York State case law being recorded in this matter which is

completely inaccurate and erroneous and reflection of the falsified legal documents and falsified

cliams submitted in this case.  That if it were not for the illegal and unethical actions of Division

counsel members representing the New York State Police who provided these falsified documents

and falsified official records to legal counsel members representing the New York State Attorney

General (Kathleen Kaczor, Jonathan Hitsous, and Michael Feeley) who, in turn, relayed this same

falsified information to Judges in various New York State Courts of Law, Plaintiff would have been

rightfully reinstated and rightfully returned to her former position as an Investigator in the New York

State Police.

57.  That in spite of the motion Plaintiff submitted to the Supreme Court on July 20, 2017, requesting

them to reconsider their decision based on the inaccuracy of the information contained in this legal

document and errors of law in their decision where Plaintiff continued to provide this Court with

physical documents, proving at least a portion of the crimes and misconduct Plaintiff was subjected

to which led to her wrongful termination from the New York State Police, the Supreme Court

refused to reconsider their decision and have now recorded slanderous and defamatory case law in

this matter under TP 16-01684 which is completely inaccurate, erroneous, and a direct reflection of

the falsified legal documents submitted in opposition to Plaintiff's request for relief in this matter.

Plaintiff submits correspondence she submitted to the presiding Judge in this Court dated October

7, 2017, who refused to respond to Plaintiff's request for a formal review or an investigation into

this matter.

58.  That on July 3, 2017, Plaintiff met with Gary Ertel and Candace Vogel from the Erie County District

Attorney's Office to request an investigation into the earliest crimes committed against Plaintiff by

her former supervisor, Paul Kelly, as the five-year statute of limitations on prosecuting Mr. Kelly on a

State-level was set to expire on September 12, 2017.  That during this meeting, Plaintiff was

immediately informed by Mr. Ertel that they were uncertain if they would be able to investigate

these crimes because Steven Nigrelli's brother, Michael Nigrelli, works out of their office, due to the

fact that Steven Nigrelli is one of the Defendants in Plaintiff's federal civil lawsuit.  That over the

course of the next several weeks following this meeting, Plaintiff presented both Mr. Ertel and Ms.

Vogel with several documents as evidence of the crimes committed against Plaintiff.  That in spite of

the physical evidence of the crimes which Plaintiff provided their office and after waiting almost two

months, on September 1, 2017, Plaintiff received a voicemail message from Mr. Ertel informing

Plaintiff that their office was unwilling to investigate or prosecute the crimes committed against

Plaintiff by Mr. Kelly.  That as a result of their unwillingness to perform the duties their office is

charged with, Paul Kelly evaded all State-level prosecution related to the earliest crimes he

committed against Plaintiff to include falsifying business records; tampering with public records; and

offering a false instrument for filing.  And due to the fact that the five-year statute of limitations was

allowed to expire in this case, all records and physical documents as evidence of these crimes have

likely been destroyed further frustrating Plaintiff's attempts at having her wrongful termination

overturned and rightfully returned to her former position as a Investigator in the New York State

Police.

## CAUSES OF ACTION

59.  Plaintiff incorporates paragraphs 1-58 as if fully included herein.

60. By discriminating against Plaintiff on the basis of her sex, Defendants violated Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-5, et seq.

61. By promoting and protecting an atmosphere of hostility towards Plaintiff based on her sex,

Defendants violated Title VII, 42 U.S.C. § 2000 et seq.

62. By engaging in sex discrimination against Plaintiff, Defendants violated the Equal Protection Clause

of the 14th Amendment under 42 U.S.C. § 1983.

26

63. By engaging in retaliation against Plaintiff for engaging in a protected EEOC activity, Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-5, et seq.

64. By engaging in retaliation against Plaintiff, Defendants violated the Equal Protection Clause under the 14th Amendment under 42 U.S.C. § 1983

65. By engaging in conspiracy to commit sex discrimination against Plaintiff, Defendants violated the Equal Protection Clause under 42 U.S.C. § 1983

66. By engaging in conspiracy to commit sexual harassment, a hostile work environment, and discrimination against Plaintiff, Defendants violated the Equal Protection Clause under 42 U.S.C. § 1983.

67. By conspiring to retaliate against Plaintiff, Defendants violated the Equal Protection Clause under 42 U.S.C. § 1983.

68. By conspiring to commit sex discrimination against Plaintiff, Defendants violated the Equal Protection Clause under 42 U.S.C. § 1985(3).

69. By conspiring to commit sexual harassment, a hostile work environment, and discrimination against Plaintiff, Defendants violated the Equal Protection Clause under 42 U.S.C. § 1985(3).

70. By conspiring to retaliate against Plaintiff, Defendants violated the Equal Protection Clause under 42 U.S.C. § 1985(3).

71. By failing to prevent a conspiracy to commit sex discrimination against Plaintiff, Defendants violated the Equal Protection Clause under 42 U.S.C. § 1986.

72. By failing to prevent a conspiracy to commit sexual harassment, a hostile work environment, and discrimination against Plaintiff, Defendants violated the Equal Protection Clause under U.S.C. § 1986.

73. By failing to prevent conspiracy to retaliate against Plaintiff, Defendants violated the Equal Protection Clause under 42 U.S.C. § 1986.

74. By engaging in sex discrimination against Plaintiff, Defendants violated New York State Human Rights Law, Executive Law § 296.

75. By retaliating against Plaintiff, Defendants violated New York Human Rights Law, Executive Law, § 296.

76. By engaging in military status discrimination against Plaintiff, Defendants violated USERRA, 38 U.S.C. 4301 et seq.

77. By retaliating against Plaintiff for reporting misconduct on the part of Francis Christensen and Daniel Penny, Defendants violated New York Civil Service Law, CVS § 75-b.

78. By denying Plaintiff rights guaranteed the collective bargaining agreement between New York State and the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA), Defendants violated Article 14, § 209 of the New York State Civil Service law.

79. By retaliating against Plaintiff for reporting the violations she was subjected to, Defendants violated New York State Labor law § 215.

**WHEREFORE**, Plaintiff requests relief as follows:

a. Enter judgment declaring the acts and practices of Defendants to be in violation of the laws of the United States and the State of New York;

b. Issue a permanent injunction ordering Defendants to cease and desist from engaging in the illegal and unlawful acts and practices described herein and ordering Defendants to reinstate Plaintiff;

c. Award Plaintiff the amount of wages, including fringe benefits, lost as a result of Defendants' discrimination, harassment and retaliation;

d. Award Plaintiff consequential damages for losses resulting from Defendants' discrimination, harassment and retaliation;

e. Award Plaintiff compensatory damages for losses resulting from Defendants'

discrimination, harassment and retaliation;

    f.    Award Plaintiff liquidated damages;

    g.    Award Plaintiff punitive damages;

    h.    Award Plaintiff the cost of this action, together with interest and attorney fees.


Dated:  November 7, 2017

Jean Oliver
2 South Shore Drive
Elma, NY 14059
(716) 523-3707
joliver3522@verizon.net


**VERIFICATION**

State of New York)
County of Queens) SS:

JEAN OLIVER, being duly sworn, deposes and says that she is the Plaintiff herein; that she has read the foregoing Verified Amended Complaint and knows the contents thereof; that the same is true of her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, she believes the same to be true.

Jean C. Oliver


Subscribed and Sworn to before me this _____ day, November 2017.


Notary Public

LIXIN ZHAO
Notary Public - State of New York
NO. 01ZH6234314
Qualified in Queens County
My Commission Expires Jan 18, 2019

## ATTACHMENT 1

**Letter to the Honorable Michael Hudson dated October 16, 2017**

October 16, 2017

Permanent address:
2 South Shore Drive
Elma, NY 14059

Temporary duty address:
61-55 Junction Boulevard, Apt. 8J
Rego Park, NY 11374

Honorable Michael Hudson
New York State Court of Claims
Justice Building, P.O. Box 7344
Albany, NY 12224  ,

Court of Claims #129900

Dear Honorable Hudson:

Per your request, I am submitting the following information in support of several of the violations of
New York State Police Rules and Regulations; New York State Police Administrative Report Writing
Manual; and violations of Articles contained in the contractual agreement between New York State and
the New York State Police Investigators Association and Senior Investigators Agreement as it related to
the fabricated Level 4 Personnel Complaint which was lodged against me and which led to my wrongful
termination from the New York State Police.

1.   The NYSP Manual Rule 3 Disciplinary Action Section 3.1 states:
*"Whenever accusations are made by any person or information is received that a Member has
violated any Rule, Regulation, Instruction, or Order of the New York State Police, the Member
receiving such accusation or information shall make an official record of its receipt and immediately,
by telephone, through channels, notify the Deputy Superintendent – Internal Affairs.  Every such
accusation or information shall be thoroughly investigated, in order to protect the accused Member,
the Division and the people of the State of New York, and all such investigations shall be handled in
accord with current written Division instructions outlining the procedure for reporting and
investigating Complaints Against Personnel.  A written report shall be prepared without delay in
accord with Division instructions.  The report shall, whenever possible, include written statements of
the complainant or complainants, written statements of witnesses interviewed, and a full and
complete written statement of the accused Member"*.

As outlined in Section 3.2, Following the investigative procedures as stated above, the Troop or Detail
Commander is required to review the written report in order to determine if he or she is able to
adjudicate the matter at the Troop/Detail level or whether the matter is so serious that he or she is
unable to adjudicate it at the Troop/Detail level and must forward it to Division to be adjudicated at
Division level.

Jean Oliver
Page 2
October 16, 2017

There was never a legitimate investigation conducted into these false accusations as it would have immediately resulted in a dismissal of these fraudulent charges. In fact, the same lead investigating officer of the New York State Police Internal Affairs Bureau (Timothy Owens) who led the "sham" EEO and retaliation investigation against these very same supervisors **in violation of Article 9 of the New York State Police Administrative Manual** (by intentionally breaching my confidentiality and conspiring with Paul Kelly and Timothy Bour to engage in Obstructing Governmental Administration; Official Misconduct; and Tampering with a Witness) was the same lead investigating officer of the Internal Affairs Bureau who was then assigned to investigate the highest and most serious possible Personnel Complaint lodged against me by the very same supervisors who I filed EEO and retaliation complaints against, which were later determined substantiated by the US EEOC.

It would have been impossible for the former Troop Commander, Michael Cerretto, to have reviewed the written report required in Section 3.1 above, since I was never given the opportunity to provide a full and complete written statement. The written report (to include a full and complete written statement by me) had to be included in what the Troop/Detail Commander was supposed to use in determining whether he was able to adjudicate this matter at his level or whether the matter was so serious that it had to be adjudicated at the Division level.

The New York State Police **violated Section 3 of the NYSP Rules** by failing to follow their own rules related to Reports Of Investigations Regarding Accusations Of Misconduct.

Article 16 – Members' Rights of the Investigators/Senior Investigators (BCI) Unit

16.2 A. Administrative Investigations:
*"In a course of a member's duties, occasions will arise when there is a need for inquiry into a member's official actions or activities either as a principal or as a witness so that there will be a recording of facts, for the protection of the member or of the Division, or to rebut, explain or clarify any allegations, criticism or complaints made against a member of the Division. Under such circumstances, members may be requested and are expected to properly respond if requested, submit written memoranda detailing all necessary facts. Such memoranda will not be considered as admissions against self interest in evidence submitted in a disciplinary proceeding under Rule 3 of the NYSP Administrative Manual, unless the member was offered the representation to which he is entitled in an interrogation pursuant to Paragraph 16.2B(7) below".*

B. *"When an investigating officer requests further written statement or affidavit from a member either as a principal or as a witness, procedural requirements as set forth below shall be followed".*

Article 16.2 Section B outlines the process for "**further** written statement or affidavit" from the accused Member in the form of an interrogation. However, this Section is a secondary and "**further**" step in the investigation process, subsequent to the initial investigation.

Timothy Owens intentionally skipped the initial portion of the investigation process because once he realized that the initial accusations made by the same supervisors whom I substantiated EEO and retaliation complaints against lied and fabricated these false accusations against me, he had to

Jean Oliver
Page 3
October 16, 2017

try to salvage the Personnel Complaint by modifying the scope of these false accusations, which is why
there was such a lag in the time between the date I was first notified of the accusations being made
against me and the time when I was finally ordered to report to the Internal Affairs Bureau (which was
extended an additional 3 weeks) to be interrogated, with absolutely no interview or written statement
ever requested of me by Timothy Owens prior to this interrogation.  This is further evidenced in the
mismatch between the specific allegations I was initially charged with (which are outlined on Page 1 of
my July 17, 2014, interrogation) in comparison to the questions he asked of me during this
interrogation.

Page 1 of my interrogation dated July 17, 2014, states:

*"Specifically, it has been alleged that you maintained contact with confidential informants from your
previous assignment at CNET Western.  After having these contacts, it is alleged that you failed to
complete the required documentation of the interaction.  Additionally, it is alleged that you failed to
properly make notifications of your activities to your supervisors after being instructed to do so"*

The specific allegations fail to cite any allegation of me disobeying Steven Nigrelli because that allegation
did not occur until AFTER I submitted physical evidence and verifiable proof to Timothy Owens that the
original allegations could not have possibly been true (which was immediately after I was first notified of
the accusations being made against me on June 20, 2017).  Timothy Owens likely forgot to add the
allegation of me disobeying Steven Nigrelli to Page 1 of the interrogation (in accordance with NYSP rules
and regulations ) as he and John Aquilina were too busy trying to modify all the questions they were
going to now have to ask me in response to the proof I provided to them which negated these false
allegations and should have resulted in an immediate dismissal of this Personnel Complaint and further
resulted in Personnel Complaints being lodged against every one of the Members who participated in
these false accusations, to include Timothy Owens and John Aquilina.  However, because this was likely
being orchestrated by Daniel Penny and Francis Christensen, no legitimate charges were ever brought
against those individuals who participated in these criminal acts against me.

Following my interrogation on July 17, 2017, I immediately submitted further documentation to
investigating members of Internal Affairs, Timothy Owens and John Aquilina as evidence that I not only
had my supervisor's explicit permission to provide a transport on May 29, 2014, but further that I
documented my activities both in the SJS entry I created and in our unit's electronic casebook.  I
additionally submitted email traffic between myself and my supervisor and requested that telephone
records be reviewed as further verification that my supervisor was fully apprised of my activities on the
day in question.  In fact, in an email I submitted to Timothy Owens on July 21, 2014, I specifically asked
that an email response I received from my supervisor (which completely contradicted his claim that he
had no knowledge and did not authorize the transport Michael Davis and I provided on May 29, 2014)
be included as part of my statement taken in response to this Personnel Complaint in order to clarify all
the discrepancies within this interrogation, which neither Timothy Owens nor John Aquilina would
respond to or allow me to provide a secondary statement which I was entitled to submit in response to
these discrepancies.

Jean Oliver
Page 4
October 16, 2017

Section 8F of the New York State Police Administrative Report Writing Manual:

**8F – Procedures for Taking Formal Statements from an Accused Member**

- <u>Remember</u> – Specific allegations must be answered with specific answers

After the statement has been transcribed, the accused Member must be afforded an opportunity to read it in its entirety.  The Member is entitled to a copy of the statement..........

Supervisors shall not allow a Member to make corrections beyond typos or clarification of a word or phrase.

- At the same time, supervisors should also advise the Member that they may give a second statement to clarify an issue.

From the time of my interrogation through the months leading to the administrative hearing held against me, I continued to request the opportunity to clarify the discrepancies contained in this interrogation, which IAB simply refused to respond to my repeated requests.  That my former attorney finally submitted a motion to dismiss these false charges based on this very same issue, along with several other violations I was subjected to in the mishandling of this investigation which the Division of State Police refused to acknowledge or hear, choosing instead to turn this motion over to the Member who was assigned as the presiding officer of the Hearing Board to decide during my hearing, which he promptly denied based on the false testimony provided by former Division counsel member, Lois Goland, who misrepresented the truth in response to Scott Wilcox's inquiry as to whether I was offered an opportunity to add to the statement, to which Lois Goland responded by falsely suggesting that I was given an opportunity, when in fact I was denied this very right.

Testimony taken from transcript of administrative hearing relative to my ability to provide a secondary statement:

*PRESIDING OFFICER WILCOX: She declined to sign it, but it's Division's assertion that at the time the statement was taken, she was offered an opportunity to add to the statement.*

*MS. GOLAND: I think once it's transcribed, she is given an opportunity.*

*PRESIDING OFFICER WILCOX: I am going to deny the second part of the motion.*

Because I was informed that I would not be permitted to speak unless I was asked a direct question at the onset of the hearing by the presiding officer of the Hearing Board, Scott Wilcox, I had to sit there and listen to Lois Goland testify to rights which I was never given and which I was not allowed to

Jean Oliver
Page 5
October 16, 2017

respond to (as Scott Wilcox had no intention on giving me the opportunity to respond to his inquiry) which then allowed him to promptly deny this motion in further violation of my rights.

Prior to the administrative hearing held against me, and on September 24, 2014, I received a memorandum from the former First Deputy Superintendent, Kevin Gagan, informing me that he determined that I was guilty of several allegations outlined in his memorandum (all of which were completely fabricated and did not match the specific allegations I was originally charged with by IAB) and was recommending disciplinary actions against me which included a 30-day suspension without pay; that I be formally censured; and that I be returned to a probationary status for one year (during which time I could be dismissed without recourse to procedures contained in Rule 3 of the New York State Police Administrative Manual).

That I immediately notified my former union representative of Kevin Gagan's findings in this matter as his findings did not even match the allegations which IAB charged me with during my interrogation in July and further to report that Mr. Gagan's decision was also in violation of the New York State Police Manual Rule 3, since Mr. Gagan also made his decision without having a complete report in this matter since I was not only **denied the ability to provide a full and complete written statement** but I was further **denied the ability to submit a secondary statement** as I had requested to clarify all the discrepancies I noted during my interrogation. In addition, I also reported that the disciplinary measures which Mr. Gagan was implementing against me were in violation of the New York State Police Manual Rule 3, which limits the term of probation the First Deputy Superintendent can enact upon a Member to a period not to exceed 6 months. That my union representatives refused to address these discrepancies with Kevin Gagan and further refused to grieve these matters on my behalf, informing me that if I did not agree with his decision in this matter, then my only option was to check the box as indicated on Page 2 of this document, which does not give the member any other option but to request a formal hearing. That over the course of the next several months I continued to try to cite the discrepancies in these fraudulent accusations and IAB's mishandling of this investigation both in the answer to the original charges I submitted on October 27, 2014, and in the answer to the amended charges I submitted to the former Superintendent, Joseph D'Amico, on June 2, 2015, in the hopes that he would dismiss these false allegations against me. However, the former Superintendent simply waited until after I submitted my second request to him for an investigation into this matter in June of 2015, at which time he responded by informing me that an investigation had already been conducted and that a hearing would be my only recourse in this matter.

That my rights under the New York State Manual, Rule 3 were again violated as a result of Scott Wilcox's notification to me at the onset of this administrative hearing that I would not be permitted to speak unless I was asked a direct question. That Section 3.9(d) of the New York State Police Manual states:

*"The accused shall be confronted by the witnesses against him or her, given a reasonable opportunity to hear their statements under oath and to cross-examine them, in person or by counsel. This does not preclude the admission of reliable hearsay when deemed appropriate by the hearing board".*

This rule explicitly states that I am entitled to cross examine witnesses against me "IN PERSON or by counsel". There is nothing contained in this section which states that if the accused member has

Jean Oliver
Page 6
October 16, 2017

counsel, they are NOT entitled to cross examine witnesses.  In fact, during the administrative hearing held against me, both Lois Goland and Jason Hughes jointly asked questions of the witnesses.  So why was this permitted by Division counsel (with the assistance of Timothy Owens who was permitted to remain present throughout the course of the entire hearing (to further intimidate all witnesses) and was further permitted to sit at the table with Division counsel members, cross referencing documents which he pointed out to them to use against me during this hearing, while I was not even allowed to speak?  I worked in a specialized unit and had in-depth knowledge regarding discrepancies and contradictions in the false allegations made against me which no one else in the room had any knowledge of; but because I was forced to remain silent throughout the hearing, the transcript and the testimony in this case only reflects what Division counsel and the Hearing Board allowed these records to reflect.

That I was never given the statements which were authored against me until the night before my hearing upon returning from extended military leave which gave me no time to prepare for my hearing. I was physically exhausted right from the onset of this hearing at which time, I then found myself forced to sit and read these statements for the first time while the individuals who authored these false statements were already in the midst of further testifying against me.  I was tired and I was confused as I tried to understand the context of what they documented against me while, and at the same time, trying to hear the false testimony they were presenting against me in this case for the very first time.

That the New York State Police were further in violation of Rule 3 of the New York State Police Manual when they refused to grant an adjournment of this hearing, upon being notified that I would be on extended military leave throughout the month of June and responded by rescheduling this hearing to commence two days after I returned from extended military leave, thereby denying me the ability to meet with my attorney to allow for the time needed to properly prepare for my defense against these false accusations.

NYSP Manual – Rule 3

3.9 Hearing (d)
*"the defense counsel shall have an opportunity and shall be granted a reasonable time to obtain witnesses and other evidence necessary for a proper defense of the accused.  Such reasonable time for such defense preparation should not extend the commencement of the hearing beyond 30 days".*

Upon receiving the notification of the hearing date scheduled for June 30, and July 1, 2015, I immediately requested that my attorney seek an adjournment due to my extended military leave leading throughout the month of June to which she responded by informing me that the hearing could not be rescheduled and that this hearing would have to take place as planned.  I then proceeded to send a letter to the Judge in my federal case while I was on military duty seeking an injunction to stop the New York State Police from proceeding in this hearing against me.  However, because I lacked the legal knowledge to draft this document in the proper format and had no legal representation to draft the necessary documents on my behalf, my request from the federal court was denied and the hearing commenced as planned by the New York State Police.

Jean Oliver
Page 7
October 16, 2017

That the New York State Police further violated Section 3.9 of the New York State Police Manual when they denied me the ability to submit documents which I prepared in advance for each member of the Hearing Board which completely contradicted the falsely reported documents used to substantiate the fraudulent charges lodged against me.  I sat in my hearing with three stacks of these evidentiary documents which I took the time to prepare for each member of the Hearing Board only to be informed by my attorney that I would not be permitted to submit these documents.

That the New York State Police further violated Section 3.9 of the New York State Police Manual when they denied me the ability to obtain the proper witnesses I needed in my defense.  My former attorney requested that the former Troop Commander, Michael Cerretto, be called in as a witness, as he was a long-time friend and colleague of Paul Kelly and Timothy Bour and was personally responsible for lodging the highest possible level Personnel Complaint against me less than one month after I was forced to submit a "voluntary transfer request" to transfer into Troop A, under his direct command. However, upon the commencement of the hearing I was informed that Michael Cerretto advised that he was not available and therefore was refusing to appear.  That without the Hearing Board giving me the opportunity to question Michael Cerretto, I was further denied my ability to properly defend myself in order to have these fraudulent charges dismissed.

In addition, it was decided on the record and agreed upon by all the parties during the course of this hearing that the Hearing Board would reference the New York State Police narcotics manual in their deliberations with a copy which was also to be provided to both myself and my former attorney. However, neither the Hearing Board nor myself and/or my former attorney were ever given a copy of this manual and this manual was never once referenced in the Hearing Board's decision in this case.

I was also never given the opportunity to provide a closing statement, which I was entitled to present without cross examination, which was further denied.  That following the hearing, I presented each member of the Hearing Board with two documents (in lieu of the closing statement I was denied) in which the presiding hearing officer, Scott Wilcox, responded to by informing me that the Hearing Board would only accept the first document I submitted (which was void any information pertaining to the misconduct investigating members in the Internal Affairs Bureau engaged in against me, but that the Hearing Board was refusing to consider the second document, in which I cited several acts of misconduct on the part of investigating members in the Internal Affairs (again, as they sought to keep these records clean of any reports of misconduct and/or retaliation) which could later threaten to have my wrongful termination overturned, in further support of the fact that my termination had already been decided long before any "hearing" ever commenced.

That while the Hearing Board reported it conducted its deliberations and issued its findings on July 13, 2015, I later discovered that the Hearing Board's findings and recommendations were actually a document drafted by Division counsel members, Thomas Capezza, Lois Goland, Julie Santiago, and Jason Hughes and that no legitimate deliberations or recommendations were ever truly made by the members of this Hearing Board relative to the document which Scott Wilcox signed dated July 13, 2015, as Richard Allen was not even present on July 13, 2015, since he was with his long-time friend and colleague (and the key witness against me) Steven Nigrelli running in the Law Enforcement Torch Run for the Special Olympics in Sacramento, California, which would have made it impossible for him to be engaging in

Jean Oliver
Page 8
October 16, 2017

deliberations as falsely reported.  In addition, both the findings and recommendations of the supposed Hearing Board contradict what veteran sworn supervisory members in the New York State Police would have decided, as I was determined to be guilty of violating rules and regulations which do not even exist in the New York State Police, resulting in finding me guilty and recommending my termination  based on violations of what the Hearing Board determined were violations of "best practices" which is not at all what the Hearing Board was even charged with considering in this case.

That the former Superintendent, Joseph D'Amico, was required to conduct an independent review of this matter, to include a review of the transcript in this case prior to making an independent decision, which he failed to do, as he did not even have a copy of the transcript to review on July 14, 2015, before he "reportedly" signed off on the termination notice dated July 14, 2015.  In addition, I also discovered that Division counsel member, John Harford, contacted the Director of the New York State Governor's Office of Employee Relations during the week of July 6, 2015, to have the pending grievance hearings which had already been scheduled to be heard by the Governor's Office of Employee Relations on July 28, 2015, adjourned indefinitely through the date of my wrongful termination at which time Michael Volforte, then promptly cancelled these grievance hearings (which I was still entitled to have heard in accordance with my grievance rights as outlined by the Governor's Office of Employee Relations website) but which Michael Volforte simply refused to honor.  In addition, I later learned that several of my former colleagues were contacted by Francis Christensen during the week of July 6, 2015, directing them to report to Troop A Headquarters in Batavia the following week to be present for my upcoming termination

Most recently, I learned that multiple grievances I submitted to the New York State Governor's Office of Employee Relations dated April 17, 2015, May 4, 2015, and May 26, 2015, citing the misconduct, and retaliation I was being subjected to under the direction of the former head of Human Resources, Francis Christensen, and the former head of IAB, Daniel Penny, were intentionally withheld by the leadership within the NYSP who refused to submit these signed and received grievances to the New York State Governor's Office of Employee Relations as contractually required, as they sought to keep these grievances from being presented to an outside agency or arbitrator which would have dismissed these fabricated charges against me, and likely resulted in a criminal investigation into the criminal actions which several high-ranking and corrupt members in the New York State Police engaged in against me.

Jean Oliver
Page 9
October 16, 2017

As the parties are aware in this case, on October 6, 2017, I spent approximately 1 and ½ hours providing this Court with the historical facts in this case to include several of the crimes, civil rights violations, misconduct, and retaliation which I have been subjected at the hands of several high-ranking and corrupt members in the New York State Police who were directing subordinate members to engage in acts of retaliation against me for exercising my rights under Title VII.  Based on the detailed information I have provided to this Court in this Claim; in the letter I presented to this Court dated June 20, 2017; in the testimony I have given in this Court; and in the information contained in this document, I believe that I have more than survived Mr. Brownell's motion to dismiss and am respectfully praying that this Court will honor its duty to grant me a hearing in this matter.

Respectfully submitted,

Jean C. Oliver

cc:     Mr. Carlton Brownell, III
        Mr. David DeChellis/Mr. Harvey Sanders
        Mr. Joon Kim

Enclosures:
Article 9A Policy Statements
NYSP Manual Article 9B complaints Against Personnel – Policy and Procedure
NYSP Manual Rule 3
Article 16 – Investigators/Senior Investigators (BCI) Unit Article 16 – Members' Rights
New York State Police Administrative Report Writing Manual
Page 1 of Interrogation dated July 17, 2014
Email from Jean Oliver to Timothy Owens dated July 21, 2014, with request to clarify discrepancies in interrogation
Notice from Kevin Gagan
Motion from my former attorney to dismiss fabricated charges
Request for Michael Cerretto to appear as witness (who refused to appear)
Letter from Joseph D'Amico dated June 25, 2015, refusing to investigate
Page 19 of transcript where Scott Wilcox denies my motion based on false information provided by Lois Goland
Transcript regarding agreement that all parties would receive a copy of narcotics manual, which was to be used in deliberations which was never provided and which the Hearing Board never referenced in their supposed decision.
Response from Scott Wilcox to the two emails I submitted in lieu of the closing statement which I was denied, where he refuses to consider the second email containing my report relative to the misconduct IAB engaged in against me
The Hearing Board's Findings (as authored by Division counsel)
The Superintendent's Decision (as authored by Division counsel)

# ATTACHMENT 2

**Letter to the Honorable Susan Eagan dated August 3, 2017**

August 3, 2017

Permanent address:
2 South Shore Drive
Elma, NY 14059

Temporary duty address:
61-55 Junction Boulevard, Apt. 8J
Rego Park, NY 11374

Honorable Susan M. Eagan
City Court Judge
City Court of Buffalo
50 Delaware Avenue
Buffalo, NY 14202

Dear Honorable Eagan:

I am in receipt of your Decision and Order dated August 1, 2017, dismissing my small claims case against
several of my former coworkers and supervisors who, acting under the color of law, engaged in criminal
acts, outside the scope of their official capacity and outside the scope of their authority, in violation of my
fourth Amendment rights when they illegally detained me and illegally entered my home, during which
time my former friend and coworker, Ryan Shanahan, removed my personal shield (which I personally
bought and paid for) out of my clear plastic makeup bag, unpinned it from the leather holder it was
attached to, placing the leather holder back inside my makeup bag (so that I would not notice that he had
stolen it from me) and then proceeded to slide my personal shield inside his pocket as he walked out of
my bedroom. Aside from these actions constituting multiple federal and state level crimes, it is in
violation of New York State Police rules and regulations to permit sworn members to illegally detain
someone and illegally enter someone's home and steal their personal property. Even if counsel to the
State Police truly believed that this was done for the faulty reasons which you cite in your Decision, a
receipt would have been required to be completed by the member (Ryan Shanahan) taking possession of
this property, which he failed to do, because he was fully aware that his actions on that day constituted a
crime. In fact, I had no idea that my personal property had been stolen out of my home until
approximately two days later when I discovered it had been stolen from me when I was cleaning my purse
out.

I am once again attaching a copy of the letter I sent to you dated June 17, 2017, in response to the hearing
which only you and Assistant Attorney General, Michael Feeley, were aware was taking place on Friday,
June 16, 2017, relative to two motions filed by the New York State Attorney General and counsel to the
New York State Police in response to my complaint (a motion to quash subpoena duces tecum filed
several months ago by New York State Police counsel member, Jason Hughes) and a motion to dismiss
which Mr. Feeley filed in Batavia City Court several months ago based upon the falsified sworn affidavit
Colonel Stephen Smith of the New York State Police which was submitted in response to the charges in
this pending Court action (which is a Class E Felony in direct violation of Section 210.40 of the New York
State Penal Law). Once again it should be noted that while Mr. Hughes submitted his motion requesting
oral arguments, he never bothered to appear in this Court and this Court never compelled him to appear,
as Mr. Feeley was simply allowed to speak on behalf of Mr. Hughes, while I was denied the ability to
argue against any of the inaccurate claims contained in Mr. Hughes' motion, since he was not even

Jean Oliver
Page 2
August 3, 2017

present and was never required to appear or to be questioned relative to his motion in which he was requesting oral arguments.

As you are fully aware and as indicated in the voicemail recording I provided to you from the Batavia City Court Clerk, which I submitted as an enclosure to the document dated June 17, 2017, I was informed by the Court Clerk that the proceeding scheduled for June 16, 2017, would be an initial appearance only. I was never informed that you would be holding a hearing relative to the two motions previously filed by Mr. Feeley and Mr. Hughes, which I fully explained to you during this initial court appearance on June 16, 2017. However, you responded by insisting that you were present to proceed with a hearing on these two motions, which you and Mr. Feeley, then promptly proceeded with, in spite of the fact that I was never informed that you were going to hold a hearing on these motions, and in spite of the fact that I expressed to you (and is noted on the record) that I was not prepared to argue these motions based on the information I was provided by the Court Clerk that this would be initial appearance only.

As I have repeatedly stated, Colonel Smith violated Section 210.40 of the New York State Penal Law (a Class E Felony) when he submitted this falsified sworn affidavit to the Court in response to this pending Court action. Yet, you simply accepted this falsified sworn affidavit and without even compelling Colonel Smith to appear before this Court or to be questioned relative to the contents of this falsified sworn affidavit, while knowing that the information he swore to in this legal document was untrue, you accepted this document on its face and used this falsified legal document as the basis for your decision to dismiss my small claims case.

As I previously indicated in the attached correspondence I submitted to the former Judge reassigned to hear this case; and as I have repeatedly stated; and as all the parties involved in this matter are fully aware: **YOU CANNOT PURCHASE FIREARMS IN NEW YORK STATE WITH A PERSONAL SHIELD.** Furthermore, law enforcement is not entitled to randomly steal someone's personal property while conducting an illegal search and seizure inside their home based on **hypothetical "what ifs"** which is precisely what you included in your Decision and Order as the excuse Division counsel gave you to justify the crimes Michael Cerretto ordered his subordinates to engage in against me on the day I was wrongfully terminated me from the New York State Police. The very thought of this is Ludacris and the fact that you would rule this case in such a manner is, quite honestly, frightening to me, as such a decision sets a dangerous precedence that rogue police officers (or police officers under the control of a corrupt leader) can illegally detain someone; illegally enter and search someone's home; and then proceed to just randomly steal personal property while inside their home and then respond later by simply throwing out some sort of hypothetical scenario of what they claim that person "**might do**" with their personal property in the future as their justification for stealing such property in advance, which is completely preposterous but precisely what your Decision and Order supports in this case.

As I also submitted to you in the document dated June 17, 2017, as part of the centennial celebration of the New York State Police, the New York State Police have authorized the sale of duplicate New York State Police shields on the internet to the open public at a cost of $125. How can you possibly argue in favor of these individuals illegally entering my home, illegally searching my home; and stealing my personal shield

Jean Oliver
Page 3
August 3, 2017

based on the information you cite in your decision, while the open public is being solicited to purchase and possess their very own duplicate New York State Police shields at a cost of $125? I am a Military Intelligence Officer in the United States Army, holding the highest possible level Top Secret Clearance (TS/SCI) as part of my official military duties and a decorated combat veteran who proudly and honorably served two tours in Afghanistan in support of Operation Enduring Freedom (OEF). In addition, I was a sworn member of the New York State Police who served this agency with the highest level of honor and integrity for nearly 18 years prior to my wrongful termination. As such, there was absolutely no justification behind Michael Cerretto ordering my former coworkers and supervisors to engage in these criminal acts against me; and for anyone to argue that this is the Standard Operating Procedure which the New York State Police follows, is an outlandish lie. Michael Cerretto was simply a long-time friend of the supervisors whom I filed an EEO and subsequent retaliation complaints against and who abused his position of trust and his position of authority within the New York State Police in order to facilitate my wrongful termination, followed by promptly ordering his subordinates (and my former friends and coworkers) to engage in these crimes against me as one of the many acts of retaliation he authorized in response to the EEO and retaliation complaints I filed against his buddies. And the very fact that you would even attempt to justify these actions in your Decision and Order is nothing less than abhorrent.

Finally, I noted that you failed to consider any of the legal points I raised in opposition to these motions, and further failed to address the crimes which these individuals committed against me, as this does not even appear anywhere in your Decision and Order.

As I restated in the correspondence I sent to you dated June 17, 2017, the entire crux of my case was based upon the federal violations I was subjected to under Section 1983 of Title 42 of the U.S. Code which permits the filing of this action against these **individually-named defendants** when:

*"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress".*

Furthermore, this Court has a duty and an obligation to hear this case against these individuals based on the Supremacy Clause of Article VI of the U.S. Constitution which mandates that states **MUST** provide hospitable forums for federal claims and the vindication of federal rights which was solidified in the Supreme Court decision of *Felder v. Casey,* 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988).

Jean Oliver
Page 4
August 3, 2017

In accordance with my rights under these laws, this Court is the proper venue for this case as I am not suing the New York State Police but am suing the individually-named Respondents in this case, as **individuals** who, hiding under the color of law, committed crimes against me, which are far outside the scope of their official capacity; far outside the scope of their official duties; and far outside the scope of their authority as sworn members of the New York State police.  The Court of Claims is not the proper venue and will not hear cases against the individually-named Respondents in this case.  And while there is absolutely no justification behind the federal crimes these individuals engaged in against me, this Court has ruled in favor of the crimes these individuals committed in its Order and Decision dated August 1, 2017, where this Court shockingly cited:

"*In the instant case, this Court finds that the defendants, when searching claimant's home for firearms subsequent to her termination and in seizing the duplicate shield, were acting in their official capacities as agents of the State, and therefore, this matter must be filed in the Court of Claims with the State as the defendant*".  (Page 2).

As a former veteran member of the New York State Police, there is no "official capacity as an agent of the State" which permits anyone to engage in criminal activity against someone else while hiding under the color of law simply to evade prosecution from such acts.  Furthermore, this Court's ruling in this case only highlights the need for an investigation behind the reasons why this Court would issue such a flawed and errored decision in this case.

Finally, I would like to address my concern over the reassignment of this case to you and am respectfully requesting clarification as to who reassigned you to hear this case and whether you advised them that you not only serve as a Buffalo City Court Judge with the Honorable Betty Calvo-Torres, but you also serve with Betty Calvo-Torres as an executive member of the Erie County Democratic Committee on various political fund-raising events. Given the fact that Judge Calvo-Torres is married to one of my former supervisors in the New York State Police (Charles Torres-retired) who was personally involved in various acts of retaliation against both myself and another female Investigator in the New York State Police, I believe you had a duty to disclose this information, which should have precluded you from even hearing this case.  Based on this and the above-mentioned factors, I am respectfully requesting an immediate appeal of your decision in this case.

Jean Oliver
Page 5
August 3, 2017


I am also cc'ing Chief Buffalo City Court Judge, Thomas Amodeo; Batavia City Court; Acting US Attorney, Joon Kim; FBI Agent, Timothy Brody; The Unified Court System, Office of Court Administration; the Commission on Judicial Conduct; Erie County District Attorney Chief, Special Investigations, Candace Vogel; and my attorneys, David DeChellis, and Harvey Sanders to request that an investigation be conducted relative to your actions in this case as I have never heard of a Judge upholding the criminal acts of several police officers who were forced to commit crimes on the direct orders of several high-ranking and corrupt members in the New York State Police, which is exactly what occurred in this case and exactly what you have unjustly upheld in this case!

Thank you.

Jean C. Oliver

cc:     Mr. David DeChellis/Mr. Harvey Sanders
        Batavia City Court
        Honorable Thomas Amodeo
        US Attorney, Joon Kim, SDNY
        Agent Timothy Brody
        New York State Unified Court System, Office of Court Administration
        New York State Commission on Judicial Conduct
        Ms. Candace Vogel

# ATTACHMENT 3

**Letter to the Honorable Gregory Poland dated October 4, 2017**

October 4, 2017

Permanent address:
2 South Shore Drive
Elma, NY 14059

Temporary duty address:
61-55 Junction Boulevard, Apt. 8J
Rego Park, NY 11374

Honorable Gregory Poland
Administrative Law Judge
State of New York Public Employment Relations Board
The Electric Tower
535 Washington Street, Suite 302
Buffalo, NY 14203-1415

Dear Honorable Poland:

I am submitting this correspondence in response to your enclosed letter dated September 21, 2017.
As the parties are aware, there were a multitude of improper practices which I documented in my
amended improper practice charge in addition to the fraudulent amended administrative charges which
I was served with during the timeline applicable to this improper practice charge to include:

1.  Counsel representing the New York State Police refusing conciliation efforts with me in February
    of 2015, after Martin McKee was found guilty of violating US EEOC laws related to the gender
    discrimination and retaliation I was subjected to by him and Paul Kelly.

2.  The two appeals I submitted in January and February of 2015 in response to NYSP violating my
    rights under the Taylor Law and those guaranteed under the collective bargaining agreement
    between New York State and the New York State Police Investigators Association, Local 4,
    I.U.P.A., AFL-CIO (NYSPIA) in which legal counsel representing the NYSP (Michael Volforte and
    Thomas Capezza) intentionally withheld the "unaltered" version of these appeals, due to the
    fact that the information contained in these documents cited acts of official misconduct (and
    similar crimes) committed by former lead IAB investigating officers, Timothy Owens and John
    Aquilina who were also responsible for the fraudulent and fabricated administrative charges
    lodged against me which were used in my wrongful termination from the NYSP.  That both
    Thomas Capezza and Michael Volforte not only withheld the "unaltered" version of these
    appeals which both my former attorney and I personally emailed to them (citing misconduct on
    the part of IAB) but Thomas Capezza and Michael Volforte further recorded and submitted only
    the "altered" version of these documents, in which the entire paragraph where I cited
    misconduct on the part of IAB had been intentionally removed without my knowledge and
    without my consent.  That Thomas Capezza and Michael Volforte recorded and submitted only
    the "altered" version of these appeals, in order to attempt to clear the records in this case from
    reflecting the misconduct investigating members of IAB engaged in and which resulted in the
    fraudulent administrative charges lodged against me.

Jean Oliver
Page 2
October 4, 2017

3.  That in less than one week of Michael Volforte receiving the "unaltered" version of these appeals, on January 29, 2017, I received a telephone call from Steven Nigrelli advising me that a Hearing Board was in the process of being established by John Harford, with one of the three hearing board members being Steven Nigrelli's close personal friend and long-time colleague, Richard Allen.  That during this conversation, Mr. Nigrelli further advised me that he would be personally delivering this document to me.  Following this telephone conversation, Steven Nigrelli then directed Kevin Reyes to drive to my office where he personally served me with this document which was authored by John Harford, who intentionally had this document served upon me as a further act of intimidation (as this completely bypassed my attorney with whom Mr. Harford was aware was representing me and with whom Mr. Harford was engaging in ongoing communication with).  That Mr. Harford used this act of intimidation as a means of letting me know not only that he had the ability to schedule Steven Nigrelli's close personal friend as one of the hearing board members against me (ensuring I would be found guilty) but also to ensure that I understood the futility in my repeated requests to exercise any rights I believed I might have in trying to have these fraudulent charges dismissed which was further being reinforced to me by my former union representative, Mark Dembrow, who responded to my complaints to him regarding these actions by informing me that "Division can do whatever they want, while telling me that I "had" a good career (as in past tense) and should just try to stay focused on making it to my retirement and not worry about anything else at this point".

4.  That upon attempting to exercise my right to file an appeal relative to the "unaltered" version of these documents (where I cited acts of official misconduct on the part of Timothy Owens and John Aquilina) to the New York State Governor's Office of Employee Relations (GOER) seeking a hearing and/or possible arbitration in this matter, legal counsel representing the NYSP (John Harford) responded by immediately seeking an adjournment of this hearing on these appeals which had already been scheduled for February 12, 2015 (prior to the scheduling of any disciplinary hearing against me).  Once he was able to have my hearing relative to these appeals adjourned, Mr. Harford then proceeded to only agree to reschedule these appeals for a date which followed the date of a disciplinary hearing which he suddenly needed to schedule against me first.  And in February of 2015, I was notified that a disciplinary hearing had been scheduled against me for April 13, and April 14, 2015, followed by the rescheduling of the hearing related to my appeals for April 21, 2015, which was intentionally rescheduled for a date approximately 2 weeks after the disciplinary hearing so that the NYSP could terminate me following the disciplinary hearing which would then allow the NYSP to cancel this hearing on my appeals before it could ever take place, which is exactly what the NYSP did for a second time when these matters were again rescheduled, as the NYSP continued to violate my rights by delaying the commencement of a hearing relative to these pending appeals from the original date of February 12, 2015, until July 28, 2015, which was the date given to my attorney after the NYSP rescheduled my disciplinary hearing for June 30 and July 1, 2015.  (again, as they knew they would simply terminate me before this date and before any hearing on these grievances or appeals would take place.

Jean Oliver
Page 3
October 4, 2017

This was another improper practice on the part of legal counsel to the NYSP who acted in bad faith, knowing they had no intention on ever allowing any grievance or appeal hearings to take place to begin with (once they knew that I discovered the entire IAB investigation was a sham and the administrative charges lodged against me were fraudulent) as they sought to terminate me following this disciplinary hearing so that they could use this to deny me my right to be heard on these grievances/appeals which would have exposed the misconduct IAB engaged in and resulted in a dismissal of these fraudulent and fabricated charges based on the "sham" investigation of Timothy Owens and John Aquilina.

5.  On April 17, 2015, I submitted a grievance against an appeal I filed relative to a derogatory and improper performance evaluation I received.  I had been falsely led to believe that this matter was pending by my former union representative, Brian Meier, when in fact it had been dismissed months earlier by Matthew Reneman in February of 2015, who had been directed by Francis Christensen to simply hear the matter on his own, without my knowledge and without my consent, and where Mr. Reneman then proceeded to promptly dismiss my grievance while withholding any information from me regarding his decision in this matter which I only found out after I requested to review my personnel file months later.  While this grievance was hand-delivered to Colonel McBath in May of 2015, the NYSP simply withheld this grievance until I could be terminated which was another improper practice aimed at denying me my right to a hearing or arbitration in this matter so that the NYSP could keep me from reporting the misconduct Francis Christensen and IAB were engaging in against me, which were acts further being protected by legal counsel to the NYSP.

6.  In May 2015, the NYSP violated the terms of a MOU between the PBA and New York State relative to the transfer of Troopers into CNET (as Francis Christensen continued to block my transfer requests which had already been approved by the former First Deputy Superintendent, Kevin Gagan) in violation of my rights under the Taylor Law and those guaranteed under the collective bargaining agreement between New York State and the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA), in an act being orchestrated by Francis Christensen who was intentionally violating this MOU by assigning Troopers into CNET West in order to fill the Investigator vacancies as a means of blocking my approved transfer request to return to my former team and my teammates in CNET West.

7.  That on March 13, 2015, I was advised by my former attorney that Division counsel, Lois Goland, contacted him to inquire if I would be interested in a mediation conference with her in place of the disciplinary hearing scheduled for April 13, 2015, which I immediately responded by informing him that I was more than willing to participate in.  That following my need to obtain new counsel, I again requested the opportunity to schedule this mediation conference, in the hopes that the fraudulent disciplinary charges against me would be dismissed and I would be allowed to return to my team and my former teammates in CNET West.  That on April 28, 2015, I met with Lois Goland and while I believed this was a mediation session, she immediately began

Jean Oliver
Page 4
October 4, 2017

waving the pages of charges against me, assuring me that they had so many charges against me that "all they had to do was to throw them against the wall and something would eventually stick" and since it was a Level 4 Personnel Complaint, I could be terminated for being found guilty of any one of these charges, while she reminded me that everyone has to do things they don't want to do, citing her very own example as to why she should have to submit to the random drug tests required of members in the State Police.  That immediately upon informing me of this, I then sat and watched as she and Tara Arey proceeded to engage in a back and forth conversation in my presence where they discussed between the two of them that I was already guilty of falsifying a document for putting Timothy Bour's name down as a back-up member on a contact sheet which I submitted in March of 2014 and that unless I agreed to the terms she would be sending to my attorney, she would be serving me with amended charges and proceed with this disciplinary hearing against me.  That following this meeting, Lois Goland then sent an email to my former attorney indicating that not only would I be required to lie and plead guilty to every single one of the fabricated charges filed against me but I would also be required to dismiss my pending EEOC complaint, my pending grievances, and my pending federal lawsuit (which she never previously discussed with me – as she knew this was a protected activity and something which she was not allowed to do) in exchange for an undisclosed punishment, which would be less than termination.  That these acts of intimidation and coercion were further violations of the Taylor Law and my rights under the collective bargaining agreement between New York State and the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA); and when I requested that my former union representative, Mark Dembrow, file a grievance on my behalf based on the conversation which took place in his presence and the email Ms. Goland sent to my former attorney, Mr. Dembrow would only respond by informing me that he believed that this conference was confidential and that I was not supposed to be talking about the things which were said to me by Ms. Goland.  That because the union was unwilling to act on my behalf, I filed both a grievance and an improper practice charge against the Lois Goland who responded by directing my former union representative, Mark Dembrow, to advise me that she would be serving as the lead division counsel member in the disciplinary hearing to be held against me.  Shortly after this notification and on May 29, 2015, I was served with a copy of the fabricated and fraudulent administrative charges, just as Lois Goland had promised.

8.  On May 4, 2015, I filed a grievance relative to multiple contractual violations which I was continuing to be subjected to and which was also hand-delivered to Colonel McBath and withheld by NYSP, who again sought to deny my right to a hearing or arbitration in these matters in order to prevent me from exposing the misconduct investigating members in IAB were engaging in against me and the retaliation I was being subjected to.

9.  On May 26, 2016, I filed both an improper practice charges through PERB and a grievance through the GOER in response to the improper practices I described above, as I further sought to have the level of this fraudulent personnel complaint reduced to a Troop level complaint in the hopes that my leadership at the Troop level would help me to have these fraudulent charges

Jean Oliver
Page 5
October 4, 2017

dismissed, only to later discover that this grievance was also withheld at the Troop level, again as a means of denying me a hearing or arbitration which would have exposed the fraudulent charges, misconduct, and retaliation I was being subjected to.

10. On or about June 3, 2015, my former attorney notified me that Francis Christensen had recused himself from my Step 3 appeals related to my grievances and that once a replacement had been named, I would be notified of the new date for these grievance hearings. Approximately 1 day later, an email was sent from Jill Bertrand scheduling my disciplinary hearing for June 17, and 18 (while I was on military leave). I immediately contacted my former attorney who contacted Division, who responded by immediately rescheduling my disciplinary hearing to commence on June 30, and July 1, 2015, which was two working days after I returned from extended military leave and where I was further notified that this matter could not be rescheduled and would have to take place on these dates as directed. Shortly after this notification, my former attorney then advised me that my new adjournment date for my grievance hearings had now been scheduled for July 28, 2015. However, during the week of July 6, 2015 (before any decision was supposed to have been made relative to the administrative hearing held against me) I was contacted by my former attorney who advised me that John Harford had contacted Michael Volforte to request an adjournment of my grievance hearings which Michael Volforte agreed to without the knowledge and/or consent of either myself or my attorney, and with no future adjournment date scheduled for these grievances. And while I waited for notification of a new adjournment date, upon my wrongful termination which suddenly occurred on July 14, 2015, Michael Volforte refused to return my repeated telephone calls in which I continued to request that these grievances be rescheduled in accordance with my grievance rights as a state employee and a member of the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA) which are clearly outlined in the New York State Governor's Office of Employee Relations website but which Mr. Volforte simply refused to honor.

11. That while on extended military leave in June of 2015, I was ordered to continue working on my Trooper applicant while on approved military leave in violation of my rights under USERRA laws after my former supervisor, Robert Gardner advised me that this Applicant had to be completed in time and that no extensions would be granted. Mr. Gardner additionally called me while I was on approved military leave and while I was in a meeting with my former Commander to advise me that I needed to figure out a way to get documents to the Investigator who was conducting the polygraph on my Applicant as he was not near the office and could not return to the office to get these documents to the Investigator on my behalf, causing me to have to excuse myself from my meeting to conduct New York State Police business while on military leave and inside a federal reserve center. That I have emails, computer and telephone records in support of this violation under USERRA, which also severely limited my ability to prepare for my defense against the fraudulent administrative charges lodged against me. That I was so concerned over the denial I received to adjourn this matter for an additional 30 days (as I was entitled to, in accordance with my rights as outlined in the New York State Police rules and

Jean Oliver
Page 6
October 4, 2017

regulations) and due to the double duty I had to perform, completing both my military duties and my New York State Police duties while on military leave that I sent correspondence to the Judge in my federal civil lawsuit seeking an injunction barring the NYSP from proceeding with the disciplinary hearing against me, which was denied due to the fact that I did not have the necessary legal knowledge to draft the proper legal documents and had no access to legal counsel, as my former attorney refused to take any legal action on my behalf to secure an adjournment in the disciplinary hearing which was scheduled to take place two days after I returned from extended military leave.

12.   Regarding the amended charges:  The initial allegations I was charged with on June 20, 2014 changed after I produced documented evidence to investigating members of the IAB that the initial allegations against me could not have been true.  That over the course of the time from when I was first notified of the initial allegations, the subsequent allegations and subsequent charges, continued to change and were increasingly expanded upon, as investigating members in IAB became so desperate to keep this fraudulent personnel complaint from being dismissed that they began to direct subordinate members to falsify and re-falsify official reports against me (to include Rosario material in official narcotics investigations) as they sought to try to create the façade of substantiating these fabricated charges against me by expanding upon the original allegations, which I completely negated prior to my interrogation on July 17, 2015, and further in the subsequent charges and amended charges, in which broad and vague language was added to these charges, to include the terms "CNET contacts" and "among other things" as Division counsel sought to add language within these charges which had no definitive meaning and therefore could be openly interpreted to encompass Steven Nigrelli's first, second, and third accounts of his ever-changing directive which even he could not recall without reading, followed by the Hearing Board who established their very own interpretation which they used to find me guilty of violating "best practices" which do not even appear in the amended charges against me and do not even constitute violations of any rules and regulations within the New York State Police.

Based on all of the improper practices which I have been subjected to during the timeline applicable to this improper practice charge, I am unclear as to why PERB continues to delay the commencement of a hearing relative to these improper practices.

I would respectfully request for clarification as to why this Court is making an inquiry into the specific changes I reported in the amended charges which I was served with on May 29, 2015, while trying to restrict me from reporting the totality of the changes which occurred from the time I was first notified of the specific allegations I was being charged with, to the service of the amended charges.

I would also respectfully request clarification as to who was permitted access to the telephone conference which was supposed to be held solely between Judge Poland, myself, and Mr. Clay Lodovice, as I noted on several occasions throughout this telephone conference, I could hear someone

Jean Oliver
Page 7
October 4, 2017

accessing this teleconference line which this Court failed to address at any time during this
teleconference.  Oddly enough, immediately following the teleconference, counsel representing the
NYSP and several individually-named defendants in my federal lawsuit, included a request for all
documents and materials pertaining to my improper practice charge in the Rule 26 Initial Disclosures
they submitted in my federal lawsuit dated September 19, 2017.  Based on these factors, I would
respectfully request that this Court identify those individuals who were permitted access to this
teleconference line without my knowledge and without my consent on September 19, 2017.

I am again respectfully requesting that a hearing commence relative to these improper practices. I am
also cc'ing PERB executive members in this correspondence as I do not believe that my request to
commence a hearing in these matters will be granted, and am therefore seeking the intervention and
assistance of PERB executive members in honoring this agency's duties to enforce the Taylor Law and by
granting me a hearing related to these valid and timely improper practices which have remained
pending before this agency for over two years.

Sincerely,

Jean C. Oliver

cc:     Harvey Sanders/David DeChellis
        John Wirenius/Sarah Coleman/Robert Hite/Jonathan O'Rourke/Kevin Flanigan/
        William Conley/Kimberly Sanderl
        Clay Lodovice



**STATE OF NEW YORK**
**PUBLIC EMPLOYMENT RELATIONS BOARD**

The Electric Tower
535 Washington Street, Suite 302
Buffalo, NY 14203-1415
TEL: (716) 847-3449
FAX: (716) 847-3690
www.perb.ny.gov

**JOHN F. WIRENIUS**
Chairperson

**GREGORY J. POLAND**
Regional Director

September 21, 2017

Jean C. Oliver
2 South Shore Drive
Elma, NY 14059

Re: Case No. U-34335
New York State Police

Dear Ms. Oliver:

You have alleged in the above-referenced improper practice charge that your employer retaliated against you for filing said charge.  You allege that after you filed the above-referenced charge, your employer issued fabricated and falsified amended charges against you.

During the telephone conference scheduled at your request and conducted on September 19, 2017, I informed you that a comparison of the October 21st charges and the amended charges dated May 29, 2015, revealed the addition of witnesses' post retirement addresses and the identification of an additional possible witness.  I inquired as to whether you could identify any other changes to the October 21st charges.

Although no other changes were readily identified by you during the call, please be advised that you may respond to that inquiry in writing.  Please limit your response to only changes or alterations made to the October 21, 2014 charges and contained in the amended charge dated May 29, 2015.  Changes or modifications made prior to the October 21st charges are non-responsive to my inquiry.  Please take notice that if you choose to do so, your response is due no later than October 4, 2017.  It must be copied to Mr. Lodovice and postmarked no later than October 4, 2017.

Very truly yours,

Gregory J. Poland                    KB

Gregory J. Poland
Administrative Law Judge

GJP/kb
cc:  Clay Lodovice, Esq.

**ATTACHMENT 4**

**Letter to the Honorable Gerald Whalen dated October 7, 2017**

October 7, 2017

Permanent address:
2 South Shore Drive
Elma, NY 14059

Temporary duty address:
61-55 Junction Boulevard, Apt. 8J
Rego Park, NY 11374

RECEIVED
OCT 13 2017
APPELLATE DIVISION
4TH DEPARTMENT

Honorable Gerald J. Whalen
Presiding Justice
Supreme Court, Appellate Division
Fourth Department
50 East Avenue, Suite 200
Rochester, NY 14604

APPELLATE DIVISION
FOURTH DEPARTMENT
2017 OCT 13   PM 12: 04
FILED

**RE: MOTION NO. (533/17) TP 16-01684**

Dear Honorable Whalen:

I am sending you this correspondence to respectfully request your review of the decision made in the above-referenced case.  There were critical errors made by the Court in its decision, and I am praying that you will conduct a formal review of this matter and grant my request for relief against this decision which, if allowed to remain as published, will establish case law which is legally flawed as it is a direct reflection of the falsified legal documents submitted in opposition to my Article 78 and my subsequent motion for re-argument, containing completely erroneous information which fails to acknowledge or address any of the legal documents I submitted as part of my Article 78 and motion for re-argument wherein I presented evidence in support of the crimes committed against me, to include the "sham" EEO and retaliation investigation conducted by the former lead New York State Police (NYSP), Internal Affairs Bureau (IAB) investigating officer, Timothy Owens; the fabricated administrative violations I was wrongfully accused of by my former supervisor, Martin McKee, who initiated these false allegations in direct response to the retaliation complaint I substantiated against him through the US EEOC (all of the fraudulent "decisions" of the Hearing Board and the former Superintendent to terminate me (all of which were documents solely authored by NYSP Division counsel members, Thomas Capezza, Lois Goland, Julie Santiago, and Jason Hughes)  to discredit me in order to conceal the misconduct investigating members within the New York State Police Internal Affairs Bureau engaged in as part of the "sham" IAB investigation they conducted in response to the internal EEO complaint I filed against Paul Kelly in which I reported  gender discrimination, sexual harassment, and misconduct under the leadership of Paul Kelly and his former supervisor, Martin McKee, relative to fraudulent narcotics investigations; the mishandling of confidential informants; and egregious safety violations taking place within the unit where I was assigned as an undercover narcotics Investigator for nearly 6 years.

That I have further evidence which suggests that the documents submitted by legal counsel to the New York State Attorney General, Kathleen Kaczor, and Jonathan Hitsous in opposition to my Article 78 and motion for re-argument were falsified legal documents, one of which was falsely affirmed under penalty of perjury by Thomas Capezza, and all of which are falsified legal documents authored by NYSP

Jean C. Oliver
Page 2
October 7, 2017

Division counsel members, Thomas Capezza, and Jason Hughes who have submitted these falsified legal documents to legal counsel representing the  New York State Attorney General, Michael Feeley, Kathleen Kaczor, and Jonathan Hitsous to submit on their behalf, as they continue to hide behind the protection of the New York State Attorney General in order to give the "appearance" of legitimatizing their falsified legal documents, in order to further insulate and protect themselves from criminal liability over their own misconduct in this case.

That the Judges assigned to hear this case, the Honorables Centra, Peradotto, Lindley, Curran, and Scudder, refused to consider any of the evidence I submitted in this case but rather chose to simply "reword" the falsified legal documents submitted in opposition to my Article 78 and my subsequent motion for re-argument, using the very same falsified claims submitted in this case by the New York State Attorney General (as provided to them by NYSP legal counsel, Thomas Capezza and Jason Hughes) to uphold the crimes, civil rights violations, and retaliation several high-ranking and corrupt members within the NYSP engaged in against me, to include my wrongful termination from the NYSP.  The Judges assigned to hear this case clearly never took the time to understand the facts in this case, which are completely inaccurate right from the start of their Memorandum and Order entered June 9, 2017, and seem to reflect a decision which was simply "cut and pasted" from some prior decision containing the same exact verbiage used in previous Article 78 denials involving the New York State Police.  This case is about my life, and I deserved their fair and impartial consideration in this matter, which I did not receive.

Please read their Memorandum and Order entered June 9, 2017.

1. I was not a Trooper for over 17 years.  I was a Trooper for 7 years prior to being promoted to the rank of Investigator in the New York State Police and continued to serve as an Investigator in the New York State Police for nearly 11 additional years prior to my wrongful termination after almost 18 years of dedicated and honorable service to the New York State Police.

2. I did not file discrimination claims against various coworkers, I filed an internal discrimination complaint against my former supervisor, Paul Kelly.

3. I was not transferred to CTIU following my discrimination complaint.  I was transferred to another team within CNET West following my discrimination complaint for which I filed a formal complaint through the US EEOC and for which the US EEOC established that I was in fact subjected to gender discrimination and was in fact further subjected to retaliation by the former officer in charge of CNET West, Martin McKee, for exercising my rights under Title VII.

4. I was forced to transfer to CTIU due to the repeated acts of retaliation I was being subjected to by the very same supervisors whom the US EEOC established were guilty of gender discrimination and retaliation, namely Paul Kelly, Martin McKee, and Timothy Bour.

Jean C. Oliver
Page 3
October 7, 2017

5.  The supervisors whom I met with upon transferring into CTIU (Steven Nigrelli and Kevin Reyes)
    refused to even discuss the situation in CNET West with me or the reasons why I was forced to
    submit a "voluntary" transfer request from CNET West into CTIU. Furthermore, the initial
    allegations brought against me by investigating members in the Internal Affairs Bureau of the
    New York State Police never cited any allegation of me disobeying Steven Nigrelli (**because that
    was never one of the allegations I was charged with, until I provided SUBSTANTIAL EVIDENCE
    that the initial allegations were completely unfounded**).

    The specific allegations I was charged with by investigating members within the New York State
    Internal Affairs Bureau were provided to me, as procedurally required in accordance with the
    NYSP Rules and Regulations pertaining to complaints against personnel, which stated:

    **"Specifically,**

    **"it has been alleged that you maintained contact with confidential informants from your
    previous assignment at CNET Western."**

    **"After having these contacts, it is alleged that you failed to complete the required
    documentation of the interaction."**

    **"Additionally, it is alleged that you failed to properly make notifications of your activities to
    your supervisors after being instructed to do so."**

The initial charges lodged against me were based on the fabricated allegations which came from Martin
McKee who sent the two attached emails to Steven Nigrelli and the former regional commander of the
New York State Police Internal Affairs Bureau, Mark Koss. Upon receiving these emails, Steven Nigrelli
simply believed these false allegations (which were nothing more than further acts of retaliation being
taken against me by the same supervisor whom the US EEOC substantiated retaliation against me in
response to my decision to exercise my rights under Title VII) and immediately confronted my direct
supervisor, Gerald Kopacz, with these false allegations. Mr. Kopacz, who was so afraid that I had
actually done something wrong and/or that he would personally get into trouble over authorizing me to
provide this transport, panicked and denied any knowledge of the transport he authorized me to
provide on May 29, 2014.

**Page 1 of the Memorandum and Order:** *"It is undisputed that, approximately two weeks after that
meeting, petitioner transported a person who had been a CNET confidential informant to and from an
interview with federal authorities who were investigating a person petitioner had investigated while
working with CNET."*

I never investigated this person while working with CNET, and the interview federal authorities
conducted with the witness on May 29, 2014, was related to a federal investigation which had
absolutely nothing to do with CNET and was not a former CNET case or a CNET-related matter.

Jean C. Oliver
Page 4
October 7, 2017

Furthermore, I only provided a transport of this individual with one of my colleagues after I received my former supervisor, Gerald Kopacz's explicit permission to do so (See attached letter from Detective John Trabert).  My transport was a Troop "A" CTIU assignment and was consistent with same assignments I was regularly given as a member of Troop "A" CTIU.

That upon learning of the false allegations being made against me, I immediately produced documents and physical evidence as proof that these allegations were completely fabricated.  And when I did, investigating members in the Internal Affairs Bureau responded by directing Gerald Kopacz to backdate a modified version of the story he would have to now use (after it was revealed that I had physical proof that Mr. Kopacz lied) and further directed Steven Nigrelli and Kevin Reyes, to falsify and then later re-falsify a series of matching memorandums against me, which initially only accused me of disobeying Steven Nigrelli for engaging in what Martin Mckee alleged in his email was a "previous CNET West investigation".  However, when I produced evidence to investigating members in the Internal Affairs Bureau that proved that my transport had nothing to do with any "previous CNET West investigation", investigating members in the Internal Affairs Bureau responded by redirecting Steven Nigrelli and Kevin Reyes to re-author a second set of falsified matching memorandums, which now had to be modified from their first set of matching memorandums to include the newly established claim that Steven Nigrelli told me to:  "refrain from working on any **CNET related matters**" (Steven Nigrelli's second memorandum dated August 6, 2014); and "she was not to have any active involvement with **all preexisting CNET cases**" (Kevin Reyes' second memorandum dated August 6, 2014) as investigating members within the Internal Affairs Bureau of the New York State Police intentionally sought to redefine the terms of the "alleged order" I was directed to refrain from, to include broad and vague language such as "**CNET related**", "**CNET contacts**" and "**CNET matters**" which would provide an open door in which the Hearing Board could later use to establish their very own interpretation of the meaning of these undefined terms and then use this to find me guilty, which is exactly what they did in this case.  Quoting the Hearing Board's decision:  "**The Board also concluded that despite Investigator Oliver's insistence that her contact with the CI was not in violation of her orders because she purported that his status was that of a "former" ("de-activated") CI, <u>the very fact that she only knew of this individual from her work with CNET irrevocably connects the CI to her former position in CNET</u>**".

That in response to the misconduct and retaliation which was taking place against me prior to my wrongful termination, I submitted multiple grievances in accordance with my rights guaranteed as a New York State public employee and those guaranteed under the collective bargaining agreement between New York State and the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA).  That I was denied grievance hearings and/or arbitration in these grievances in direct violation of the Taylor Law and in direct violation of my rights as outlined in the collective bargaining agreement between New York State and the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA) by supervisors in the New York State Police who intentionally withheld these grievances, refusing to submit them to the New York State Governor's Office of Employee Relations (NYSGOER) as they could not let these documents get out (which cited criminal acts to include acts of official misconduct, civil rights violations, and the retaliation I was being subjected to).  These grievances

Jean C. Oliver
Page 5
October 7, 2017

were intentionally being withheld because Division counsel to the New York State Police knew that if these grievances reached an outside arbitration panel, they would be found guilty of some of the most serious acts of official misconduct, public corruption, and retaliation in the history of the New York State Police. As a result of the information contained in these documents, Division counsel ordered investigating members within the Internal Affairs Bureau to build a case against me using falsified documents drafted by subordinate members, which included the lead investigating member of the New York State Police Internal Affairs Bureau, Timothy Owens, to order one of my former colleagues (Kevin Gallagher) in CNET West to falsify Rosario material in an official New York State Police narcotics investigation just so that it would appear to substantiate the false accusations made by the former supervisors whom I had already substantiated gender discrimination and retaliation against, by the US EEOC, namely Paul Kelly, Martin Mckee, and Timothy Bour who were the same individuals who initiated these false charges against me to begin with.

What is troubling in this case, is that NOWHERE in the Memorandum and Order of this Court entered June 9, 2017, does it mention that the US EEOC did in fact substantiate that I was also subjected to **retaliation** in response to engaging in a protected activity under Title VII. That NOWHERE in the denial of my motion for reargument filed by this Court on September 29, 2017, does it mention the official NYSPIA/NYS grievances I filed against the New York State Police citing the repeated acts of retaliation I was being subjected to, which were intentionally withheld by legal counsel to the NYSP in order to deny me any right to arbitration and/or the grievance hearings I was entitled to in accordance with my rights as a New York State employee and those guaranteed under the collective bargaining agreement between New York State and the New York State Police Investigators Association, Local 4, I.U.P.A., AFL-CIO (NYSPIA) which were intentionally withheld by legal counsel to the NYSP who sought to keep the records in my case clean of the retaliation I reported, to include the attached emails I submitted to each member of the Hearing Board in which I directly reported the repeated acts of misconduct and retaliation I was being subjected to, which the presiding officer of the Hearing Board, Scott Wilcox, responded to by informing me that the Hearing Board would only consider the first email I submitted to them (which was void any report of misconduct and retaliation) while refusing to consider the second email I submitted to them (which documented the misconduct and retaliation I was being subjected to). The retaliation was documented both by my attorney in my Article 78 and in my subsequent motion for reargument, which this Court simply refused to consider as this case met the same criteria established in the *Matter of Kowaleski*, 16 N.Y.3d 85 (2010) and was identical to the denial of consideration I faced after reporting the retaliation I was being subjected to for engaging in a protected activity under Title VII both within the reports I submitted to investigating members within the New York State Police Internal Affairs Bureau; multiple NYSPIA/New York State grievances I filed; the two emails I submitted directly to each member of the Hearing Board; and in the details contained in the case brought before this Court, which included the US EEOC determination of discrimination **AND RETALIATION**, which this Court simply refused to acknowledge and refused to cite in either their Memorandum and Order entered June 9, 2017, or in their denial of my motion filed September 29, 2017, as this would have required them to grant my request and overturn my wrongful termination.

Furthermore, as part of my motion for re-argument, I submitted a letter of censure signed by Patricia Groeber of the New York State Police relative to the disciplinary measures taken against Trooper Foley for engaging in the same violations I was wrongfully accused of. However, in my case, the allegations of

Jean C. Oliver
Page 6
October 7, 2017

me disobeying a supervisor and failing to properly document my activities (all of which were fraudulent) resulted in me having the highest possible level personnel complaint lodged against me (a Level 4, which is the only level that can result in a member's termination from the New York State Police), while Trooper Foley was only charged with a Level 3 (which cannot result in a member's termination from the New York State Police). Subsequent to a finding of guilt relative to these charges, Trooper Foley (while on probation for these very same violations) then decided to show up for work intoxicated, falsified documents, and lied to investigating members within the Internal Affairs Bureau, resulting this time in a Level 4 personnel complaint being lodged against him, for which he was again found guilty of but for which he only received a few more days of suspension time and an extension of his probation (as evidenced in the letter issued by Patricia Groeber) which I also submitted to this Court. The only difference in the charges against me and the charges against Trooper Foley are that Trooper Foley is a white male who did not engage in a protected activity under Title VII. So while I needed to be charged with the highest possible level personnel complaint and immediately terminated after having served the NYSP honorably for the past 17+ years, with no previous disciplinary actions, Trooper Foley (who has repeatedly been the subject of disciplinary actions) can repeatedly engage in similar actions with minimal suspension time, while remaining as a member of the New York State Police in good standing. I submitted this document to this Court as proof of the disparate treatment I received in this case as part of my motion, which ONCE AGAIN, this Court simply refused to acknowledge.

I am also unclear as to how Jonathan Hitsous' affirmation in opposition to my motion could have been considered by this Court when the signature and attestation portion of this affidavit was left completely blank and void of any and all of the required signatures? Perhaps Mr. Hitsous left this blank intentionally as a means to protect his own legal liability over what he knew were falsified legal documents which he submitted in response to these pending Court matters?   Please tell me why this was never addressed by this Court who still chose to grant his request and deny both my petition and my motion?

I have spent over two years appealing to various New York State Courts and New York State sponsored administrative agencies, seeking justice in this case through a fair and impartial judicial or administrative hearing/process but have found in every case that these agencies are typically headed by individuals who are in New York State politically-appointed positions, which they simply refuse to jeopardize for the sake of administering fair and impartial justice, and I am now fearful that this is exactly what has occurred in this case as well.

Honorable Whelan, I am a decorated female combat veteran (currently serving as an active-duty Military Intelligence Field Grade Officer) who proudly and honorably served this great Nation in two combat tours in Afghanistan in support of Operation Enduring Freedom (OEF). I am also a decorated veteran member of the New York State Police who proudly and honorably served the citizens in New York State for nearly 18 years prior to my wrongful termination. I am begging you to please honor this veteran with a commitment of your time and consideration in this matter. I believe in you Sir, and I pray that you will take the time needed to fully review this case in its entirety. Please speak with Robyn Carlton in the Appellate Division Law Library regarding the complete case folder, which I now have reason to believe contains documents which I submitted to this Court but which may have been intentionally withheld from the Judges hearing this case.

Jean C. Oliver
Page 7
October 7, 2017

I am cc'ing my attorneys, David DeChellis, and Harvey Sanders and am further cc'ing the Unified Court System, Office of Court Administration and the New York State Commission on Judicial Conduct as I believe something has gone terribly wrong here. There were crimes committed against me in this case and a fraudulent Hearing Board which was assembled for appearance sake only. With all of the proof that I have submitted to the Court, there is no reason why this case was not overturned or, as an alternative, referred for a fair and impartial administrative hearing, or, as a secondary alternative, referred to the Court of Appeals, all of which were promptly denied by the Judges who clearly refused to fairly and impartially hear this matter. Please tell me how this could have happened and why?

I would also respectfully request the opportunity to meet with you or with someone in your staff to resubmit to you any of the evidentiary documentation I previously submitted in support of the facts in this case.

Thank you very much Judge Whelan for your time and consideration in this matter. Please take the time to review this case in a fair and impartial manner. I will wait every day for your response to my request.

Sincerely,

Jean C. Oliver
716-523-3707
joliver3522@verizon.net

cc:     David DeChellis/Harvey Sanders
        Mark Bennett
        Robyn Carlton
        New York State Unified Court System, Office of Court Administration
        New York State Commission on Judicial Conduct
        Michael Hudson
        Carlton Brownell
        Joon Kim

Enclosures:
Emails from Martin McKee dated June 16, 2014 and June 19, 2014
US EEOC Decision dated January 29, 2015
Memorandum of Steven Nigrelli dated June 19, 2014
Memorandum of Kevin Reyes dated June 19, 2014
Letter from Detective John Trabert
Second memorandum of Steven Nigrelli dated July 30, 2014
Second memorandum of Kevin Reyes dated August 6, 2014
Transcript from testimony of Steven Nigrelli (his third account of the alleged directive)
Grievances I submitted dated April 17, 2015, May 4, 2015, and May 26, 2015, which were intentionally withheld by the NYSP, denying me my rights to arbitration, mediation, or a hearing related to the retaliation outlined in these grievances
Emails (two) sent to the Hearing Board, along with the response from Scott Wilcox
Letter of Censure from Patricia Groeber to Trooper Foley dated May 9, 2016

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JEAN C. OLIVER

**(b)** County of Residence of First Listed Plaintiff   ERIE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*   N/A
PRO SE

## DEFENDANTS
NEW YORK STATE POLICE, ET AL

County of Residence of First Listed Defendant   ALBANY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☑ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education
- ☑ RETALIATION

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☑ 896 Arbitration
- ☑ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
CIVIL RIGHTS ACT OF 1964, 42 USC SECTION 2000 et seq

Brief description of cause:
BEAT RETALIATION FOR FILING EEO COMPLAINT / REPORTING MISCONDUCT

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE BRENDA SANNES   DOCKET NUMBER 1:15-CV-00444

DATE 11/9/17

SIGNATURE OF ATTORNEY OF RECORD   Jean O Oliver   PRO SE

### FOR OFFICE USE ONLY
RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE