**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JEAN OLIVER,

|                                          |                          |
| ---------------------------------------- | ------------------------ |
| Plaintiff,                               | 1:19-cv-233 (BKS/DJS)    |

v.

NEW YORK STATE POLICE; FRANCIS
CHRISTENSEN, in his individual and official capacity;
DANIEL PENNY, in his individual and official capacity;
THOMAS CAPEZZA, in his individual and official
capacity; CLAY LODOVICE, in his individual and official
capacity; JOHN HARFORD, in his individual and official
capacity; MICHAEL VOLFORTE, in his individual and
official capacity; LOIS GOLAND, in her individual and
official capacity; and JASON HUGHES, in his individual
and official capacity,

Defendants.

**Appearances:**

*Plaintiff pro se:*
Jean Oliver
Elma, NY

*For Defendants:*
Letitia James
Attorney General of the State of New York
Denise P. Buckley
Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff pro se Jean Oliver brings this action against the following Defendants: her

former employer, the New York State Police ("NYSP"); Francis Christensen, former head of the

NYSP Office of Human Resources; Daniel Penny, former head of the NYSP Internal Affairs Bureau ("IAB"); and Thomas Capezza, Clay Lodovice, John Harford, Michael Volforte, Lois Goland, and Jason Hughes, legal counsel for the NYSP.[1] (Dkt. No. 1). Plaintiff filed this action in the Western District of New York. *Oliver v. NYSP et al.*, 1:17-cv-01157 (EAW) (W.D.N.Y. filed Nov. 9, 2017). Defendants moved for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure and Plaintiff moved to transfer the action to the Northern District of New York under 28 U.S.C. § 1404(a). On February 9, 2019, United States District Judge Elizabeth A. Wolford, finding the Complaint to be a "shotgun pleading" with "voluminous factual allegations followed by a list of 20 causes of action, none of which are tied" to the facts alleged, granted Defendants' motion for a more definite statement. *Oliver v. New York State Police ("Oliver 2017")*, No. 17-cv-01157, 2019 WL 453363, at *10, 2019 U.S. Dist. LEXIS 18488, at *29–30 (W.D.N.Y. Feb. 5, 2019). Judge Wolford ordered Plaintiff to provide "a more definite statement in which she sets forth the particular facts that support each of her claims within 14 days of entry of this Decision and Order." *Id.* at *10, 2019 U.S. Dist. LEXIS 18488, at *30. Judge Wolford also granted Plaintiff's motion to transfer. *Id.* at *10, 2019 U.S. Dist. LEXIS 18488, at *29–30.

On April 3, 2019, Plaintiff filed an "Affirmation for a More Definitive Statement." (Dkt. No. 28). In it, she asserts four causes of action: a military status discrimination claim against Defendants Capezza and Hughes under the Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. § 4301 et seq., (Dkt. No. 28, ¶ 30); a First Amendment retaliation claim against all Defendants under 42 U.S.C. § 1983, (*id.* ¶¶ 28–29); hostile work environment,

---

[1] Plaintiff has filed several federal and state actions related to her former employment with the NYSP. *See Oliver v. NYSP et al. ("Oliver 2015")*, 1:15-cv-00444 (BKS/DJS) (N.D.N.Y. filed April 14, 2015); *Oliver v. NYSP et al. ("Oliver 2018")*, 1:18-cv-00732 (EAW) (W.D.N.Y. filed July 2, 2018); (*see also* Dkt. No. 1, at 31 (New York Court of Claims, Case No. 129900); Dkt. No. 1, at 41 (Small Claims, City Court of Buffalo)).

gender discrimination, and retaliation claims under Title VII of the Civil Rights Act of 1964

("Title VII"), *as amended*, 42 U.S.C. § 2000e et seq., the Equal Protection Clause of the

Fourteenth Amendment, 42 U.S.C. § 1983, and the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 290 et seq., (*id.* ¶¶ 16–27); and conspiracy, and failure to

prevent conspiracy, claims under 42 U.S.C. §§ 1983, 1985, 1986, (*id.* ¶¶ 19–23). Presently

before the Court is Defendants' motion to dismiss the Complaint under Rules 12(b)(1) and

12(b)(6). (Dkt. No. 31). Plaintiff opposes this motion. (Dkt. No. 34). For the reasons that follow,

Defendants' motion is granted.

## II.     FACTS[2]

In her Decision and Order, Judge Wolford set out, and the Court incorporates here, the

factual background, as alleged in the Complaint, including Plaintiff's employment with the

NYSP beginning in 1997, promotion to investigator, and assignment to the Community

Narcotics Enforcement Team West ("CNET West"). *Oliver 2017*, 2019 WL 453363, at *1–2,

2019 U.S. Dist. LEXIS 18488, at *4–10. Following a disciplinary hearing on June 30, 2015 and

July 1, 2015, Plaintiff's employment was terminated. (Dkt. No. 28, at 8, 18–19). The following

additional facts are relevant to the disposition of Defendants' motion.

### A.     NYSP Employment, Internal Complaints and Grievances, and Termination

On November 13, 2013, Plaintiff—who was assigned to CNET West at the time—filed a

formal "EEO complaint" against her supervisor alleging that he subjected her to gender

discrimination and harassment. (Dkt. No. 1, ¶ 16). Members of the NYSP Office of Human

Resources and Internal Affairs Bureau ("IAB") advised Plaintiff that "all EEO complaints had to

---

[2] The facts are drawn from the Complaint, its exhibits, and Plaintiff's Affirmation for a More Definitive Statement. (Dkt. Nos. 1, 28). The Court assumes the truth of, and draw reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

be filed as Level 4 Personnel Complaints," which would be investigated by the IAB. (*Id.* ¶ 17). Plaintiff asserts that Defendant Christensen "turned her EEO complaint [over] to Defendant Penny," who "re-designated Plaintiff's EEO complaint as a Personnel Complaint" "in order to cloud the facts surrounding the EEO violations and improprieties" Plaintiff alleged "were taking place in CNET West." (Dkt. No. 28, at 3). Defendant Penny "permitted biased, unqualified, and untrained IAB West Investigators" to conduct the investigation into Plaintiff's personnel complaint. (*Id.*). As Defendants "were aware," Plaintiff reported a conflict when Defendant Penny assigned IAB West investigators "to investigate their long-time business friends" in CNET West. (*Id.*). Following a "fraudulent" investigation, the IAB notified Plaintiff that "the majority of her complaints were determined to be unfounded." (Dkt. No. 1, ¶¶ 31–32).

On April 25, 2014, Plaintiff, who had also filed an internal complaint of retaliation, participated in an interview with the IAB as part of the investigation into her complaint.[3] (*Id.* ¶ 33). After this interview, Plaintiff was "accused of stealing files" and "forced to submit to a 'voluntary transfer' into Troop 'A' under the threat of a personnel complaint." (*Id.*). Within "one month" of her transfer, Defendants Penny, Christensen, and others issued "the highest and most serious level Personnel Complaint against Plaintiff" "based on false allegations which were made against Plaintiff by the very same supervisors who were the subjects of Plaintiff's EEO and retaliation complaint." (*Id.* ¶ 34). Plaintiff alleges that the personnel complaint investigative report "used in support of the administrative charges lodged against Plaintiff" contained "blatant inaccuracies and contradiction[s]," but that Defendant Penny approved the investigative report and forwarded it to Defendants Capezza, Harford, Goland, and Hughes "to use against Plaintiff

---

[3] In August 2014, Plaintiff was notified that her "EEO and retaliation complaints" were no longer being investigated. (Dkt. No. 1, ¶ 18).

in every legal venue where Plaintiff would be forced to seek relief." (Dkt. No. 28, at 4–5). This had "a cascading effect as it related to the continued acts of retaliation Plaintiff suffered." (*Id.* at 5).

On January 23, 2015, Plaintiff submitted "unaltered" appeals "relative to two New York State/New York Police Investigators Association (NYS/NYSPIA) grievances" to Defendants Volforte and Capezza, regarding "retaliation" and "misconduct" she "was being subjected to" by the "lead IAB investigators." (Dkt. No. 1, ¶ 37). Defendants Volforte and Capezza maintained "as their only recorded copy," "altered" versions of Plaintiff's appeals that omitted "an entire paragraph in which Plaintiff cited misconduct on the part of IAB." (*Id.*). After Defendant Harford received the "unaltered" appeals, he adjourned the scheduled February 12, 2015 hearing regarding these appeals and rescheduled it for April 21, 2015—*after* the disciplinary hearing on the administrative charges against Plaintiff, which was scheduled for April 13, 2015. (*Id.*). Plaintiff alleges this was intentional and would allow the NYSP "to terminate Plaintiff before any hearing on these appeals could ever take place." (*Id.*).

On or about January 29, 2015, Plaintiff was "personally served" with a document Defendant Harford had written regarding the process of appointing three hearing board members who would preside over Plaintiff's disciplinary hearing, one of whom was a "close personal friend" of Plaintiff's supervisor. (*Id.* ¶ 38). Plaintiff alleges this was an "act of intimidation and coercion." (*Id.*).

On April 17, 2015, Plaintiff filed a grievance regarding an allegedly improper performance evaluation by a supervisor, after she learned that Defendant Christensen had dismissed her prior grievance on this issue. (*Id.* ¶ 40). In May 2015, Plaintiff had the grievance hand-delivered to an individual who worked under Defendant Christensen. (*Id.*). The NYSP,

however, "withheld this grievance until Plaintiff could be terminated as a means to keep Plaintiff from reporting" Defendant Christensen's misconduct. (*Id.* ¶ 40).

On April 28, 2015, Plaintiff and Defendant Goland met for what Plaintiff "believed was a mediation session."[4] (*Id.* ¶ 39). Defendant Goland "wave[d] the pages of charges against Plaintiff" and informed her that "since this was a Level 4 Personnel Complaint, Plaintiff could be terminated for being found guilty of any one of these charges." (*Id.*). Defendant Goland told Plaintiff that unless she agreed to the terms Defendant Goland would be sending to Plaintiff's attorney, Goland "would be serving Plaintiff with amended charges and proceed with [the] disciplinary hearing against Plaintiff." (*Id.*). Following this meeting, Defendant Goland emailed Plaintiff's attorney "indicating that not only would Plaintiff be required to lie and plead guilty to . . . the fabricated charges filed against Plaintiff but Plaintiff would also be required to dismiss her pending EEOC complaint, her pending grievances, and her pending federal lawsuit," *Oliver 2015*. (*Id.*). In exchange, the NYSP would assign "an undisclosed punishment, which would be less than termination." (*Id.*). Following their meeting, Plaintiff filed a grievance and improper practice charge against Defendant Goland. (*Id.*). In response, Defendant Goland directed Plaintiff's union representative to advise her that Defendant Goland "would be serving as the lead division counsel member in the disciplinary hearing to be held against Plaintiff."[5] (*Id.*).

In May 2015, Defendant Christensen blocked Plaintiff's transfer requests—even though Plaintiff's requests to return to CNET West had been approved by another officer. (Dkt. No. 1, ¶ 41). Plaintiff alleges Defendant Christensen's denial violated agreements regarding the transfer

---

[4] On March 13, 2015, Defendant Goland inquired, through Plaintiff's attorney, whether "Plaintiff would be interested in a mediation conference with her in place of the disciplinary hearing scheduled for April 13, 2015." (Dkt. No. 1, ¶ 39). Plaintiff agreed. (*Id.*).

[5] On May 29, 2015, Plaintiff "was served with a copy of an amended version of the fabricated and fraudulent administrative charges." (*Id.*).

of troopers into CNET, New York law, and the collective bargaining agreement with the NYSPIA. (*Id.*).

On June 3, 2015, Plaintiff learned through her attorney that Defendant Christensen "had recused himself from [the] appeals related to the two grievances he had previously denied" and that she would be notified of a new date for the appeal hearings. (*Id.* ¶ 44). Soon after, Plaintiff learned that her disciplinary hearing had been scheduled for June 30 and July 1, 2015, and that her grievances hearings had been scheduled for July 28, 2015. (*Id.*).

During the week of July 6, 2015, after the June 30 and July 1, 2015, disciplinary hearing but before a decision had been made, Plaintiff's attorney notified her that Defendants Harford and Volforte had adjourned her grievance hearings without date. (*Id.* ¶ 46). On July 13, 2015, the hearing board issued its findings and recommendations, and on July 14, after the Superintendent of the NYSP "signed off" on the findings and recommendations, Plaintiff was terminated. (*Id.* ¶ 37). Plaintiff claims that Defendants Capezza, Goland, and Hughes, among others, drafted "the fraudulent written findings and recommendations of the Hearing Board and the written decision of the former Superintendent." (*Id.*¶ 46). After her termination, Defendant Volforte refused to return Plaintiff's telephone calls regarding scheduling her grievance hearings. (*Id.*).

On November 22, 2016, Plaintiff, Defendants Lodovice and Hughes, and others participated in a teleconference "hosted by the New York State Public Employment Relations Board" ("PERB") "relative to the improper practice charge" Plaintiff had filed against the NYSP on May 26, 2015. (*Id.* ¶ 48). Plaintiff "disclosed the details" of the fraudulent EEO and retaliation investigation by Defendants Penny and Christensen, and the fraudulent administrative charges that led to her termination—"a further act of retaliation taken against Plaintiff for filing EEO and retaliation complaints against her former supervisors." (*Id.*). Plaintiff told Defendant

Lodovice she had "physical evidence" of the fraudulent investigations and that members of the IAB had directed NYSP members to falsify documents, including documents regarding narcotics investigations, to substantiate Plaintiff's termination. (*Id.* ¶ 49). Defendant Lodovice responded that the NYSP had "no intention on reinstating Plaintiff and that 'they' were . . . prepared to proceed in the pending improper practice charge which Plaintiff filed" against the NYSP through the PERB "over two years ago." (*Id.*).

On March 27, 2017, Defendant Lodovice "submit[ted] a falsified document" to the PERB Administrative Law Judge M. Lynn Fitzgerald, "in order to mislead her into dismissing Plaintiff's pending improper practice charge." (*Id.* ¶ 50). Plaintiff responded with "physical evidence of the misconduct legal counsel" Defendants Lodovice, Capezza, and Volforte, "engaged in related to the intentional act of withholding the 'unaltered' version of the appeals [and grievances] Plaintiff personally submitted to them." (*Id.*). The PERB, however, "has continued to delay the commencement of this valid improper practice charge." (*Id.*). Defendants Lodovice and Hughes "have continued to engage in further acts of retaliation against Plaintiff by refusing to consider the evidence" of the IAB's "misconduct" and refusing "all mediation and conciliation requests" Plaintiff has made. (*Id.* ¶¶ 51–52).

Plaintiff asserts that at some point after her termination, "PERB agreed to hold a teleconference during which time, Plaintiff was deceived into agreeing to dismiss her Improper Practice charge against NYSPIA in exchange for the $6,000 payment NYSPIA was willing to pay Plaintiff toward the costs associated with her Article 78 Petition." (Dkt. No. 28, at 14). As part of the agreement, Plaintiff's improper practices charge against the NYSP would "remain in effect" and "would commence once a decision was made in Plaintiff's Article 78 Petition." (*Id.*).

After Plaintiff's Article 78 petition was dismissed,[6] however, "PERB suddenly refused to honor their duty to hear the Improper Practices charges." (*Id.* at 15).

## B.     USERRA Allegations

 In June 2015, while on military leave, Plaintiff was "ordered to continue working on her" NYSP assignment, investigating trooper applicants, in violation of Plaintiff's rights under USERRA laws." (Dkt. No. 1, ¶ 45). Specifically, Plaintiff alleges her NYSP supervisor, Robert Gardner advised her that the "[a]pplicant had to be completed in time and no extensions would be granted past the due date of July 3, 2015." (*Id.*). Gardner called Plaintiff "while she was in a meeting with her . . . military commander . . . to advise Plaintiff that she needed . . . to get documents to the investigator who was conducting the polygraph on her applicant." (*Id.*). Plaintiff excused herself from her meeting with her commander "in order to conduct New York State Police business while on military leave." (*Id.*).

## C.     EEOC Charges and Complaints

On September 25, 2014, Plaintiff filed a charge of "sex discrimination, harassment and retaliation" with the United States Equal Employment Opportunity Commission ("EEOC"). (Dkt. No. 1, ¶ 19). On January 29, 2015, the EEOC issued a determination "finding probable cause that gender discrimination and retaliation had in fact occurred" and notifying Plaintiff of her right to sue. (*Id.*). Plaintiff filed a second EEOC charge on May 20, 2015, alleging continued retaliation, and on May 22, 2015, the EEOC issued a right to sue letter and informed Plaintiff her May 20 charge was "subsumed by her prior" EEOC charge. (*Id.* ¶ 21). Plaintiff filed a third

---

[6] On June 6, 2017, the New York Appellate Division issued a decision finding that the hearing board's decision finding Plaintiff guilty of five separate charges, including two charges of violating a direct order, two charges of making a false entry, and a charge of failure to assume responsibility or exercise diligence in the performance of her duties, was "supported by substantial evidence." *Oliver v. D'Amico*, 151 A.D.3d 1614, 1616 (4th Dep't 2017), *leave to appeal denied*, 30 N.Y.3d 913 (2018). The Appellate Division further found that the penalty of dismissal did not "shock [its] sense of fairness" and "confirmed" the determination in its entirety. *Id.* at 1617–18.

EEOC charge on July 16, 2015, and on October 23, 2015, the EEOC issued a right to sue letter. (*Id.* ¶¶ 22–23). Plaintiff has also filed complaints with the New York State Division of Human Rights, (*id.* ¶ 24), New York State Governor's Office, (*id.* ¶ 25), the New York State Attorney General's office, (*id.* ¶ 53), the New York State Inspector General's office, (*id.* ¶ 54), and the Erie County District Attorney's Office, (*id.* ¶ 58). None of those entities have intervened or investigated Plaintiff's complaints. (*Id.* ¶¶ 24–25, 53–54, 58).

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(1)

"Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a case." *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013). The Court will "take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). In resolving a motion to dismiss for lack of subject-matter jurisdiction, the Court may consider competent evidence outside the pleadings, such as affidavits and exhibits. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Tandon*, 752 F.3d at 243 (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). A plaintiff asserting subject-matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Id.*

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court accepts as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

### A. USERRA

Plaintiff brings her USERRA claims against Defendants Hughes and Capezza. (Dkt. No. 28, ¶ 30). As "the statute contains no provision permitting USERRA claims to be brought against individuals, *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 23 n.1 (2d Cir. 2017), Plaintiff's USERRA claims against Defendants Capezza and Hughes are dismissed.[7]

### B. Sovereign Immunity

Defendant NYSP moves to dismiss the § 1983 claims as barred by sovereign immunity. (Dkt. No. 31-3, at 16–17). The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

---

[7] To the extent Plaintiff is attempting to bring this claim against the NYSP, because "USERRA defines a 'State' as 'each of the several States of the United States . . . (including the agencies and political subdivisions thereof)' . . . lawsuits brought under USERRA by an individual against a state agency . . . may not proceed in federal courts; they may be litigated only in state courts." *Cresci*, 693 F. App'x at 23 (quoting 38 U.S.C. § 4303(14)). As the NYSP is a state agency, the Court lacks subject matter jurisdiction over Plaintiff's USERRA claim. *See id.* (finding that the district court "lacked subject matter jurisdiction over Cresci's USERRA claims" against Mohawk Valley Community College, a state agency).

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cali. v. Doe*, 519 U.S. 425, 429 (1997). Thus, under the Eleventh Amendment, the State, including its agents and instrumentalities, is absolutely immune from being sued, unless it consents or federal law provides otherwise. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (internal citations omitted). Accordingly, Plaintiff's § 1983 claims against the NYSP are dismissed.

## C. Section 1983 – First Amendment Retaliation Claim

Defendants assert that Plaintiff fails to state a First Amendment retaliation claim because Plaintiff does not allege that that the "speech at issue involves a matter of public concern." (Dkt. No. 31-3, at 13–14). To state a First Amendment retaliation claim, a plaintiff "must plausibly allege that '(1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech.'" *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)).

With respect to the first element, Plaintiff must allege facts from which it could be plausibly inferred that she engaged in "speech or conduct [that] was protected by the First Amendment." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). A public employee plaintiff must allege that she "engaged in citizen speech," in other words, that she "spoke as a private citizen," and that "the speech at issue was on a matter of public concern."

12

*Montero,* 890 F.3d at 399. In her affirmation, Plaintiff asserts that she spoke "on matters of officer safety and public concern relative to improprieties taking place within CNET West." (Dkt. No. 28, at 27). Plaintiff's allegation is vague; she does not allege what she said or provide any facts regarding the circumstances of her alleged speech. She therefore fails to plausibly allege that she engaged in protected speech. *See Giachetto v. Patchogue-Medford Union Free Sch. Dist.*, 413 F. Supp. 3d 141, 144 (E.D.N.Y. 2016) (finding that because the plaintiff's "vague allegation" that she was "'accused of and ordered to refrain from speaking out against the [School District] to community members' at a Teacher Improvement Plan meeting" failed to "identify what the exact utterance was, or how this utterance, or any other alleged instance of speech, involved matters of public concern" she failed to allege her speech was protected). Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim is granted.

### D.    Title VII Claims

Defendants move to dismiss Plaintiff's Title VII hostile work environment, gender discrimination, and retaliation claims. (Dkt. No. 31-3, at 11–13). In *Oliver 2015*, Plaintiff brought Title VII claims against the NYSP for hostile work environment, gender discrimination, and retaliation regarding her employment with the NYSP. (*See generally Oliver 2015*, Dkt. No. 37). That action remains pending. As Defendants note, the Complaint in this case "relies upon all factual allegations in the [*Oliver 2015*] Complaint." (Dkt. No. 31-2, at 3). "A plaintiff has 'no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.'" *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)). Therefore, the Court, in its discretion, and in the interest of "'foster[ing] judicial economy,' 'protect[ing] the parties from vexatious and expensive litigation,' and ensuring the 'comprehensive disposition of

litigation,'" *id.* (quoting *Curtis*, 226 F.3d at 138), dismisses Plaintiff's present Title VII claims against the NYSP, including claims of hostile work environment, gender discrimination, and retaliation as wholly duplicative of her claims against the NYSP in *Oliver 2015*. *Id.* ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." (quoting *Curtis*, 226 F.3d at 139)).

Further, "individuals are not subject to liability under Title VII." *Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) (quoting *Patterson v. Cty of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)). Thus, Plaintiff's Title VII claims against the individual Defendants are also dismissed. *Saunders v. N.Y. City Dep't of Educ.*, No. 07-cv-2725, 2010 WL 331679, at *8, 2010 U.S. Dist. LEXIS 4544, at *21–22 (E.D.N.Y. Jan. 19, 2010) (dismissing plaintiff's Title VII claims sua sponte against individual defendants because "individuals are not subject to liability under those statutes and any 'official capacity' claim would be redundant to plaintiff's claims against [the public entity]").

### E.  Section 1983 – Equal Protection Claims

### 1.  Gender Discrimination and Hostile Work Environment

Defendants argue that Plaintiff fails to allege plausible gender discrimination or hostile work environment claims because "she has not alleged any facts to support a finding that the Defendants subjected her to purposeful discrimination because of her gender." (Dkt. No. 31-3, at 9). "The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). For both claims, a plaintiff must allege gender-based conduct. *See Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019) (explaining that the "a plaintiff claiming disparate treatment under either [the Equal Protection Clause] must plausibly allege that

she suffered an "adverse employment action" taken "because of" her sex," and that "a plaintiff claiming a hostile environment must plausibly allege offensive conduct based on sex").

### a.    Gender Discrimination

A plaintiff need not establish a *prima facie* case at the pleadings stage; "her burden is 'minimal'—[s]he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84, 87 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

The Complaint and Affirmation contain no facts that support the proposition that any Defendant was motivated by gender-based discriminatory intent. Plaintiff alleges that Defendants Penny and Christensen allowed a "biased" investigation of her gender discrimination claims and issued a personnel complaint against her within months of Plaintiff's April 2014 complaint of retaliation, (Dkt. No. 28, at 3; Dkt. No. 1, ¶¶ 33–34), that Defendant Penny sent the investigative report underlying the personnel complaint against Plaintiff to Defendants Capezza, Harford, and Goland, (Dkt. No. 28, at 4–5), that Defendants Harford, Volforte, and Capezza were involved with Plaintiff's grievances appeals and the adjournment of hearings on those grievances, (Dkt. No. 1, ¶¶ 37, 46), that Defendant Harford wrote a document advising Plaintiff that the hearing board that would consider the personnel complaint included a personal friend of Plaintiff's supervisor, (*id.* ¶ 38), that Defendant Christensen blocked Plaintiff's approved transfer requests, (*id.* ¶ 41), that Defendants Goland, Capezza, and Hughes drafted the hearing board findings, (*id.* ¶ 46), and that Defendant Lodovice attempted to obstruct Plaintiff's pursuit of improper practices charges before the PERB, (*id.* ¶ 50). None of these allegations allow a plausible inference of gender discrimination. Accordingly, Plaintiff's equal protection gender discrimination claims are dismissed.

15

### b.    Hostile Work Environment

"[A] plaintiff claiming a hostile environment must plausibly allege offensive conduct based on sex that was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Naumovski*, 934 F.3d at 212 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). Even assuming the above allegations sufficed to show an abusive working environment, absent an allegation that any conduct was "based on sex," *id.*, Plaintiff's hostile work environment claim fails. Accordingly, Plaintiff's equal protection hostile work environment claim is dismissed.

### 2.    Retaliation

Defendants seek dismissal of Plaintiff's Equal Protection retaliation claim, arguing that "Plaintiff has not alleged any facts to support a finding of personal involvement of any of the Defendants in alleged acts of discrimination against Plaintiff on the basis of . . . retaliation." (Dkt. No. 31-3, at 9). "[F]or a retaliation claim under § 1983 to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against h[er], (3) because [s]he complained of or otherwise opposed discrimination." *Vega*, 801 F.3d at 91. To plead causation, the plaintiff must plausibly allege that the retaliation was the "but-for" cause of the employer's adverse action, i.e., that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id*. at 90–91 (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). "An individual may be held liable under . . . § 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn*, 795 F.3d at 314 (quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).

Having reviewed the allegations in the Complaint and Plaintiff's Affirmation, the only facts that suggest a retaliation claim are the allegations regarding Defendant Penny, which are

discussed below. To the extent Plaintiff asserts claims against Defendant Christensen, they are duplicative of the claims against him in *Oliver 2015*, and are therefore dismissed for the reasons stated *supra* Section V.D.

### a.    Defendants Capezza, Volforte, Goland, Hughes, and Harford

The allegations against Defendants Capezza, Volforte, Goland, and Harford regarding their handling of Plaintiff's grievance filings, which alleged retaliation and misconduct by IAB investigators, and the adjournment of grievance hearings, (Dkt. No. 1, ¶¶ 37, 46), fail to allege an adverse action. *Cf. Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("An employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint: Her situation in the wake of her having made the complaint is the same as it would have been had she not brought the complaint or had the complaint been investigated but denied for good reason or for none at all."); *see also Kelly v. N. Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 404 (E.D.N.Y. 2016) ("[G]enerally 'an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint.'" (quoting *Fincher*, 604 F.3d at 721)). Moreover, neither the Complaint nor Affirmation plausibly alleges that these Defendants adjourned the grievance hearings in retaliation for any other protected activity.

Plaintiff further alleges that Defendants Capezza and Goland allegedly made false statements to the EEOC, (Dkt. No. 28, at 5), and that Defendants Capezza, Goland, and Hughes drafted "the fraudulent written findings and recommendations of the Hearing Board and the written decision of the former Superintendent," that led to her termination. (Dkt. No. 1, ¶ 46). These assertions, however, are devoid of facts regarding the allegedly fraudulent statements and therefore do not allege adverse action or allow a plausible inference of retaliation. *See Lawtone-*

*Bowles*, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 ("Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action.").

### b.    Defendant Penny

On April 25, 2014, Plaintiff participated in an interview with the IAB as part of the investigation into her complaint of retaliation. (Dkt. No. 1, ¶ 33). According to the Complaint, at some point after, Defendant Penny issued "the highest and most serious level Personnel Complaint against Plaintiff" "based on false allegations which were made against Plaintiff by the very same supervisors who were the subjects of Plaintiff's EEO and retaliation complaint." (*Id.* ¶ 34). As these allegations fail to allege a factual basis, such as temporal proximity, from which to infer retaliation, they are conclusory and fail to allege a plausible claim of retaliation. *See Dhar v. City of New York*, 655 F. App'x 864, 865 (2d Cir. 2016) (explaining that "[t]o withstand a motion to dismiss, a plaintiff must . . . plead facts sufficient to 'give plausible support to a minimal inference of discriminatory motivation'" and noting that "temporal proximity can support an inference of retaliation" (quoting *Littlejohn*, 795 F.3d at 311)).

### c.    Defendants Lodovice and Hughes

Plaintiff's remaining claims against Defendants Lodovice and Hughes concern post-termination conduct. (Dkt. No. 1, ¶¶ 48–50). An employer's post-employment conduct toward a former employee may constitute retaliation if those actions are targeted at a plaintiff's "*future* employment objectives." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) ("[P]laintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company, if, for example, the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation."); *Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16-cv-01940, 2017 WL

4273292, at *5, 2017 U.S. Dist. LEXIS 157346, at *13–14 (D. Conn. Sept. 26, 2017) ("A negative reference or similar actions taken with respect to a new prospective employer can be considered an adverse action and therefore provide support for a retaliation claim."). The allegations against Defendants Lodovice and Hughes concern their alleged mishandling, from November 2016 through May 2017, of Plaintiff's improper practices charge before the PERB and failure to investigate her allegations of "fraudulent" investigations by the IAB. (Dkt. No. 1, ¶¶ 48–50). As none of these allegations implicate Plaintiff's employment prospects, they fail to allege an adverse employment action. Accordingly, all equal protection retaliation claims are dismissed.

### F.    Sections 1983, 1985, 1986 – Conspiracy

Defendants argue that Plaintiff fails to allege "an agreement . . . to act in concert to inflict an injury on Plaintiff." (Dkt. No. 31-3, at 11). "In order to survive a motion to dismiss on [a] § 1983 conspiracy claim, [the plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). "'[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Id.* at 325 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

To state a conspiracy claim under Section 1985(3), a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured . . . or deprived of any right

or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)); *see* 42 U.S.C. § 1985(3).

Plaintiff's conspiracy claim fails because her allegations regarding Defendants' alleged conspiracy to violate her First or Fourteenth Amendment rights are wholly conclusory. "Vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a conspiracy claim under either § 1983 or § 1985(3)." *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). Plaintiff "has not provided any 'details of time and place'" regarding the alleged underlying agreement. *Id.* at 325 (quoting *Dwares*, 985 F.2d at 100). Plaintiff has failed to provide "the factual basis necessary to enable [the individual defendants] intelligently to prepare their defense." *Id.* (*quoting Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977)). Plaintiff also alleges Defendants failed to prevent the alleged conspiracy, in violation of 42 U.S.C. § 1986. (Dkt. No. 1, ¶¶ 71–73). "A claim under section 1986, however, lies only if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994). Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claims is granted.

### G.    NYSHRL Claims

Defendants assert that Plaintiff has failed to state a hostile work environment, gender discrimination, or retaliation claim under NYSHRL § 296. (Dkt. No. 31-3, at 11–13). Having dismissed all federal claims, the Court must consider whether to retain supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350 n.7 (1988) (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"). In deciding whether to exercise supplemental jurisdiction, a district court should balance the traditional "values of judicial economy, convenience, fairness, and comity," *Cohill*, 484 U.S. at 350. Further, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir.1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). However, where, as here, the "standards of liability are identical under [federal law] and the NYSHRL; deciding the state-law claims does not require the investment of additional judicial resources," and there is no "substantial comity concern raised by this Court's application of state law with which courts in this District are eminently familiar," the Court concludes "the 'values of judicial economy, convenience, fairness, and comity,'" support the exercise of supplemental jurisdiction over Plaintiff's NYSHRL claims. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413 (S.D.N.Y. 2014) (quoting *Cohill*, 484 U.S. at 350).

"By its terms, § 296(6) of the Human Rights Law creates a 'broad[ ] source of personal liability' that is not limited to employers or employees." *Stanley v. Guardian Sec. Servs., Inc.*, 800 F. Supp. 2d 550, 557 (S.D.N.Y. 2011); *see also Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004). In the Second Circuit, individuals can be held liable as aiders and abettors when they "actually participate[d] in the conduct giving rise to a discrimination claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). In view of the Court's conclusion that Plaintiff fails to allege a gender-based hostile work environment, discrimination, or retaliation claim under the

Equal Protection Clause, the NYSHRL hostile work environment, discrimination, and retaliation claims are dismissed. *Hill v. City of New York*, 136 F. Supp. 3d 304, 331 (E.D.N.Y. 2015) (explaining that "[e]mployment discrimination claims under," § 1983 and NYSHRL "are governed by the same liability standard and analytical framework" as Title VII claims); *see also Henry*, 18 F. Supp. 3d at 413 (dismissing NYSHRL claims because they were "coterminous both legally and factually with [the plaintiff's] federal claims").

## V.     LEAVE TO AMEND

A pro se complaint should not be dismissed without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Leave to replead, however, should be denied when the problem with the causes of action is substantive and "better pleading will not cure it." *Id*. Here, Plaintiff has already been given an opportunity to provide a more definite statement of her claims. (Dkt. Nos. 19, 28). The Court has not seen anything in Plaintiff's lengthy, conclusory diatribes, (Dkt. Nos. 28, 34), which would indicate that there is a factual basis for any viable claim here. Although the Court is skeptical that Plaintiff will be able to state a cause of action, in light of Plaintiff's pro se status the Court will permit a limited opportunity to amend.[8] Any amended complaint must be filed within thirty days. Any amended complaint will replace the existing complaint; it must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

---

[8] Because any amendment of the Title VII claims would be futile as to the New York State Police, which is a named Defendant in Plaintiff's pending 2015 action, and as to the individual Defendants, who are not subject to liability under Title VII, those claims are dismissed with prejudice. Similarly, the USERRA claims are dismissed with prejudice as to the individual Defendants because any amendment would be futile.

**VI.     CONCLUSION**

For these reasons, it is

**ORDERED** that the motion to dismiss (Dkt. No. 31) is **GRANTED** in its entirety; and it is further

**ORDERED** that the § 1983 claim against the New York State Police is **DISMISSED without prejudice**, and without leave to amend; and it is further

**ORDERED** that the USERRA claims against Defendants Capezza and Hughes are **DISMISSED with prejudice**; and it is further

**ORDERED** that all Title VII claims against the New York State Police and the individual Defendants are **DISMISSED with prejudice**; and it is further

**ORDERED** that all First Amendment retaliation claims; all hostile work environment and gender discrimination claims under the Equal Protection Clause and NYSHRL; and all conspiracy, and failure to prevent conspiracy, claims are **DISMISSED without prejudice**; and it is further

**ORDERED** that any amended complaint must be filed within **THIRTY (30) days** from the date of this Order; and it is further

**ORDERED** that if an amended complaint is not filed within **THIRTY (30) days**, the Clerk is directed to close this case and enter Judgment accordingly.

**IT IS SO ORDERED.**

Dated:  April 13, 2020
            Syracuse, New York

Brenda K. Sannes
U.S. District Judge

23