**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JEAN OLIVER,

|  |  |  |
|---|---|---|
|  | Plaintiff, | 1:19-cv-00233 (BKS/DJS) |

v.

DANIEL PENNY, in his individual and official capacity;
THOMAS CAPEZZA, in his individual and official
capacity; CLAY LODOVICE, in his individual and official
capacity; JOHN HARFORD, in his individual and official
capacity; MICHAEL VOLFORTE, in his individual and
official capacity; LOIS GOLAND, in her individual and
official capacity; and JASON HUGHES, in his individual
and official capacity,

                              Defendants.

**Appearances:**

*Plaintiff pro se:*
Jean Oliver
Elma, NY

*For Defendants:*
Letitia James
Attorney General of the State of New York
Denise P. Buckley
Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff pro se Jean Oliver brings this action, which stems from her employment with

and termination from the New York State Police ("NYSP"), against the former head of the

NYSP Internal Affairs Bureau ("IAB"), Daniel Penny, and six legal counsel for the NYSP:

Thomas Capezza, Clay Lodovice, John Harford, Michale Volforte, Lois Goland, and Jason Hughes. (Dkt. No. 1). Plaintiff has filed several federal and state actions related to her former employment with the NYSP, including an unsuccessful Article 78 proceeding challenging the NYSP's decision to terminate her employment, *Oliver v. D'Amico*, 151 A.D.3d 1614 (4th Dep't 2017), and an employment discrimination action against the NYSP and ten of its employees which is currently pending before this Court, *Oliver v. NYSP et al. ("Oliver 2015")*, 1:15-cv-444 (BKS/DJS) (N.D.N.Y. filed April 14, 2015).[1]

The Second Amended Complaint at issue here alleges the following claims against the NYSP attorneys and Penny, the former head of the NYSP IAB: a First Amendment retaliation claim under 42 U.S.C. § 1983; hostile work environment, gender discrimination, and retaliation claims under the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1983, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and conspiracy, and failure to prevent conspiracy, claims under 42 U.S.C. §§ 1983, 1985, 1986. (Dkt. No. 45). Presently before the Court is Defendants' motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second Amended Complaint. (Dkt. No. 52). Plaintiff opposes this motion (Dkt. No. 55). Defendants' motion is granted because, as set forth below, the claims involving alleged conduct before the March 2016 operative complaint in *Oliver 2015* are duplicative and, in any event, Plaintiff's Second Amended Complaint fails to state a claim.

## II.    PROCEDURAL HISTORY

### A.    *Oliver 2015*

Plaintiff filed *Oliver 2015* pro se in the Northern District of New York on April 14, 2015, naming only the NYSP as a defendant. *Oliver 2015*, No. 15-cv-444, Dkt. No. 1. She obtained

---

[1] (*See also* Dkt. No. 1, at 31 (New York Court of Claims, Case No. 12990); Dkt. No. 1, at 41 (Small Claims, City Court of Buffalo); Dkt. No. 52-1, at 2, ¶ 4 (listing cases Plaintiff has filed)).

counsel and then filed an amended counseled complaint in *Oliver 2015*, adding ten NYSP employees as defendants. *Oliver 2015*, No. 15-cv-444, Dkt. No. 29. On March 29, 2016, Plaintiff filed a second amended counseled complaint in *Oliver 2015*. *Oliver 2015*, No. 15-cv-444, Dkt. No. 37. Following extensive discovery and summary judgment litigation, Plaintiff's employment discrimination claims in *Oliver 2015*, against the NYSP and three of her former supervisors, are trial ready. *See Oliver v. NYSP*, No. 15-cv-444, 2020 WL 1989180, 2020 U.S. Dist. LEXIS 73284 (N.D.N.Y. Apr. 27, 2020).

> **B.     Filing of this Action in the Western District of New York**

Plaintiff filed two actions pro se in the Western District of New York, naming the NYSP and others, when *Oliver 2015* was pending in the Northern District of New York. Plaintiff filed this action on November 9, 2017. (Dkt. No. 1). Defendants moved for a more definite statement under Fed. R. Civ. P. 12(e) and Plaintiff moved to transfer the case to the Northern District of New York under 28 U.S.C. § 1404(a). (Dkt. Nos. 6, 16). On February 9, 2019, United States District Judge Elizabeth A. Wolford granted both motions. *Oliver v. New York State Police ("Oliver 2017 I")*, No. 17-cv-01157, 2019 WL 453363, at *10, 2019 U.S. Dist. LEXIS 18488, at *29–30 (W.D.N.Y. Feb. 5, 2019). Judge Wolford found that the Complaint was a "shotgun pleading" with "voluminous factual allegations followed by a list of 20 causes of action, none of which are tied" to the facts alleged. *Id.* Judge Wolford ordered Plaintiff to provide "a more definite statement in which she sets forth the particular facts that support each of her claims." *Id.* at *10, 2019 U.S. Dist. LEXIS 18488, at *30. Judge Wolford transferred the case to the Northern District of New York, where it was opened on February 20, 2019. (Dkt. No. 1). *Id.* at *10, 2019 U.S. Dist. LEXIS 18488, at *29–30.[2]

---

[2] Judge Wolford dismissed the second action, which Plaintiff had filed on July 2, 2018, as barred by sovereign immunity. *Oliver 2017 I*, 2019 WL 453363, at *9, 11, 2019 U.S. Dist. LEXIS 18488, at *27–28, 33. In that action

### C.    Dismissal of Complaint

On April 3, 2019, Plaintiff filed an "Affirmation for a More Definitive Statement." (Dkt.

No. 28). In response, Defendants moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1)

and 12(b)(6). (Dkt. Nos. 28, 31). In a Memorandum-Decision and Order entered on April 13,

2020, the Court dismissed the Complaint but, mindful of Plaintiff's pro se status, gave her leave

to file an amended complaint with respect to all but her claims under Title VII[3] and USERRA[4]

and her § 1983 claim against the NYSP, which was barred by sovereign immunity. *Oliver v.*

*NYSP ("Oliver 2017 II")*, No. 19-cv-233, 2020 WL 1849484, at *11, 2020 U.S. Dist. LEXIS

64150, at *30–32 (N.D.N.Y. April 13, 2020).

### D.    Dismissal of Amended Complaint

On May 13, 2020, Plaintiff filed a ninety-five page Amended Complaint. (Dkt. No. 41).

Like the original Complaint, the Amended Complaint contained sex discrimination, hostile work

environment, and retaliation claims under Title VII, (Dkt. No. 41, ¶¶ 152–53, 155), sex

discrimination and retaliation claims under the Equal Protection Clause of the Fourteenth

Amendment, (Dkt. No. 41, ¶¶ 154, 156), conspiracy, and failure to prevent a conspiracy, to

commit sex discrimination, hostile work environment, and retaliation claims, 42 U.S.C. §§ 1983,

1985(3), 1986, (Dkt. No. 41, ¶¶ 157–65), sex discrimination and retaliation claims under the

NYSHRL, (Dkt. No. 41, ¶¶ 166–67), and claims under the New York Civil Service Law and

New York Labor Law, (Dkt. No. 41, ¶¶ 169–70).

---

Plaintiff had named the NYSP, the New York State Attorney General, the New York State Public Employment
Relations Board, and the New York State Governor's Office of Employee Relations, 18-cv-00732 (EAW).

[3] Title VII of the Civil Rights Act of 1964 ("Title VII"), *as amended*, 42 U.S.C. § 2000e et seq.

[4] Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. § 4301 et seq. The Court notes
that Plaintiff had raised the USERRA claim in her November 2017 pro se complaint here, after having expressly
withdrawn a USERRA claim in her amended counseled complaint filed on March 29, 2016, in *Oliver 2015*. In *Oliver
2015*, Plaintiff recognized that a "USERRA complaint is properly brought only in state court." *Oliver 2015*, No. 15-
cv-444, Dkt. No. 36-1, at 1.

After reviewing the Amended Complaint, the Court dismissed it *sua sponte* as it, inter alia, continued to assert: claims against the NYSP and Title VII claims, which the Court previously dismissed with prejudice; and claims against Defendant Christensen, which were duplicative of the claims in *Oliver I. Oliver v. NYSP ("Oliver 2017 III")*, No. 19-cv-233, 2020 WL 2513689, at *1–2, 2020 U.S. Dist. LEXIS 85695, at *4–6 (N.D.N.Y. May 15, 2020). In addition, the Court found the Amended Complaint failed to tie the facts to the causes of action or identify the Defendants against whom Plaintiff intended to assert her causes of action. *Id.* at *2, 2020 U.S. Dist. LEXIS 85695, at *3. The Court cautioned Plaintiff that the lengthy recitation of the facts from *Oliver 2015* in the 95-page Amended Complaint violated the directive in Fed. R. Civ. P. 8(a)(2) that a complaint contain a "*short and plain* statement of the claim showing that the pleader is entitled to relief." *Id.* at *2, 2020 U.S. Dist. LEXIS 85695, at *5. The Amended Complaint also contained claims under the New York Civil Service Law and New York Labor Law, which the Court had not given Plaintiff permission to amend; accordingly the Court dismissed those claims instructing Plaintiff that in order to add these claims "she must file a motion to amend, demonstrating how such claims are legally and factually supported here." *Id.* at *2, 2020 U.S. Dist. LEXIS 85695, at *3–4. In view of Plaintiff's pro se status, the Court gave Plaintiff leave to file a Second Amended Complaint but instructed Plaintiff that as she had not addressed her New York Civil Service or Labor Law claims in her "Affirmation for a More Definitive Statement," she must file a motion to amend in order to reassert those claims. *Id*. at *2, 2020 U.S. Dist. LEXIS 85695, at *3–4.

### E.   Partial Dismissal of Second Amended Complaint

Plaintiff ignored the Court's directive to submit a complaint containing a "*short and plain* statement of the claim showing that the pleader is entitled to relief," in accord with Fed. R. Civ. P. 8(a)(2). On May 27, 2020, Plaintiff filed a 130-page Second Amended Complaint, together

with a 28-page affidavit outlining "the historical facts of this case," most of which was a repetition of the facts at issue in *Oliver 2015*. (Dkt. Nos. 45, 45-1). On review, the Court dismissed the claims against the NYSP, as barred by sovereign immunity, the Title VII claims and the claims against Defendant Christensen and 28-page affidavit as duplicative of *Oliver 2015*, and the New York Civil Service and Labor Law claims for failure to file a motion to amend. (Dkt. No. 48). Defendants now move under Rule 12(b)(6) to dismiss the remainder of the Second Amended Complaint. (Dkt. No. 52).

## III.   FACTS[5]

The Court assumes the parties' familiarity with the Plaintiff's allegations of employment discrimination in *Oliver 2015*, which are set forth in detail in the Court's summary judgment ruling in *Oliver 2015*.[6] *Oliver 2015*, 2020 WL 1989180, 2020 U.S. Dist. LEXIS 73284. As the allegations in *Oliver 2015* are relevant to the consideration of whether the present case is duplicative, the Court provides a brief summary.

### A.   *Plaintiff's Claims in Oliver 2015*

Plaintiff was employed by the NYSP from 1997 to 2005, first as a Trooper and later as an Investigator. *Oliver 2015*, 2020 WL 1989180, at *2, 2020 U.S. Dist. LEXIS 73284, at *3–4. From 2008 to 2014, Plaintiff worked as an undercover narcotics investigator on the Community Narcotics Enforcement Team Western ("CNET West") and in the Counter-Terrorism Intelligence Unit ("CTIU") from 2014 to July 14, 2015. *Id.* at *2, 2020 U.S. Dist. LEXIS 73284,

---

[5] These facts are drawn from the Second Amended Complaint, (Dkt. No. 45), and facts subject to judicial notice under Fed. R. Evid. 201. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[6] The Court also assumes the parties' familiarity with the background facts alleged in the Second Amended Complaint as set forth in the Court's prior decisions in this matter. *Oliver 2017 I*, 2019 WL 453363, 2019 U.S. Dist. LEXIS 18488; *Oliver 2017 II*, 2020 WL 1849484, 2020 U.S. Dist. LEXIS 64150; *Oliver 2017 III*, 2020 WL 2513689, 2020 U.S. Dist. LEXIS 85695.

at *4–5. Plaintiff was terminated following a disciplinary hearing on charges of, inter alia, failure to obey an order and being untruthful during an interrogation by the IAB. *Id.* at *2, 2020 U.S. Dist. LEXIS 73284, at *5.

As relevant here, Plaintiff alleges that while at CNET West, she was sexually harassed by both another investigator and her supervisor, Senior Investigator Paul Kelly. *Id.* at *2–4, 2020 U.S. Dist. LEXIS 73284, at *7–12. In October 2013, Plaintiff notified an officer at the NYSP Office of Human Resources that she wished to file an "[i]nformal EEO complaint" against Kelly and submitted a detailed report of Kelly's alleged conduct. *Id.* at *5, 2020 U.S. Dist. LEXIS 73284, at *13–14. The IAB informed Plaintiff that she could only proceed by filing a formal EEO complaint. *Id.* at *7, 2020 U.S. Dist. LEXIS 73284, at *19. In November 2013, Plaintiff reported the investigator's alleged sexual harassment. *Id.* at *6, 2020 U.S. Dist. LEXIS 73284, at *16. The IAB commenced an investigation based on Plaintiff's reports. *Id.* at *6, 2020 U.S. Dist. LEXIS 73284, at *16, 18.

Before the investigation into Plaintiff's allegations against Kelly was complete, and allegedly in retaliation for her sexual harassment complaints: Plaintiff was reassigned to the team of the investigator who had allegedly sexually harassed her; her participation in narcotics investigations was significantly reduced; Plaintiff received a counseling memorandum for allegedly disregarding a directive from Kelly; Plaintiff's mental health was questioned; and Plaintiff was restricted from performing as an undercover operative. *Id.* at *7–12, 2020 U.S. Dist. LEXIS 73284, at *19–37. In January 2014, the IAB issued reports finding at least one of Plaintiff's allegations against the investigator were "founded" and issued a letter of censure but that Plaintiff's sexual harassment allegations against Kelly were unfounded. *Id.* at *6, 13, 2020 U.S. Dist. LEXIS 73284, at *17, 39.

In March 2014, Plaintiff allegedly complained to IAB about ongoing retaliation (including the events described above) as well as a reduction in work assignments, and a prohibition from working on her cases. *Id.* at *14, 2020 U.S. Dist. LEXIS 73284, at *43. In April 2014, Plaintiff received the first negative comments she had ever received in a performance evaluation. *Id.* at *16, 2020 U.S. Dist. LEXIS 73284, at *49. In May 2014, Plaintiff was transferred out of CNET West, purportedly against her will, and into the NYSP's CTIU. *Id.* at *18, 2020 U.S. Dist. LEXIS 73284, at *57–58.

On May 2014, following her transfer, the IAB issued a report concluding that Plaintiff's allegations of retaliation were unfounded. *Id.* at *19, 2020 U.S. Dist. LEXIS 73284, at *59. In June 2014, Plaintiff's supervisor at the CTIU reported that Plaintiff had been working on CNET West matters, despite his instruction not to do so, and submitted a memorandum to IAB. *Id.* at *19–21, 2020 U.S. Dist. LEXIS 73284, at *65. Several of Plaintiff's former CNET supervisors, including Kelly, also submitted memoranda to IAB regarding Plaintiff's alleged participation in a CNET matter. *Id.* at *21, 2020 U.S. Dist. LEXIS 73284, at *67. Later that month, Plaintiff was notified there was a personnel complaint against her. *Id.* at *21, 2020 U.S. Dist. LEXIS 73284, at *67.

In September 2014, following an investigation, a memorandum was issued advising Plaintiff there was reasonable cause to believe she had violated NYSP regulations and recommending, among other things, suspension without pay for 30 days. *Id.* at *23, 2020 U.S. Dist. LEXIS 73284, at *71. Plaintiff declined to accept the penalty and requested that formal charges be brought and a hearing conducted. *Id.* at *23, 2020 U.S. Dist. LEXIS 73284, at *72.

At approximately the same time, Plaintiff filed a charge with the EEOC alleging gender discrimination and retaliation. *Id.* at *23, 2020 U.S. Dist. LEXIS 73284, at *72.

In October 2014, the Superintendent of the NYSP, Joseph D'Amico, issued five charges against Plaintiff and advised her that she was entitled to a hearing. *Id.* at *23, 2020 U.S. Dist. LEXIS 73284, at *72–73. Plaintiff requested a hearing. *Id.* at *23, 2020 U.S. Dist. LEXIS 73284, at *73. That month, Plaintiff filed her first grievance, requesting to return to CNET West. *Id.* at *24, 2020 U.S. Dist. LEXIS 73284, at *75. Following a hearing, Christensen, a former Defendant in the instant case, denied the grievance. *Id.* at *24, 2020 U.S. Dist. LEXIS 73284, at *75–76.

In a November 2014 letter to the EEOC, NYSP legal counsel Lois Goland—a Defendant here—denied the allegations of gender discrimination and retaliation. *Id.* at *23, 2020 U.S. Dist. LEXIS 73284, at *73. In January 2015, the EEOC issued a determination finding reasonable cause to believe Plaintiff had been subject to gender discrimination and retaliation. *Id.* at *23, 2020 U.S. Dist. LEXIS 73284, at *73–74. In February 2015 NYSP legal counsel Thomas Capezza—also a Defendant here—sent a letter to the EEOC requesting that it reconsider its determination, and in March 2015, after the EEOC denied the request, declined conciliation on the NYSP's behalf. *Id.* at*23, 2020 U.S. Dist. LEXIS 73284, at *74.

In April 2015, Plaintiff filed the original complaint in *Oliver 2015*. *Id.* at *23, 2020 U.S. Dist. LEXIS 73284, at *74. In May 2015, Plaintiff filed a second grievance requesting a hearing on the disciplinary charges against her. *Id.* at *23, 2020 U.S. Dist. LEXIS 73284, at *76. Later that month, Plaintiff filed a second EEOC charge alleging continued retaliation. *Id.* at *24, 2020 U.S. Dist. LEXIS 73284, at *74. On May 26, 2015, Plaintiff filed a third grievance, requesting the disciplinary charges be determined "at the Troop Level" and that she be transferred to CNET West. *Id.* at *24, 2020 U.S. Dist. LEXIS 73284, at *76–77. On May 28, 2015, Superintendent D'Amico filed amended charges against Plaintiff; on June 30 and July 1, 2015, a hearing was

held; and on July 14, 2015, Superintendent D'Amico accepted the hearing board's finding that Plaintiff was guilty of the charges against her and terminated her employment. *Id.* at \*24, 2020 U.S. Dist. LEXIS 73284, at \*77–80. In November 2015, Plaintiff petitioned for review of the termination decision under New York States Civil Practice Law and Rules, Article 78, in state court. *Id.* at \*24, 2020 U.S. Dist. LEXIS 73284, at \*80. The Appellate Division, Fourth Department, confirmed that determination and dismissed her petition. *Oliver v. D'Amico*, 151 A.D.3d 1614 (4th Dep't 2017), *leave to appeal denied*, 30 N.Y.3d 913, (2018).

In the second amended complaint in *Oliver 2015*. *Oliver 2015*, No. 15-cv-444, Dkt. No. 37 (filed March 29, 2016), Plaintiff named, in addition to the NYSP, ten NYSP employees as defendants, including Superintendent D'Amico, Christensen, and Kelly. *Id.* Challenging, inter alia, her transfers, reassignments, reduced work load, removal from undercover duty, termination, and a number of post-termination events, Plaintiff alleged that she was subject to gender discrimination, a hostile work environment based on sex, and retaliation, in violation of Title VII, the Equal Protection Clause of the Fourteenth Amendment, and the NYSHRL, and conspiracy and failure to prevent conspiracy, in violation of 42 U.S.C. §§ 1983, 1985, 1986. *Id.* Following extensive motion practice at the pleading and summary judgment stages, the Court dismissed Plaintiff's claims against two of the individuals allegedly involved in the "sham investigation" by NYSP IAB personnel, including Christensen, who was head of the IAB, (*Oliver 2015*, Dkt. No. 37, ¶ 112), and Timothy Owens, a NYSP lieutenant who was in charge of the investigation into the personnel complaint that led to Plaintiff's termination, and allegedly "covered up evidence based on the direction of his supervisors and ignored the retaliatory motivations for bringing the charge against Plaintiff to begin with." *Oliver 2015*, No. 15-cv-444, Dkt. No. 37, ¶ 97. Plaintiff has various sexual harassment and retaliation claims remaining under

10

Title VII, the Equal Protection Clause and the NYSHRL against the NYSP and three defendants. *Oliver 2015*, 2020 WL 1989180, at \*53, 2020 U.S. Dist. LEXIS 73284, at \*168–70. These claims are trial ready.

### B.      The Second Amended Complaint in This Action

The Second Amended Complaint at issue here repeats many of the above facts from *Oliver 2015*, including allegations concerning Plaintiff's initial filing of EEO complaints against Kelly and the investigator at CNET West and the request to proceed informally, (Dkt. No. 45, at 5, 17, 22, 69); assignment to the team of her alleged harasser, (Dkt. No. 45, at 18–19); reduced work assignments, (Dkt. No. 45, at 23, 68, 80); issues with the investigation into Plaintiff's complaints, *compare Oliver 2015*, 2020 WL 1989180 at \*14 n.22, 2020 U.S. Dist. LEXIS 73284, at \*43 n.22; *with* Dkt. No. 45, at 86; Plaintiff's transfer to from CNET West to the CTIU, (Dkt. No. 45, at 36); the NYSP's responses to Plaintiff's filing an EEOC charge and the EEOC's finding of discrimination and retaliation, (Dkt. No. 45, at 6, 21, 35); and the administrative charges against Plaintiff and her termination, (Dkt. No. 21, 33, 37). Though the remaining Defendants in this case are different than those named in *Oliver 2015*, like *Oliver 2015*, the Second Amended Complaint asserts gender discrimination, hostile work environment, and retaliation claims under Title VII, the Equal Protection Clause, and the NSYHRL, as well as conspiracy claims.[7]

---

[7] In addition, the Second Amended Complaint contains allegations that Defendant Capezza authorized the search of Plaintiff's home following her termination "based on false accusations that Plaintiff had 10 handguns which were unaccounted for," (Dkt. No. 45, at 82), and that Defendant Penny and the Defendant Attorneys authorized a NYSP official "to direct his subordinate investigator to create a falsified NYSP investigative report," with respect to Plaintiff's firearm transfer records. (Dkt. No. 45, at 60). Although not referenced in the Court's summary judgment ruling in *Oliver 2015*, Plaintiff is litigating these issues in *Oliver 2015*. *See, e.g.*, *Oliver 2015*, No. 15-cv-444, Dkt. Nos. 338, 342, 343, 345.

The facts alleged in the Second Amended Complaint regarding conduct after the March 2016 operative complaint in *Oliver 2015* concern four different proceedings or complaints Plaintiff attempted to advance post-termination regarding the circumstances leading to her termination.

### 1.   Defendant Attorneys' Conduct Concerning Plaintiff's Improper Practice Charges

Plaintiff alleges that she filed improper practice charges against the NYSP with the New York Public Employment Relations Board ("PERB") in February and May 2015. (Dkt. No. 45, at 50). During a November 22, 2016, teleconference with the PERB and Defendants Lodovice and Hughes, Plaintiff reported that she had "physical evidence and documented proof of the 'fraudulent' investigations conducted by IAB" and "disclosed the details regarding the fraudulent E[qual] E[mployment] O[pportunity] and retaliation investigation" that Defendant Penny and Christensen "authorized against Plaintiff along with the subsequent fraudulent administrative charges lodged against Plaintiff in order to secure Plaintiff's illegal and wrongful termination from the NYSP." (Dkt. No. 45, at 63–64). Neither Lodovice nor Hughes, however, brought the details Plaintiff reported regarding the fraudulent investigations to the attention of the Superintendent and investigative authorities. (Dkt. No. 45, at 64). On March 27, 2017, Defendant Lodovice submitted "false statements to the former Administrative Law Judge in order to deceive her into dismissing Plaintiff's pending Improper Practice Charge against the NYSP by denying the existence of the grievances Plaintiff filed years earlier."[8] (Dkt. No. 45, at 65). Meanwhile, Defendant Volforte and Christensen had these grievances in their possession, but

---

[8] The three grievances, filed between October 27, 2014 and May 26, 2015, are discussed at length in *Oliver 2015*, 2020 WL 1989180, at *24, 2020 U.S. Dist. LEXIS 73284, at *75–78. Plaintiff does not provide details regarding the content of her improper practice charges or how they are connected to her grievances; she alleges that she filed the improper practice charges with PERB "in response to the continued acts of discrimination, harassment, and retaliation Plaintiff was being subject to and the acts of official misconduct taking place within the NYSP Internal Affairs Bureau under Daniel Penny and the NYSP Office of Human Resources under Francis Christensen." (Dkt. No. 45, at 50).

were withholding them from the ALJ. (Dkt. No. 45, at 65). In May 2017, Plaintiff sent the ALJ

"copies of the signed and received grievances as proof that these grievances did in fact exist and

were in fact timely filed." (Dkt. No. 45, at 65–66). Lodovice eventually "produced the 'altered'

version of the grievances"[9] and the ALJ dismissed her "Improper Practice Charges without even

granting Plaintiff the right to a hearing." (Dkt. No. 45, at 65–67).

### 2.    Defendant Attorneys' Conduct Concerning Plaintiff's Article 78 Proceeding

Plaintiff alleges that the Article 78 petition she filed in state court challenging the

NYSP's termination of her employment "was dismissed as a result of the false instruments the

Defendants filed in opposition" to Plaintiff's petition. (Dkt. No. 45, at 8, 61). Plaintiff alleges

that Defendants Goland, Harford, and Hughes, among others, "manufactured" "false evidence"

"to secure a dismissal of" her Article 78 petition. (Dkt. No. 45, at 28). As described above, the

New York Appellate Division, Fourth Department confirmed the NYSP's termination

determination and dismissed Plaintiff's petition on June 9, 2017. *Oliver v. D'Amico*, 151 A.D.3d

1614, 1618 (4th Dep't 2017).

### 3.    Plaintiff's Complaint with NYSDHR

On September 9, 2017, Plaintiff filed a formal complaint with the New York State

Division of Human Rights ("NYSDHR") "in response to the post-termination acts of retaliation

Plaintiff continued to suffer after Plaintiff's Article 78 Petition was dismissed." (Dkt. No. 45, at

7–8). On October 24, 2017, the NYSDHR "notified Plaintiff that there was no record of

Plaintiff's complaint." (Dkt. No. 45, at 8). When Plaintiff submitted a second copy of her

---

[9] Plaintiff alleges that these grievances "had been altered by her former attorney who removed an entire paragraph in which Plaintiff reported the misconduct which was taking place within the NYSP Internal Affairs Bureau under Defendant Daniel Penny." (Dkt. No. 45, at 44).

complaint, the NYSDHR "notified Plaintiff they were unwilling to conduct an investigation on Plaintiff's behalf." (Dkt. No. 45, at 8).

### 4.      Plaintiff's Complaint to Governor's Office

On October 16, 2017, Plaintiff filed an online complaint with the New York Governor's Office. (Dkt. No. 45, at 8). "On October 27, 2017, [when] Plaintiff re-contacted the New York State Governor's Office by telephone to advise them" of the NYSDHR's October 24, 2017 response, her call was "transferred to the voicemail of the New York State Inspector General's Office who refused to answer Plaintiff's telephone call or respond to" her voicemail message. (Dkt. No. 45, at 8).

## IV.     STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court accepts as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While *pro se* complaints must contain sufficient factual allegations to meet the plausibility standard, [courts] read them with

'special solicitude' and interpret them 'to raise the strongest arguments that they *suggest*.'"

*Roman v. Donelli*, 347 F. App'x 662, 663 (2d Cir. 2009) (summary order) (quoting *Triestman v.*

*Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)).

## V.    DISCUSSION

### A.    Duplicative Claims

Defendants assert that a "number of the allegations in the Second Amended Complaint

are identical to or very similar to claims that are being litigated in" *Oliver 2015*, which is trial

ready, and argue for their dismissal under the doctrines of res judicata or claim preclusion. (Dkt.

No. 52-2, at 13–14).

The Court agrees, for the reasons set forth in its summary judgment ruling in *Oliver*

*2015*, that the doctrine of issue preclusion bars Plaintiff from relitigating the factual findings of

the Hearing Board, which the Plaintiff unsuccessfully challenged in her New York State Article

78 proceeding. *Oliver 2015*, 2020 WL 1989180, at *26–27, 2020 U.S. Dist. LEXIS 73284, at

*82–86. The Appellate Division, Fourth Department concluded that the Hearing Board's factual

findings were supported by substantial evidence, and that determination is entitled to preclusive

effect. *Id.*; *see Oliver v. D'Amico*, 151 A.D.3d 1614 (4th Dep't 2017), *leave to appeal denied*, 30

N.Y.3d 913 (2018). The Appellate Division declined to vacate the penalty of termination. *Oliver*

*D'Amico*, 151 A.D.3d at 1617 ("Given the conduct underlying the offenses, i.e., directly

disobeying an order and making false statements in an IAB interview and on official police

records, and [Plaintiff's] refusal to accept any responsibility for her conduct, we cannot say that

the penalty of dismissal shocks our sense of fairness."). Thus, Plaintiff would appear to be

precluded from litigating her claims that Defendants drafted "fraudulent" charges and produced

"false evidence" to secure her "unlawful" termination.

More importantly, most of Plaintiff's claims are duplicative of her claims in *Oliver 2015*. As *Oliver 2015* is still pending, the Court considers Defendants' argument under the principles governing duplicative lawsuits. "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)). The Second Circuit has instructed that "[i]n order for the rule to be properly invoked . . . 'the case must be the same'": "[t]here must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same." *Sacerdote*, 226 F.3d at 504 (quoting *The Haytian Republic*, 154 U.S. 118, 124 (1894)). A plaintiff is, however, entitled to file a new complaint as to "events arising after the filing of the complaint that formed the basis of the first lawsuit." *Curtis*, 226 F.3d at 138–39.

"The rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or *res judicata*." *Id.* at 138. "The vital difference between the rule against duplicative litigation and the doctrine of claim preclusion, however, is that the former can only be raised to bar one of two suits that are both still pending; the latter is generally raised, after a prior suit is resolved on the merits, to preclude a party (or its privy) from relitigating claims in a subsequent suit that were or could have been raised in the prior action." *Sacerdote*, 939 F.3d at 505. "The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the 'comprehensive disposition of litigation'" and is "meant to protect parties from "the vexation of concurrent litigation over the same subject matter." *Curtis*, 226 F.3d at 138 (first quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952); then quoting *Adam v.*

*Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)). "Because of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Id.* "Of course, simple dismissal of the second suit is another common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 138–39.

The record does not reflect why Plaintiff sought to litigate her claims in two different districts with separate complaints. Plaintiff filed a second amended counseled complaint in *Oliver 2015* on March 29, 2016. *Oliver 2015*, No. 15-cv-444, Dkt. No. 37. Twenty months later, while Plaintiff was still represented by counsel in *Oliver 2015*, in the Northern District of New York, Plaintiff filed this action pro se in the Western District of New York, naming two defendants already named in *Oliver 2015*—the NYSP and Francis Christensen—and naming seven additional NYSP employees, including six attorneys for the NYSP. (Dkt. No. 1).[10] While Plaintiff's pro se complaint in this case does raise some claims regarding conduct that occurred after March 2016, the allegations are, as Defendants note, largely duplicative. Plaintiff never sought permission to add the seven new NYSP defendants named in this action to her counseled complaint in *Oliver 2015*.

Although the parties in the two actions are different, this does not prevent a finding that the actions are duplicative because Defendants here are in privity with the defendants in *Oliver 2015*, as they are all employees of the NYSP. *See DiGennaro v. Whitehair*, 467 F. App'x 42, 44

---

[10] Plaintiff was represented by counsel in *Oliver 2015* until June 12, 2018, when the Court granted her counsel's motion to withdraw. Oliver 2015, No. 15-cv-444, Dkt. Nos. 105, 109. Since then, Plaintiff has appeared pro se in *Oliver 2015*.

(2d Cir. 2012) ("[W]hile Whitehair was not a named defendant in the original action, he is in privity with the defendants named in the original complaint as '[a]ll defendants are employees of [the Town of Gates] and their interests are adequately represented by those in the first suit who are 'vested with the authority of representation.'" (quoting *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005))). At the same time, because Plaintiff filed the amended complaint in *Oliver 2015* on March 29, 2016, events arising *after* its filing could properly be the subject of a second lawsuit. *Curtis*, 226 F.3d at 138–39.

The Second Amended Complaint here principally alleges the same acts of gender discrimination, hostile work environment, retaliation, and conspiracy, as well as the same adverse employment actions,[11] as alleged in *Oliver 2015*. Moreover, all of these events occurred prior to March 29, 2016, the date Plaintiff filed the amended complaint in *Oliver 2015*. *See Oliver 2015*, No. 15-cv-444, Dkt. No. 37. That Plaintiff advances at least one different legal theory here—First Amendment retaliation—is unavailing because the rule against duplicative litigation "does not require that all aspects of the new and prior suits be identical but rather, focuses on whether the two claims arise from the same 'nucleus of operative fact.'" *Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 F. App'x 47, 48 (2d Cir. 2013) (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)); *see also Davis*, 534 F. App'x at 48 (affirming dismissal of the plaintiff's FCA complaint as duplicative of Title VII complaint where the plaintiff alleged in both actions that "she reported co-worker misconduct to the same individuals, at the same time, and suffered the same adverse employment actions in retaliation

---

[11] These adverse employment actions include transferring Plaintiff to the same team as her alleged harasser, (Dkt. No. 45, at 68), reducing Plaintiff's duties, (Dkt. No. 45, at 70), conducting a "sham" investigation into Plaintiff's claims of discrimination and harassment, (Dkt. No. 45, at 71), falsifying firearms records, (Dkt. No. 45, at 77), and terminating her employment, (Dkt. No. 45, at 2). *See, e.g.*, *Oliver 2015*, No. 15-cv-444, Dkt. No. 37; *Oliver 2015*, 2020 WL 1989180, at *39–40, 2020 U.S. Dist. LEXIS 73284, at *126–34.

for her complaints" and both actions shared "a common inquiry"—whether the defendant "had a legitimate and lawful reason for taking the adverse employment actions").

Accordingly, all claims in connection with acts prior to March 29, 2016—the date Plaintiff filed the amended complaint in *Oliver 2015*—alleged in connection with Plaintiff's First Amendment retaliation claim, employment discrimination under the Fourteenth Amendment and NYSHRL, are dismissed as duplicative.[12]

### B.     In Any Event Plaintiff Has Failed to Cure Deficiencies Identified in *Oliver 2017 II*, and Has Failed to State a Claim against Any Defendant

#### 1.     First Amendment Claims

Defendants move to dismiss Plaintiff's First Amendment retaliation claim. (Dkt. No. 52-2, at 21). As the Second Amended Complaint contains no express reference to the First Amendment, (*see* Dkt. No. 45, at 68–130), the Court must first determine whether it can be construed as asserting a such a claim. *See Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014) (explaining that when "evaluating a pro se complaint, a court is not limited to the causes of action specified by the plaintiff, but instead 'must construe it liberally, applying less stringent standards than when a plaintiff is represented by counsel' and must construe it to raise the strongest claims it suggests." (quoting *Branham v. Meachum*, 77 F.3d 626, 628–29 (2d Cir. 1996)). Plaintiff's Affirmation for a More Definitive Statement, which the Court considered as part of the original Complaint, contained a "Free Speech Retaliation" cause of action. (Dkt. No. 28, ¶¶ 28–29). The Court dismissed this claim on the ground that Plaintiff failed to allege, in other than vague terms, that the speech at issue was on a matter of public concern, but gave Plaintiff leave to amend. *Oliver 2017 II*, 2020 WL 1849484, at *6, 2020

---

[12] The Court has considered consolidation or a stay of this matter but, in light of the analysis set forth below, neither is warranted in this case.

U.S. Dist. LEXIS 64150, at*17. The Amended Complaint, (Dkt. No. 41), did not contain an express First Amendment retaliation claim, but alleged that Defendants prevented her from speaking on matters of public concern. (Dkt. No. 41, at 75–76). In evaluating the Amended Complaint, the Court noted that it did "not correct the deficiencies the Court identified" with respect to the original pleadings, but again gave leave to amend. *Oliver 2017 III*, 2020 WL 2513689, at *2–3, 2020 U.S. Dist. LEXIS 85695, at *3, 5.

Like the Amended Complaint, the Second Amended Complaint contains no express cause of action under the First Amendment. (Dkt. No. 45, 68–130). And, as Defendants note, Plaintiff does not, in her response to their motion, "address the fact that the Second Amended Complaint fails to allege" a First Amendment retaliation claim. (Dkt. No. 56, at 6; *see* Dkt. No. 55). In light of Plaintiff's failure to respond to the Defendants' motion to dismiss a First Amendment claim, and her failure to correct the deficiencies specifically identified in *Oliver 2017* by specifying the speech at issue, the Court finds that Plaintiff has abandoned a First Amendment claim. *Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) (explaining that even at the motion to dismiss stage, "[c]ourts 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" (quoting *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008))).

Nevertheless, out of an abundance of caution, the Court considers whether Plaintiff has alleged a plausible claim for relief under the First Amendment. Plaintiff, at least initially, categorized her First Amendment claim as retaliation. And the allegation in the Second Amended Complaint that she reported matters of "public safety" and "public integrity" concerning supervisors and leadership within the NYSP, including Defendant Penny, one of the individuals whom Plaintiff claims was active in procuring her termination, suggests a First Amendment

20

retaliation claim. (Dkt. No. 45, at 67). The remaining allegations regarding Plaintiff's purported

speech, however, are that Defendants delayed and made false statements in connection with her

improper practice charges and Article 78 proceeding leading to adverse outcomes and "in order

*to prevent Plaintiff from speaking* out on matters of . . . public concern." (Dkt. No. 45, at 73). As

addressed below, these allegations suggest First Amendment right of access claims; to the extent

the allegation that Defendants prevented Plaintiff from speaking suggests a prior restraint claim,

it is also addressed below.

### a.  First Amendment Retaliation

To state a First Amendment retaliation claim, a plaintiff "must plausibly allege that '(1)

[her] speech or conduct was protected by the First Amendment; (2) the defendant took an

adverse action against [her]; and (3) there was a causal connection between this adverse action

and the protected speech.'" *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018)

(quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)).

With respect to the first element, Plaintiff must allege facts from which it could be

plausibly inferred that she engaged in "speech or conduct [that] was protected by the First

Amendment." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). As a public

employee, plaintiff must allege that she "engaged in citizen speech," in other words, that she

"spoke as a private citizen," and that "the speech at issue was on a matter of public concern."

*Montero*, 890 F.3d at 399. "For public employees, speech that 'principally focuses on an issue

that is personal in nature and generally related to the speaker's own situation or that is calculated

to redress personal grievances—even if touching on a matter of general importance—does not

qualify for First Amendment protection.'" *Agosto v. New York City Dep't of Educ.*, No. 19-2738,

2020 WL 7086060, at *4, 2020 U.S. App. LEXIS 37898, at *12 (2d Cir. Dec. 4, 2020) (quoting

*Montero*, 890 F.3d at 399–400). The forum is relevant because a "petition filed with an employer

using an internal grievance procedure in many cases will not seek to communicate to the public

or to advance a political or social point of view beyond the employment context." *Id.* (quoting

*Borough of Duryea, Penn. v. Guarnieri*, 564 U.S. 379, 398 (2011)).

The only allegation in the Second Amended Complaint that could be construed as

asserting a First Amendment retaliation claim[13] is Plaintiff's assertion that "[t]he violations

Plaintiff reported she was subject to in response to the EEO Complaint Plaintiff filed raised

grave matters of public safety, public integrity, public trust, and public concern involving

supervisory members and those holding leadership positions within the NYSP," including

Defendant Penny, whom Plaintiff claims was active in procuring her termination. (Dkt. No. 45,

at 67). Plaintiff alleges she submitted reports to IAB and Human Resources disclosing

"egregious safety violations, fraudulent narcotics investigations, and the mishandling of

confidential informants." (Dkt. No. 45, at 71). These allegations concerning her responses to the

internal discrimination and retaliation investigations, however, are wholly duplicative of the

claims in *Oliver 2015*. *See supra* Section V.A. Even if they were not duplicative, this claim must

be dismissed on the independent ground that Plaintiff has not cured the deficiency the Court

previously identified. In dismissing the original Complaint, the Court found Plaintiff's assertion

that she spoke "on matters of officer safety and public concern relative to improprieties taking

place at CNET West," to be "vague" and that Plaintiff's failure to "allege what she said or

provide any facts regarding the circumstances of her alleged speech," did not allow a plausible

inference of protected speech. *Oliver 2017 II*, 2020 WL 1849484 at *6, 2020 U.S. Dist. LEXIS

64150, at *17.

---

[13] The remaining allegations are that Defendants *prevented* Plaintiff from speaking and are addressed below.

The Second Amended Complaint refers to Plaintiff's reports regarding "matters of public safety" and "public concern" involving supervisors at NYSP but, like her earlier pleadings, contains no factual detail regarding the dates, the content or the context of that speech. For example, Plaintiff asserts that "[t]he violations Plaintiff reported she was subject to in response to the EEO Complaint Plaintiff filed raised grave matters of public safety, public integrity, public trust, and public concern involving supervisory members and those holding leadership positions within the NYSP." (Dkt. No. 45, at 67). Plaintiff alleges she reported to IAB and Human Resources "egregious safety violations, fraudulent narcotics investigations, and the mishandling of confidential informants," (Dkt. No. 45, at 71), but does not provide any factual detail with respect to the content, date or context of her reports. (*See, e.g.*, Dkt. No. 45, at 21 (reference to Plaintiff having reported "unsafe working conditions" that "she and her teammates were subject to"); *id.* at 37 (same)). Accordingly, even if Plaintiff's allegations concerning conduct at issue in *Oliver 2015* were not duplicative, Plaintiff has failed to plausibly allege that her internal reports to the NYSP were protected speech, i.e. that she "spoke as a private citizen" and that "the speech at issue was on a matter of public concern." *Montero*, 890 F.3d at 399. *See Giachetto v. Patchogue-Medford Union Free Sch. Dist.*, 413 F. Supp. 3d 141, 144 (E.D.N.Y. 2016) (finding that because the plaintiff's "vague allegation" that she was "'accused of and ordered to refrain from speaking out against the [School District] to community members' at a Teacher Improvement Plan meeting" failed to "identify what the exact utterance was, or how this utterance, or any other alleged instance of speech, involved matters of public concern" she failed to allege her speech was protected).

### b.    First Amendment Access to Courts

Throughout the Second Amended Complaint, Plaintiff contends that the Defendant Attorneys: (1) made false statements to the ALJ in "an attempt to deceive the [ALJ] into

dismissing the Improper Practice Charges against the NYSP" and "in order to deny [her] the ability to speak out" on "matters of public concern, public safety, public integrity, and public trust," which "threatened to expose the corruption taking place within the NYSP Internal Affairs Bureau" and "the misconduct of Defendants," (Dkt. No. 45, at 63), and (2) filed "false instruments" in opposition to her Article 78 petition, (Dkt. No. 45, at 99). Construed liberally, these allegations may be read to raise a claim that the Defendant Attorneys interfered with Plaintiff's access to the courts.

"It is well established that all persons enjoy a constitutional right of access to the courts, although the source of this right has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997). "[B]ackward-looking access claims,' covering suits that 'cannot now be tried (or tried with all material evidence)" may arise from, for instance, an allegation that an "official action 'caused the loss or inadequate settlement of a meritorious case.'" *Sousa v. Marquez*, 702 F.3d at 127–28 (2d Cir. 2012) (quoting *Christopher v. Harbury*, 536 403, 414 n.11 (2002)). The Second Circuit has cautioned that "[t]he viability of backward-looking right-of-access claims is far from clear in this Circuit." *Sousa*, 702 F.3d at 128. "Such claims, if recognized, would be available only if . . . official misconduct was so severe as to render[] hollow [a plaintiff's] right to seek redress. *Id.* (internal quotation marks omitted). "This circumstance may arise, for example, if public officials withheld from the plaintiff key facts which would form the basis of the . . . claims for redress." *Id.* (internal quotation marks omitted). Moreover, "'such claims are available only if a judicial remedy was completely foreclosed' by the alleged cover-up." *Zilioli v.*

*City of New York*, No. 17-cv-9495, 2020 WL 1548763, at *4 n.4, 2020 U.S. Dist. LEXIS 57704, at *12 n.4 (S.D.N.Y. Apr. 1, 2020) (quoting *Sousa*, 702 F.3d at 128).

Here, the Second Amended Complaint alleges that despite the Defendant Attorneys' delays and withholding of grievances, Plaintiff was able to provide copies to the ALJ in litigating her improper practice charges. Further, it contains no allegation that Plaintiff was unable to fully litigate or contest the Defendant Attorneys' alleged false statements in her Article 78 proceeding. Indeed, Plaintiff is pursuing claims with respect to her treatment while employed by the NYSP and her termination in *Oliver 2015*. The Court therefore concludes that the Second Amended Complaint fails to state an access to courts claim. *See, e.g.*, *Zilioli*, 2020 WL 1548763, at *4 n.4, 2020 U.S. Dist. LEXIS 57704, at *12 n.4 (granting summary judgment dismissing conspiracy to deny the plaintiff access to courts claim, explaining that the "fact that Vasquez discarded her initial incident report and substituted a revised report did not completely foreclose Zilioli's 'ability to bring [her] other constitutional claims, and the filing of the instant suit would belie any such argument.'" (quoting *McNaughton v. de Blasio*, No. 14-cv-221, 2015 WL 468890, at *12, 2015 U.S. Dist. LEXIS 13352, at *36 (S.D.N.Y. Feb. 4, 2015)); *see also Eberhart v. Crozier*, 423 F. App'x 57, 58–59 (2d Cir. 2011) ("Eberhart's allegations did not plausibly suggest that defendants 'hindered his efforts' to pursue a non-frivolous legal claim, particularly because Eberhart had the opportunity to raise his allegations of mischaracterization on appeal from the Supreme Court's decision on his Article 78 proceeding.").

### c.     Prior Restraint

To the extent Plaintiff is attempting to assert a prior restraint claim, (*see* Dkt. No. 45, at 2 (alleging Defendants acted "as a means of *preventing* Plaintiff from speaking out on matters of public concern" in litigating her improper practice charges and Article 78 proceedings) (emphasis added); *see also id.* at 65, 73, 74, 75, 76, 80, 83, 84, 88, 91, 92, 96, 100, 106, 109, 110,

113, 116, 117, 121, 124, 127, 128), and even assuming the content of her speech need not be a matter of public concern as she was no longer an employee when she was litigating in those proceedings,[14] *see, e.g.*, *Williams v. Town of Greenburgh*, 535 F.3d 71, 77 (2d Cir. 2008) (concluding that because the plaintiff, a former employee of town community center, "was not a public employee when he criticized" a town employee while utilizing the community center, the plaintiff's "speech need not have been on a matter of public concern for it to fall within the protection of the First Amendment for the purposes of this action" and need only be "protected speech"), it fails because there is no allegation that any Defendant prohibited Plaintiff from speaking. *See Wetzel v. Town of Orangetown*, 308 F. App'x 474, 477 (2d Cir. 2009) (affirming dismissal of the plaintiff's claim that she was prevented from speaking where "the complaint reveals that the Chief of Police has stated that Plaintiff may speak to the Town officials on those matters"). According to the Second Amended Complaint, Plaintiff litigated her improper practice charges and Article 78 to conclusion and, while she takes issue with the Defendant Attorneys' representations to the presiding judicial officer in these proceedings, she makes no allegation that any Defendant prevented her from speaking. *See also Ahmad v. White Plains City Sch. Dist.*, No. 18-cv-3416, 2019 WL 3202747, at *17, 2019 U.S. Dist. LEXIS 118032, at *55 (S.D.N.Y. July 16, 2019) (granting motion to dismiss First Amendment prior restraint claim where the plaintiff "included no allegations about what specific communications were precluded" and the plaintiff could communicate "with the school district's Central Office or with union representatives,

---

[14] Although Plaintiff's employment with the NYSP ended prior to the conduct underlying any non-duplicative First Amendment claim, Defendants assume the public employee framework applies. (*See* Dkt. No. 52-2, at 21 (asserting that Plaintiff must "allege sufficient facts to support a finding that [s]he spoke 'as a citizen,' rather than in [her] capacity as a public employee")). Presumably, this is because Plaintiff's improper practice charges and Article 78 proceeding concerned or stemmed from her employment relationship with the NYSP. *See, e.g.*, *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006) (rejecting argument that "general framework governing public employees" was inapplicable because the plaintiff was on leave at the time explaining that "the deprivation of which Hoyt complains is directly and specifically related to the terms of his public employment").

thereby permitting him to continue to discuss his termination and any grievances he might have

with administrators and WPTA").

Accordingly, to the extent the Second Amended Complaint asserts claims under the First

Amendment, Defendants' motion to dismiss those claims is granted.

## 2.  Fourteenth Amendment Equal Protection Claims

### a.  Gender Discrimination and Hostile Work Environment

Plaintiff alleges that Defendants engaged in gender discrimination and subjected her to a

hostile work environment, in violation of the Equal Protection Clause. "The Equal Protection

Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly

situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432,

439 (1985). A plaintiff alleging a disparate treatment claim based on sex must allege gender-

based conduct. *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019). A plaintiff need not

establish a *prima facie* case at the pleadings stage; "her burden is 'minimal'—[s]he need only

plausibly allege facts that provide 'at least minimal support for the proposition that the employer

was motivated by discriminatory intent.'" *Vega v. Hempstead Free Sch. Dist.*, 801 F.3d 84, 87

(2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

The Court has dismissed all employment discrimination, hostile work environment and

retaliation claims arising prior to the operative pleading in *Oliver 2015* as duplicative. But even

if these claims were not duplicative, Plaintiff's failure to cure the deficiencies the Court

previously identified in connection with these claims, *see Oliver 2017 II*, 2020 WL 1849484, at

\*7–9, 2020 U.S. Dist. LEXIS 64150, at \*19–26, is an independent basis for dismissal as the

Second Amended Complaint does not provide "enough facts to state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 570. As the Court explained, Plaintiff's original

pleadings, (Dkt. Nos. 1, 28), alleged no facts "that would allow a plausible inference of gender

discrimination" or that the alleged conduct "was 'based on sex'" with respect to Defendant

Penny and the Defendant Attorneys' alleged conduct. *Oliver 2017 II*, 2020 WL 1849484, at *7–

8, 2020 U.S. Dist. LEXIS 64150, at *19–21 (quoting *Naumovski v. Norris*, 934 F.3d 200, 212

(2d Cir. 2019)). Plaintiff's Amended Complaint "did not correct the deficiencies the Court

identified," either. *Oliver 2017 III*, 2020 WL 2513689, at *2, 2020 U.S. Dist. LEXIS 85695, at

*3. Thus, these allegations, even if not duplicative fail to state a claim for relief under the Equal

Protection Clause.

Plaintiff's non-duplicative claims involving the Defendant Attorneys' conduct with

respect to the improper practice charges and Article 78 proceeding fare no better. The Court

notes that despite the opportunities to amend, Plaintiff has added no facts to the Second

Amended Complaint that would allow a plausible inference that Defendant Penny or the

Defendant Attorneys' actions toward Plaintiff in connection with the improper practice charges

or Article 78 proceeding were based on sex. For example, Plaintiff alleges that Defendants

"continue[d] to delay and adjourn Plaintiff's request for a hearing . . . while they moved to

dismiss the Improper Practice Charges against the NYSP by submitting false statements to the

Administrative Law Judge in an attempt to deceive the Administrative Law Judge into

dismissing the Improper Practice Charges." (Dkt. No. 45, at 63). But this allegation contains no

facts that would allow an inference that Defendants engaged in these actions because of her sex.

Plaintiff's allegations regarding Defendants' opposition to her Article 78 petition, which consist

of assertions that Defendants filed "false instruments" and "manufactured" "false evidence," are

likewise devoid of facts that would permit an inference that Defendants were motivated by

discriminatory intent. (Dkt. No. 45, at 8, 28, 61–62). *See Naumovski*, 934 F.3d at 212 (explaining

that "a plaintiff claiming disparate treatment under [the Equal Protection Clause] must plausibly

allege that she suffered an "adverse employment action" taken "because of" her sex, and that "a plaintiff claiming a hostile environment must plausibly allege offensive conduct based on sex"). Thus, Plaintiff's post-employment equal protection discrimination claims also fail.

Accordingly, Defendants are entitled to dismissal of Plaintiff's equal protection gender discrimination and hostile work environment claims.[15]

### b.    Retaliation

The factual allegations underlying Plaintiff's Fourteenth Amendment retaliation claim principally concern the events leading up to and immediately after her termination, (Dkt. No. 45, at 78–82), and are discussed at length in *Oliver 2017 II*, 2020 WL 1849484 at *8–9, 2020 U.S. Dist. LEXIS 64150, at *21–25 and *Oliver 2015*, 2020 WL 1989180, at *37–44, 2020 U.S. Dist. LEXIS 73284, at *123–43. These allegations are duplicative of *Oliver 2015* and have been dismissed, as discussed above. Even if they were not duplicative, Plaintiff's retaliation claim fails on the ground that the Second Amended Complaint does not cure the deficiencies the Court previously identified: it does not allege adverse action or facts that would allow a plausible inference of retaliatory intent by Defendant Penny or Defendant Attorneys, and, with respect to the post-employment conduct, it does not allege an adverse action implicating Plaintiff's employment prospects. *Oliver 2017 II*, 2020 WL 1849484 at *8–9, 2020 U.S. Dist. LEXIS 64150, at *21–25.

For an equal protection retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment

---

[15] Plaintiff's hostile work environment claims are subject to dismissal for the additional reason that they are alleged to have occurred well after her employment was terminated in July 2015. *See Ruggerio v. Dynamic Elec. Sys. Inc.*, No. 12-cv-100, 2012 WL 3043102, at *9, 2012 U.S. Dist. LEXIS 103940, at *27–28 (E.D.N.Y. July 25, 2012) ("The January 2011 reference had no effect upon plaintiff's work environment, her working conditions or her ability to perform her job—the hallmarks of a hostile work environment—because her employment ended in January 2010.").

action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice."
*Vega*, 801 F.3d at 90. Generally, "an adverse employment action is any action that 'could well
dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.*
(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). To determine
"whether conduct amounts to an adverse employment action, the alleged acts of retaliation need
to be considered both separately and in the aggregate, as even minor acts of retaliation can be
sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d
Cir. 2010). As "the elements of a retaliation claim based on an equal protection violation under §
1983 mirror those under Title VII[,]" an "adverse employment action [in a retaliation claim
based on the Equal Protection Clause] is any action that could well dissuade a reasonable worker
from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90–91 (quotation
marks and citation omitted).

Many of the allegations in the Second Amended Complaint challenge the "sham
investigation" into Plaintiff's sexual harassment and retaliation complaints that Defendant Penny
allegedly supervised or directed and mishandled. (Dkt. No. 45, at 20, 25, 34, 68, 70, 71). As the
Court previously explained, the allegedly flawed investigation fails to allege adverse action.
*Oliver 2017 II*, 2020 WL 1849484, at *8, 2020 U.S. Dist. LEXIS 64150, at *23 (citing *Fincher v.
Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("An employee whose
complaint is not investigated cannot be said to have thereby suffered a punishment for bringing
that same complaint: Her situation in the wake of her having made the complaint is the same as it
would have been had she not brought the complaint or had the complaint been investigated but
denied for good reason or for none at all.")). Further, like the allegations in the original
Complaint, the allegations of retaliatory termination here are devoid of factual detail that would

allow a plausible inference that Defendants Penny, Capezza, Lodovice, Harford, Volforte, Goland, or Hughes engaged in retaliation. For instance, the Second Amended Complaint makes conclusory assertions: (1) that Defendant Penny and the Defendant Attorneys concealed Plaintiff's claims of sexual harassment and retaliation and used the IAB reports into Plaintiff's claims to "facilitate" internal "discrimination, harassment and retaliation against Plaintiff" leading to the May 2014 "fraudulent administrative charges" against her, (Dkt. No. 45, at 21, 33, 37), and (2) that the Defendant Attorneys, acting under Defendant Penny, directed Plaintiff's supervisor to falsely accuse Plaintiff of disobeying her supervisor in order to secure the personnel complaint in May 2014 that led to Plaintiff's July 2015 termination, (Dkt. No. 45, at 43). *See Oliver 2017 II*, 2020 WL 1849484, at \*8–9, 2020 U.S. Dist. LEXIS 64150, at \*24 (citing *Lawtone-Bowles*, 2017 WL 4250513, at \*2, 2017 U.S. Dist. LEXIS 155140, at \*5 ("Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action.")). Thus, even if they were not duplicative, Plaintiff's retaliation allegations concerning the events leading to, and including, her termination must be dismissed for failure to state a claim. Accordingly, the Court turns to Plaintiff's remaining non-duplicative retaliation allegations, all of which concern post-termination conduct.

"[I]n certain instances," a plaintiff may recover for post-employment retaliation. *See Mira v. Kingston*, 218 F. Supp. 3d 229, 235 (S.D.N.Y. 2016) ("Title VII does—in certain instances—protect against post-employment retaliation." (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997))); *see also Vega*, 801 F.3d at 88 ("[F]or a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under

the same standards applicable to a Title VII claim."). For example, "[a] negative reference or similar actions taken with respect to a new prospective employer can be considered an adverse action and therefore provide support for a retaliation claim." *Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16-cv-01940, 2017 WL 4273292, at *5, 2017 U.S. Dist. LEXIS 157346, at *13–14 (D. Conn. Sept. 26, 2017); *see also Wanamaker*, 108 F.3d at 466 ("[P]laintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company, if, for example, the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation."); *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979) (explaining that post-employment blacklisting falls within the scope of retaliatory provisions of Title VII), *rev'd on other grounds*, 477 U.S. 807, 814 n.17 (1980). The allegations in the Second Amended Complaint, however, concern Plaintiff's efforts to pursue the grievances filed during her employment and the litigation of her Article 78 petition and, and contain no allegations that Defendants have, post-employment, engaged in blacklisting, or otherwise impaired her employment prospects. *See, e.g.*, *Mira*, 218 F. Supp. 3d at 235–36 (finding that the plaintiff failed to allege post-employment retaliation where she had "immediately secured employment with Argus Media after she resigned from Platts; in fact, she began working there the same month" and the "acts of harassment of which she complains . . . do not relate to her new job or to any inability to procure employment; they are simply unpleasant things that happened to Plaintiff (not at her new place of employment) that she attributes [to] Platts"). Accordingly, Plaintiff's equal protection retaliation claims are dismissed.

### 3.     Claims Regarding the NYSDHR and Governor's Office

The two remaining non-duplicative claims in the Second Amended Complaint —

Plaintiff's allegations concerning her filing of complaints with the NYSDHR and the New York

Governor's Office and the failure of those offices to respond—must be dismissed for lack of

personal involvement by any named defendant. (*See* Dkt. No. 45, at 7–8 (alleging that on

September 9, 2017, Plaintiff filed a formal complaint with the NYSDHR "in response to the

post-termination acts of retaliation Plaintiff continued to suffer after Plaintiff's Article 78

Petition was dismissed," that "[o]n October 24, 2017, the NYSDHR "notified Plaintiff that there

was no record of Plaintiff's complaint," and that when Plaintiff resubmitted a second copy, the

NYSDHR "notified Plaintiff they were unwilling to conduct an investigation on Plaintiff's

behalf"); *id.* at 8 (alleging Plaintiff filed an online complaint through the New York Governor's

Office on October 16, 2017, but when Plaintiff attempted to follow up on her complaint, her calls

were not returned)).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (first quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880,

885 (2d Cir. 1991); and then citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

Personal involvement of a supervisory defendant may be shown in several ways. The Second

Circuit has held that, in addition to (1) direct participation, a plaintiff may show that:

> (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong, (3) the defendant
> created a policy or custom under which unconstitutional practices
> occurred, or allowed the continuance of such a policy or custom, (4)
> the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the rights of inmates by failing to act on
> information indicating that unconstitutional acts were occurring

(the "*Colon* factors"). *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Williams v.*

*Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)). "To succeed on a supervisory liability claim, a

plaintiff must 'show an affirmative causal link between the supervisor's inaction and [the

plaintiff's] injury.'" *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 114 (2d Cir. 2020) (quoting *Poe v. Leonard*, 282 F.3d 123, 140 (2002)). As there are no facts asserted in the Second Amended Complaint suggesting any Defendant's direct participation in the allegations concerning the NYSDHR or the Governor's Office, Plaintiff fails to state a claim for relief with respect to those claims.

Accordingly, any claims in connection with Plaintiff's allegations regarding her complaints to the NYSDHR and Governor's Office are dismissed.

### 4.    Conspiracy Claims

Plaintiff's conspiracy, and failure to prevent conspiracy, claims under 42 U.S.C. §§ 1985, 1985(3), 1986, are also dismissed as the Second Amended Complaint does not sufficiently plead any constitutional violation. Indeed, in the absence of an underlying constitutional violation, Plaintiff's conspiracy claims fail as a matter of law. *See, e.g.*, *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy."); *see also Singer v. City of New York*, 417 F. Supp. 3d 297, 328 (S.D.N.Y. 2019) ("As with Section 1983 conspiracy claims, Section 1985 claims require a showing of an underlying constitutional violation." (quoting *Edwards v. Horn*, No. 10-cv-6194, 2012 WL 473481, at *19, 2012 U.S. Dist. LEXIS 18424, at *64–65 (S.D.N.Y. Feb. 14, 2012)); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) ("A claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985.").

### 5.    NYSHRL Claims

Defendants assert that Plaintiff has failed to state a hostile work environment, gender discrimination, or retaliation claim under NYSHRL § 296. (Dkt. No. 52-2, at 23–25). Having dismissed all federal claims, the Court must consider whether to retain supplemental jurisdiction

over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350 n.7 (1988) (stating that "in the usual case in which all federal-law claims are

eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law

claims"). In deciding whether to exercise supplemental jurisdiction, a district court should

balance the traditional "values of judicial economy, convenience, fairness, and comity," *Cohill*,

484 U.S. at 350. Further, as a general rule, "when the federal claims are dismissed the 'state

claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d

Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). However, where,

as here, the "standards of liability are identical under [federal law] and the NYSHRL; deciding

the state-law claims does not require the investment of additional judicial resources," and there is

no "substantial comity concern raised by this Court's application of state law with which courts

in this District are eminently familiar," the Court concludes "the 'values of judicial economy,

convenience, fairness, and comity,'" support the exercise of supplemental jurisdiction over

Plaintiff's NYSHRL claims. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413

(S.D.N.Y. 2014) (quoting *Cohill*, 484 U.S. at 350).

　　"By its terms, § 296(6) of the Human Rights Law creates a 'broad[ ] source of personal

liability' that is not limited to employers or employees." *Stanley v. Guardian Sec. Servs., Inc.*,

800 F. Supp. 2d 550, 557 (S.D.N.Y. 2011); *see also Feingold v. New York*, 366 F.3d 138, 157

(2d Cir. 2004). Individuals can be held liable as aiders and abettors when they "actually

participate[d] in the conduct giving rise to a discrimination claim." *Tomka v. Seiler Corp.*, 66

F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*,

524 U.S. 742 (1998). In view of the Court's conclusion that Plaintiff fails to allege a gender-

based hostile work environment, discrimination, or retaliation claim under the Equal Protection Clause, the NYSHRL hostile work environment, discrimination, and retaliation claims are dismissed. *Hill v. City of New York*, 136 F. Supp. 3d 304, 331 (E.D.N.Y. 2015) (explaining that "[e]mployment discrimination claims under," § 1983 and NYSHRL "are governed by the same liability standard and analytical framework" as Title VII claims); *see also Henry*, 18 F. Supp. 3d at 413 (dismissing NYSHRL claims because they were "coterminous both legally and factually with [the plaintiff's] federal claims").

## VI.   CONCLUSION

The Court has considered Plaintiff's status as a pro se litigant, but in light of the fact that Plaintiff has been permitted three opportunities to specify facts supporting her claims, and the absence of any facts suggesting that Plaintiff could state a plausible claim for relief, the Court declines to permit the filing of a third amended complaint in this case. Accordingly, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 52) is **GRANTED**; and it is further

**ORDERED** that the Second Amended Complaint (Dkt. No. 45) is **DISMISSED without prejudice as to the duplicative claims and otherwise with prejudice;**[16] and it is further

**ORDERED** that the Clerk of the Court is directed to close this case and serve the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  December 11, 2020

Brenda K. Sannes
U.S. District Judge

---

[16] Plaintiff's pending letter request, (Dkt. No. 57), asking the Court to consider a report issued by the State of New York Offices of the Inspector General is denied as moot.